IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF FLORIDA

**KIMN S. SULLIVAN a/k/a**
**KIMBERLY S. SULLIVAN**

    **Plaintiff,**

vs.

**BANK OF AMERICA, N.A., et al,**

    **Defendants.**
_____/

CASE NO.: 9:21-CV-80828-WPD

Judge: William P. Dimitrouleas
Magistrate Judge: William Matthewman

**DEFENDANT SAFEGUARD PROPERTIES MANAGEMENT, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Safeguard Properties Management, LLC ("Safeguard") moves to dismiss the claims asserted against it in Plaintiff Kimn Sullivan's ("Plaintiff") Class Action Complaint ("Complaint") with prejudice.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiff's allegations in the Complaint make clear that each of the three claims asserted against Safeguard should be dismissed, as Plaintiff alleges that Safeguard did nothing more than provide a service due under a contract with another party, defendant Bank of America, N.A. ("BANA"). As the Complaint reflects, Safeguard—as BANA's hired vendor—does not have a contractual relationship, fiduciary relationship, or any other type of relationship with Plaintiff that would or could support her claims against Safeguard. In short, the Complaint does not allege any interaction between Plaintiff and Safeguard.

---

[1] Plaintiff alleges claims against Safeguard in Counts III, VII and VIII. This motion does not discuss the other counts in the Complaint, as those counts do not allege claims against Safeguard.

Plaintiff's RICO claim fails for a number of related reasons, including that Plaintiff fails to plead fraud with particularity or allege any direct duty owed to her by Safeguard. Plaintiff's unjust enrichment claims also fails because Plaintiff does not allege that she conferred a benefit on Safeguard or that it would be inequitable for Safeguard to retain any benefit as a result of the work that BANA hired Safeguard to perform. Finally, Plaintiff fails to allege that Safeguard engaged in any conduct that could give rise to a claim under the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA").

**I.   Factual and procedural background**

This putative class action is brought by Plaintiff, who alleges she purchased and is the current titleholder of property located at 5 Marina Gardens Drive, Palm Beach Gardens, Florida 33410 (the "Property"). (Compl. ¶ 73). Plaintiff does not allege that she is the mortgagor or that she ever assumed the original borrower's—Anita Mandal—mortgage agreement with BANA. The Complaint alleges that BANA is the mortgage lender and servicer on the property, and in connection with its home-mortgage servicing, BANA charges fees on borrowers' accounts when they are behind on their mortgage payments. (Compl. ¶¶ 1, 71). As support for her claims, the Complaint alleges that BANA "illegally, unfairly, and fraudulently charge[s] defaulted or at-risk-of-default borrowers for multiple and repetitive 'property inspections' that are not required by lenders, not permitted by lender guidelines, and in many cases, not allowed under state and federal regulations and guidelines." (Compl. ¶ 1).

The Complaint alleges that BANA's conduct with respect to servicing the mortgage is motivated by generating fees, because the risk of loss is reduced if the borrower defaults on the loan from the profit BANA can make from fees associated with default servicing activities, including property inspection fees that BANA charges the borrower. (Compl. ¶¶ 23, 26). The

Complaint further alleges that as the loan servicer, BANA is responsible for ordering property inspections. (Compl. ¶¶ 36-39, 44). Whether a property inspection fee can be validly assessed to the borrower, the Complaint alleges, is determined by the mortgage agreement—an agreement to which Safeguard is indisputably not a party. (Compl. ¶ 53.) The Complaint alleges that BANA assessed fees for excessive property inspections on the property. (Compl. ¶¶ 53, 80) Notably, the Complaint does not allege that Safeguard charged Plaintiff for any inspections or that Safeguard had any type of relationship or interaction with Plaintiff.[2]

Safeguard is not the loan servicer, and the Complaint does not allege that Safeguard is the loan servicer. Rather, Safeguard is the property preservation company that BANA hires to coordinate the property inspections and other preservation services. (Compl. 53). Specifically, the Complaint alleges that BANA orders property inspections, which generate work orders for Safeguard. (Compl. ¶ 62). As part of the service that it performs for BANA, Safeguard, like any for-profit business, sets the fees that it charges to BANA so that Safeguard makes a profit. (Compl. ¶ 54). Safeguard's contractual relationship is solely with BANA and, pursuant to that relationship, BANA pays Safeguard for the inspection services. (Compl. ¶ 63). Then, pursuant to a separate agreement to which Safeguard is not a party, BANA assesses fees for the inspection services that BANA ordered. (Compl. ¶¶ 62, 63). The Complaint alleges that BANA does not "consistently disclose these inspection charges,", (Compl. ¶ 63), but the Complaint does not allege that Safeguard has any control, input, or influence on how, why, or when BANA issues invoices as part of BANA's loan servicing. Thus, Safeguard's sole involvement in this action is that Safeguard provides a service to BANA and BANA pays Safeguard for that service. Any arrangement

---

[2] To the contrary, Plaintiff alleges that the inspections performed by the "third-party inspection vendors and/or property inspectors" (Compl. ¶ 54), are "drive-by property inspections." Compl. ¶ 7.

between BANA and Plaintiff (if one exists), including whether BANA charges Plaintiff for such inspections in accordance with any such arrangement, does not give rise to claims against Safeguard.

The Complaint does not allege that Safeguard has a contractual relationship with Plaintiff or that Safeguard charges, invoices, or otherwise bills Plaintiff in any manner. Instead, the Complaint alleges that BANA orders the property inspections as part of BANA's "unilateral and self-serving determination *en masse* that conducting these excessive property inspections is 'appropriate' regardless of the borrowers' underlying circumstances or any objection criterion related to the circumstances surrounding particular loans"[3] and that Safeguard "accept[s] BOA's automated property inspection orders. . . " (Compl. ¶ 32, ¶ 54).

The Complaint does not allege that Safeguard is a party to any of the loans held or serviced by BANA. Nor does the Complaint allege that Safeguard has any knowledge of any of the circumstances surrounding any particular loans held by and/or serviced by BANA. Safeguard is merely the contractual vendor hired by BANA to facilitate inspection of properties. (Compl. ¶¶ 62-63). And in return, Safeguard charges BANA a fee for the services that it provides to BANA. (Compl. ¶ 247). Nothing more. Indeed, the crux of Plaintiff's claims against Safeguard is that Safeguard "accept[ed] BOA's automated property inspection orders," . . . "automatically add[ed] a mark-up to the price of the inspections," . . . "issued their own inspection orders that are sent to subcontracted third-party inspection vendors and/or property inspectors" and that these

---

[3] To be clear, these allegations are disputed. However, accepting these allegations as true for the purposes of a motion to dismiss does not import liability on Safeguard.

subcontracted vendors "accept[ed] Safeguard's excessive and property inspection orders. . ."[4] (Compl. ¶55). In other words, Plaintiff alleges that Safeguard made a profit.

Based on this factual predicate, Plaintiff includes three claims against Safeguard in her eight count Complaint. She alleges in Count III that Safeguard was unjustly enriched; she alleges in Count VII that Safeguard violated FUDTPA, Fla Stat., §§ 501.201, et seq.; and she alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), in Count VIII. Plaintiff cannot state a plausible claim for relief against Safeguard on any of these three claims, as Safeguard did nothing more than provide the inspection service that it was contracted to perform for BANA.

## II.     Legal Standard

To survive a motion to dismiss, Plaintiff must allege facts that state a "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). If "the facts as pled [in the count] do not state a claim for relief that is plausible on its face," the count must be dismissed. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009)). Moreover, "only *well pleaded* factual allegations are taken as true and only *reasonable* inferences are drawn in favor of the plaintiff." *United States v. Kottemann Law Firm PLLC,* 3:12CVV114/MCR/CJK, 2013 WL 3866525, at *2 (N.D. Fla. July 25, 2013)(emphasis in original)(citing *Oladeinde v. City of Birmingham,* 963 F.2d 1481 (11th Cir. 1992)). Mere "labels and conclusions" are not accepted as true and "on a motion to dismiss, courts 'are not bound to

---

[4] Plaintiff does not name any of "subcontracted third-party inspection vendors and/or property inspectors," Compl. ¶ 54, as defendants in this action.

accept as true a legal conclusion couched as a factual allegation.'" *Twombly,* 550 U.S. at 555. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. This is because "the conclusory nature" of such allegations "disentitles them to the presumption of truth." *Id.* at 681. The claims against Safeguard in the Complaint must be dismissed.

### III. Legal Argument

#### A. Plaintiff fails to state a claim for RICO violations

Plaintiff's civil RICO claim should be dismissed. Plaintiff fails to allege that Safeguard owed her any duties; her claims are merely reformulated contract claims as between Plaintiff and BANA; and she failed to plead fraud, upon which her RICO claim is premised, with sufficient specificity.

*i.   Plaintiff fails to allege any duty to disclose owed by Safeguard*

Plaintiff's RICO claims are premised on alleged claims of fraud by misrepresentation and/or omission (i.e., failure to disclose) with respect to the property inspection fees that BANA assessed. (*See* Compl. ¶¶ 78, 261-268.) Specifically, Plaintiff alleges that the Defendants engaged in "virtually uniform misrepresentations, concealments, and material omissions" and by "means of materially false or fraudulent pretenses, representations, promises, or omissions of material fact." *Id.* at ¶¶ 261-262. As a fundamental matter, Plaintiff does not allege a *single* misrepresentation made by Safeguard; indeed, Plaintiff does not allege that there was any relationship or interaction whatsoever between her and Safeguard. Thus, Plaintiff's claims against Safeguard must only be based on claims of omission or non-disclosure. "[N]ondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a

6

defendant has a duty to disclose either by statute or otherwise." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir.2002). However, to support a RICO claim for "fraudulent concealment, or nondisclosure" plaintiff must plausibly allege the defendant had "a duty to disclose" in the complaint. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007).

Here, Plaintiff fails to allege any independent duty owed by Safeguard to Plaintiff, let alone a breach of any such duty. Any relationship Plaintiffs had was with BANA and not Safeguard. Safeguard did not contract with Plaintiff; Safeguard did not invoice Plaintiff; Safeguard did not have involvement with any loan or mortgage issues, Safeguard simply coordinated contractors to perform work orders at the request of BANA. As the Complaint makes clear, BANA assessed the fees and added them to the loan balance—Safeguard did no such thing.

Indeed, the only duties even alleged in the Complaint are those owed by the loan servicer. (Compl. ¶ 17). Safeguard merely had orders from BANA pursuant to its contractual relationship with BANA regarding property inspections. (Compl. ¶¶ 62, 63). Upon accepting BANA's property inspection orders, as alleged in the Complaint, Safeguard automatically issued its own inspection orders "that are sent to subcontracted third-party inspections vendors and/or property inspectors" who perform the inspections. (Compl. ¶¶ 54-55). Once the inspections were complete, Safeguard charged BANA for its services, earning a profit less the amount paid to Safeguard's contractor for completing the inspections. (Compl. ¶¶ 62, 63, 247). The factual allegations in the Complaint do not create any independent duty owed by Safeguard to Plaintiff as required to support her RICO claim against Safeguard. Nor does Plaintiff allege otherwise. In fact, Plaintiff wholly fails to allege any interaction between her and Safeguard; certainly, she does not allege that Safeguard made any affirmative misrepresentations and, without any relationship or other duty,

Safeguard cannot be liable for a violation of RICO by virtue of any omissions or nondisclosures. Consequently, she does not and cannot state a RICO claim against Safeguard.

  ii. *Plaintiff's RICO claims are nothing more than reformulated contract claims*

Federal courts routinely reject attempts to recast common law fraud, business tort, breach of contract or other state common law claims as RICO predicate acts. *See, e.g., Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 254 (D. Conn. 2014); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 Civ. 8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013). "[C]ourts have an obligation to carefully scrutinize a RICO claim to separate the meritorious from those which have merely recast common law fraud and breach of contract claims as violations of federal law." *Faryniarz*, 62 F. Supp. 3d at 251; *see also Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996) (discussing RICO claims based on reformulated copyright infringement claims).

Plaintiff's RICO claims are entirely based on her claims that the terms of the mortgage and note were breached. Under Plaintiff's theory, either the fees that BANA added to the loan balance were authorized under the mortgage (to which Safeguard is not a party) or they were not. And even if they were not, "to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning." *See Braswell Wood Co., Inc. v. Waste Away Group, Inc.*, No. 2:09-cv-891-WKW, 2010 WL 3168125, at *4 (M.D. Ala. Aug. 10, 2010). Yet, here, the allegations are even more attenuated because Safeguard was not a party to any contractual relationship that may or may not have existed between BANA and Plaintiff. Surely, if Plaintiff cannot state a cause of action against BANA for a violation of RICO for charging fees not permitted under a contract, Safeguard – with whom Plaintiff was not in privity – cannot be liable either.

The Complaint makes abundantly clear that, at its core, Plaintiff's dispute regarding the inspection fees is a contract dispute with the loan servicer, BANA. Plaintiff cannot transform that run-of-the-mill contract dispute into a RICO claim against Safeguard, who is not even a party to the contract or any other agreement with Plaintiff.

iii.   *Plaintiff failed to plead her RICO claim with sufficient specificity*

To state a RICO claim sounding in fraud, as Plaintiff tries to do here, plaintiffs must satisfy not only the pleading requirements of Federal Rule of Civil Procedure 8, but also the specificity requirement of Rule 9(b). *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1291 (11th Cir. 2010). The Eleventh Circuit has held that, under Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc*., 116 F.3d 1364, 1380-81 (11th Cir. 1997) (applying the requirements to a RICO fraud complaint). Additionally, "[t]he plaintiff must allege facts with respect to each defendant's participation in the fraud." *Id*. at 1381.

Here, Plaintiff does no such thing as it relates to Safeguard, and Plaintiff fails to satisfy the heightened pleading requirement. Plaintiff fails to allege a single precise statement or misrepresentation made by Safeguard. Nor does Plaintiff allege any specific information that Safeguard was required to provide to her but did not. She does not allege precisely what wrongful act Safeguard performed. Plaintiff does not allege with any particularity when Safeguard failed to act in a way that violated any duties owed to her. Plaintiff does not allege how she was misled by Safeguard's conduct. And the reason for these pleading deficiencies is obvious. How could she meet the pleading standard? After all, Safeguard merely facilitated inspections based on orders

issued by BANA. There are no actions by Safeguard alleged in the Complaint that could give rise to a RICO claim against Safeguard. Plaintiff's cries of fraud are entirely conclusory, which is insufficient to state a cause of action. *See Twombly,* 550 U.S. at 555

Finally, beyond pointing out Safeguard's "profit" from engaging a vendor to perform inspections, (Compl. ¶ 54), Plaintiff does not identify with specificity what Safeguard gained by the alleged fraud. One would assume that Safeguard made a profit (it is, after all, a for-profit business). But, if making a profit creates a predicate for a RICO claim, then there is no limit to the breadth of RICO violations that could be alleged.

The absence of particularity reveals the entirely speculative nature of Plaintiff's RICO claim against Safeguard. The only facts Plaintiff alleges with any particularity are the basic facts of Safeguard's alleged contractual relationship with BANA; Safeguard facilitated property inspections that BANA ordered and charged BANA a fee for those inspections. But those are not allegations that can satisfy a fraud claim. Plaintiff's RICO claim against Safeguard should be dismissed.

### B. Plaintiff fails to state a claim for relief under FDUTPA

Plaintiff's FDUTPA claim should also be dismissed because she has not and cannot plausibly allege that Safeguard committed a deceptive act or unfair practice that caused Plaintiff damages. "A consumer claim under FDUTPA must have three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015).

As to the first element, there are no plausible allegations that Safeguard did anything deceptive or unfair with regard to Plaintiff. The most Plaintiff alleges is that Safeguard charged BANA a markup for the inspection services that were performed at the request of BANA so that

Safeguard could earn a profit from the services it performed. Such a standard and – presumed – business practice is not deceptive or unfair. Indeed, Plaintiff's entire FDUTPA cause of action is based on "[t]he issuance of fees for unauthorized services in connection with loan servicing." (Compl. ¶ 227). But Safeguard does not issue any fees to Plaintiff for anything, whether connected to loan servicing or otherwise.

Moreover, as relates to Safeguard, Plaintiff fails to allege causation between the services Safeguard contractually provides to BANA and Plaintiff's alleged damages. Plaintiff, after all, contends that BANA improperly added the property inspection fees to the loan balance. (Compl. ¶¶ 157, 159, 227, 229). Safeguard has no control over when or how much in fees BANA assesses for property inspections that BANA orders. *See Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (explaining that upstream "Defendants' allegedly deceptive pricing practices are too remote and speculative to satisfy the causation element. Defendants themselves do not set the retail prices of the Products; rather, they make price suggestions to retailers, who ultimately set the prices."). Safeguard provides services for BANA when ordered by BANA. (Compl. ¶ 62, 63, 67, 157). BANA then determines what fees to assess and add to the loan balance, to which Safeguard has no connection. (Compl. ¶¶ 227, 229). Whatever Plaintiff's damages may be, if any, they were not directly caused by Safeguard, which is required to state a FDUTPA claim.

### C. Plaintiff fails to state an unjust enrichment claim for relief

Plaintiff does not and cannot state a claim against Safeguard for unjust enrichment.

In Florida, "the theory of unjust enrichment is equitable in nature." *Fito v. Attorney's Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. 3d DCA 2011). Specifically, a plaintiff must show the following to establish unjust enrichment:

>    (1) a benefit conferred on a defendant by a plaintiff
>
>    (2) voluntary acceptance and retention of the benefit by the defendant; and
>
>    (3) circumstances that make it inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.[5]

*Fito*, 83 So. 3d at 758.

The Complaint, however, contains no factual allegations that Plaintiff conferred any benefit on Safeguard; that Safeguard accepted such benefit; or that it would be inequitable for Safeguard to retain such a benefit. To the contrary, the Complaint fails to allege at all that she actually paid any fees that BANA assessed and added to the loan balance. In any event, Safeguard was neither a party to nor an intended beneficiary of the loan or Mortgage, and Plaintiff does not allege otherwise. Separately, BANA contracted with Safeguard for Safeguard to facilitate property inspections ordered by BANA. There is no allegation—nor could there be—that Safeguard had any input or control over the property inspections ordered by BANA. BANA contracted with Safeguard for Safeguard to provide a service; Safeguard provided that service. Plain and simple. Safeguard was not unjustly enriched simply because it made a profit for services requested by BANA.

Safeguard did not charge Plaintiff or any property owner or receive payment from Plaintiff or any property owner. Rather, Safeguard's business relationship and its obligations were solely defined by its agreements with BANA. Safeguard had no control—nor does Plaintiff allege otherwise—over how or to what extent BANA invoiced property owners when it ordered inspections. As the Eleventh Circuit has explained, any indirect benefit would not support Plaintiff's claim. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1334 (11th Cir. 2012). In

---

[5] Plaintiff attempts to bring this action as a putative class action. "Common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v T-Mobile USA, Inc.,* 564 F.3d 1256, 1274 (11th Cir. 2009).

*Virgilio*, the Eleventh Circuit affirmed dismissal of an unjust enrichment claim brought by home purchasers who sought to recover marketing payments made pursuant to a contract between the builder and the defendants, marketing firms that provided marketing services to the builder. Because the plaintiff homeowners were not parties to the marketing contract, and because their payments were made to the builder for the purchase price of their homes, the *Virgilio* plaintiffs could not maintain their unjust enrichment claims against the marketing defendants. *Id*. (affirming dismissal because "Plaintiffs do not seek to recover money Terrabrook received as partial payment for the houses they bought; instead, they seek the money Ryland paid for marketing services under an entirely separate services contract.")

Here, what Plaintiff claims is unjust are the fees BANA assessed and added to the loan balance arising from an alleged loan servicing agreement.[6]  Like *Virgilio*, Plaintiff cannot recover separate fees that BANA paid to Safeguard under an entirely different contractual arrangement between BANA and Safeguard on an unjust enrichment theory.

Moreover, if BANA believed that Safeguard had not fulfilled its duties to BANA, BANA could have refused to pay Safeguard's fee.  Again, as the *Virgilio* court explained, a plaintiff cannot claim to confer a benefit under an unjust enrichment theory when basing a claim on a contract between two other parties.  The conferral of any benefits in such a scenario is by the contracting parties who may or may not choose to enforce their contractual obligations to each other.  Specially in *Virgilio*, the Eleventh Circuit affirmed dismissal of an unjust enrichment claim bottomed on a

---

[6] Notably, Plaintiff does not allege that she actually paid the fees at issue, which would be required to confer a benefit on a defendant under an unjust enrichment theory.  Rather, she merely repeatedly alleges that she and putative class members were improperly **charged** fees.  In fact, she alleges that BANA sought to foreclose the mortgage at issue by filing a foreclosure action in Palm Beach County because of the "mortgage debt/delinquency." (Compl. ¶ 74). *See also* Compl. ¶¶ 76, 78.  Thus, if she did not actually pay the allegedly improper fees at issue, which she does not allege she did, there can be no unjust enrichment claim at all.

theory that the defendant marketing firms were unjustly enriched because they received 1.5 percent of the purchase price for each home sold pursuant to a contract with the builders. *See Virgilio*, 680 F.3d at 1337 ("The mere fact that [the builders] bargained away its right to 1.5 percent of the purchase price of Plaintiffs' houses did not change the fact that Ryland, not Plaintiffs, conferred the benefit on Defendants."). Thus, given that, here, Plaintiff did not confer a benefit on Safeguard, Plaintiff—who never had a relationship with or paid Safeguard—does not and cannot plausibly contend that there are any circumstances in which it would be inequitable for Safeguard to retain the benefit of its contractual relationship with BANA. Consequently, Plaintiff's unjust enrichment claim against Safeguard should also be dismissed.

## Conclusion

Each of the three claims that Plaintiff asserts against Safeguard in her Complaint, specifically Counts III, VII and VIII, should be dismissed with prejudice. Plaintiff cannot allege that Safeguard, a third party not involved in the dispute between Plaintiff and BANA, owed her any duties—contractual, equitable or otherwise. Assuming the truth of all of Plaintiff's allegations, as explained above, she does not and cannot state plausible claims for relief against Safeguard. And, given these facts, any leave to amend would be futile. Thus, the claims against Safeguard should be dismissed with prejudice.

Dated this 16th day of July, 2021.

Respectfully submitted,

*s/ Julie Singer Brady*
Julie Singer Brady
Florida Bar No. 389315
jsingerbrady@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168

*Of Counsel:*

Dustin M. Dow
Ohio Bar No. 0089599
(*pro hac vice application forthcoming*)
ddow@bakerlaw.com
**BAKER & HOSTETLER LLP**
Key Tower, Suite 2000
127 Public Square
Cleveland, Ohio  44114
Telephone (216) 621-0200
Facsimile (216) 696-0740

*Attorneys for Defendant,*
*Safeguard Properties Management, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send a Notice of Electronic Filing and copy to:

Scott David Hirsch
scott@scotthirschlawgroup.com
**SCOTT HIRSCH LAW GROUP**
6810 N. State Road 7
Coconut Creek, Florida 33073

Daniel E. Gustafson (*pro hac forthcoming*)
dgustafson@gustafsongluek.com
Daniel C. Hedlund (*pro hac forthcoming*)
dhedlund@gustafsongluek.com
David A. Goodwin (*pro hac forthcoming*)
dgoodwin@gustafsongluek.com
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza, Suite 2600
120 South 6th Street
Minneapolis, Minnesota 55402

*Attorneys for Plaintiff,*
*Kimn S. Sullivan and Kimberly S. Sullivan*

*s/ Julie Singer Brady*