**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

KIMN S. SULLIVAN a/k/a KIMBERLY
SULLIVAN,

         Plaintiff,

  v.

BANK OF AMERICA, N.A., et al.,

         Defendants.

Case No. 9:21-CV-80828-WPD

**DEFENDANT BANK OF AMERICA, N.A.'S**
**MOTION TO DISMISS AND**
**INCORPORATED MEMORANDUM OF LAW**

***Oral Argument Requested***

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................. 3

    A.    Plaintiff purchased the Property subject to BANA's lien but has never been a party to BANA's Agreement with the original borrower. .......................... 3

    B.    BANA initiates foreclosure proceedings in 2012 that remain pending, and Plaintiff files numerous failed claims against BANA in multiple actions. ............. 4

    C.    Plaintiff files the federal Complaint with allegations overlapping the state foreclosure action. ................................................................................................ 5

ARGUMENT .............................................................................................................................. 7

I.    THE COURT SHOULD ABSTAIN UNDER *COLORADO RIVER* AND STAY THIS CASE IN FAVOR OF THE FIRST-FILED FORECLOSURE ACTION.............. 7

II.    EVEN IF THE COURT WERE NOT TO ABSTAIN, PLAINTIFF'S INDIVIDUAL CLAIMS FAIL. ........................................................................................ 10

    A.    Plaintiff's contract-based claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of civil RICO must be dismissed. ................................................................................ 11

        1.    Plaintiff lacks standing to allege breach of contract. ............................... 11

        2.    Plaintiff's implied covenant claim fails with her breach of contract claim, and is redundant in any event. ..................................................... 12

        3.    Plaintiff's civil RICO claim cannot transform an alleged contractual breach into racketeering activity. .......................................... 12

    B.    Plaintiff's consumer protection-related claims for alleged violations of the FCCPA, FDCPA, and TILA fail and are time-barred in any event. .................... 14

        1.    Plaintiff lacks standing to sue under the FCCPA, FDCPA, and TILA. ....................................................................................................... 14

        2.    The FCCPA's, FDCPA's, and TILA's statutes of limitations preclude Plaintiff's claims. ..................................................................... 15

        3.    Plaintiff fails to state a claim for violation of the FCCPA and FDCPA. .................................................................................................. 17

        4.    Plaintiff fails to state a claim for violation of TILA. ............................... 18

    C.    Plaintiff's FDUTPA and unjust enrichment claims are meritless under Florida law. ............................................................................................................. 19

        1.    Plaintiff cannot state a claim under the FDUTPA against BANA. ........... 19

        2.    Plaintiff's unjust enrichment claim fails because she conferred no benefit on BANA. .................................................................................. 19

## TABLE OF CONTENTS
(continued)

                                                                                              **Page**

CONCLUSION ........................................................................................................... 20

REQUEST FOR ORAL ARGUMENT ..................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
  905 F. Supp. 2d 1334 (S.D. Fla. 2012) ................................................................. 12

*Ambrosia Coal and Constr. Co. v. Morales*,
  368 F.3d 1320 (11th Cir. 2004) ............................................................................ 8

*Baker v. Warner/Chappell Music, Inc.*,
  759 F. App'x 760 (11th Cir. 2018) ....................................................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 7

*Bentley v. Bank of Am., N.A.*,
  773 F. Supp. 2d 1367 (S.D. Fla. 2011) ................................................................. 18

*Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*,
  2019 WL 1406466 (S.D. Fla. Mar. 28, 2019) ....................................................... 7

*Bosdorf v. Beach*,
  79 F. Supp. 2d 1337 (S.D. Fla. 1999) ............................................................. 8, 9, 10

*Brown v. Select Portfolio Servicing*,
  2017 WL 1157253 (S.D. Fla. Mar. 24, 2017) ............................................. 16, 17, 18

*Burgos v. Suntrust Bank N.A.*,
  2014 WL 11880360 (S.D. Fla. Nov. 17, 2014) ...................................................... 8

*Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*,
  647 So.2d 1028 (Fla. 4th DCA 1994) ................................................................... 11

*Centennial Bank v. Noah Grp., LLC*,
  2010 WL 11558224 (S.D. Fla. Oct. 20, 2010) ...................................................... 15

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*,
  420 F.3d 1146 (11th Cir. 2005) ............................................................................ 12

*Charles v. Deutsche Bank Nat'l Tr. Co.*,
  2016 WL 950968 (S.D. Fla. Mar. 14, 2016) ......................................................... 11

*Colorado River Water Conserv. Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................................... 1, 7

*Condon v. Glob. Credit & Collection Corp.*,
  2010 WL 5071014 (M.D. Fla. Dec. 7, 2010) ........................................................ 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Crossman v. Asset Acceptance, L.L.C.*,
  2014 WL 2612031 (M.D. Fla. June 11, 2014) ........................................................ 17

*Delta Dev. & Constr. Corp. v. Sav. One Ass'n*,
  637 F. Supp. 629 (S.D. Fla. 1986) ........................................................................ 10

*DHL Express (USA) Inc. v. USS Logistics, LLC*,
  2010 WL 11505107 (S.D. Fla. Aug. 18, 2010) ................................................ 7, 9, 10

*Dykes v. Bank of Am., N.A.*,
  2018 WL 7822282 (S.D. Fla. July 10, 2018) ................................................... 13, 19

*Garcia v. Stewart*,
  906 So. 2d 1117 (Fla. Dist. Ct. App. 2005) .............................................................. 3

*Gardner v. GMAC, Inc.*,
  796 F.3d 390 (4th Cir. 2015) .................................................................................. 20

*Gustafson v. BAC Home Loans Serv., LP*,
  2012 WL 7071488 (C.D. Cal. Dec. 26, 2012) ......................................................... 14

*Gutterman v. Herzog*,
  2020 WL 6728787 (E.D.N.Y. Nov. 16, 2020) ........................................................ 14

*Hackett v. Bayview Loan Servicing, LLC*,
  2018 WL 6812617 (D. Md. Dec. 27, 2018) ............................................................ 19

*Hall v. Bank of Am., N.A.*,
  2013 WL 10799537 (S.D. Fla. June 25, 2013) ..................................................... 7, 8

*Harper v. Chase Manhattan Bank*,
  138 F. App'x 130 (11th Cir. 2005) ........................................................................ 10

*Harrington v. Roundpoint Mortg. Servicing Corp.*,
  163 F. Supp. 3d 1240 (M.D. Fla. 2016) .................................................................. 16

*Hearndon v. Graham*,
  767 So.2d 1179 (Fla. 2000) .................................................................................. 16

*Hendricks v. Mortg. Elec. Registration Sys. Inc.*,
  2013 WL 1279035 (M.D. Fla. Mar. 28, 2013) .......................................................... 9

*Hill v. Nationstar Mortg. LLC*,
  2015 WL 4478061 (S.D. Fla. July 2, 2015) ............................................................ 11

### TABLE OF AUTHORITIES
(continued)

Page(s)

*Johnson v. Ocwen Loan Servicing*,
  374 F. App'x 868 (11th Cir. 2010) ........................................................................ 15

*Jones v. Select Portfolio Servicing, Inc.*,
  2018 WL 2316636 (S.D. Fla. May 2, 2018) .................................................... 15, 17

*LaFaille v. Nationstar Mortg., LLC*,
  197 So. 3d 1246 (Fla. 3d DCA 2016) ................................................................... 11

*Megaval Enters., Ltd. v. Bank of Am., N.A.*,
  2014 WL 12609318 (S.D. Fla. Oct. 8, 2014) ...................................................... 7, 18

*Melford v. Kahane & Associates*,
  2018 WL 5044601 (S.D. Fla. Oct. 17, 2018) ........................................................ 18

*Montoya v. PNC Bank, N.A.*,
  2014 WL 4248208 (S.D. Fla. Aug. 27, 2014) ....................................................... 19

*Morse v. City Fed. Sav. & Loan Ass'n*,
  567 F. Supp. 699 (S.D. Fla. 1983) ........................................................................ 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................................................................. 8, 9

*Olivares v. Pyatt*,
  2015 WL 12751698 (S.D. Tex. Aug. 15, 2016) .................................................... 12

*Palestini v. Homecomings Fin., LLC*,
  2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) ...................................................... 16

*Patel v. Specialized Loan Serv LLC*,
  183 F. Supp. 3d 1238 (S.D. Fla. 2016) ................................................................. 11

*Reese v. JPMorgan Chase & Co.*,
  686 F. Supp. 2d 1291 (S.D. Fla. 2009) ................................................................. 18

*Rotkiske v. Klemm*,
  140 S. Ct. 355 (2019) ....................................................................................... 15, 16

*Royale Green Condo Ass'n v. Aspen Specialty Ins. Co.*,
  2008 WL 11333559 (S.D. Fla. July 24, 2008) ...................................................... 12

*Royce Int'l Broad. Corp. v. Field*,
  2000 WL 236434 (N.D. Cal. Feb. 23, 2000) ........................................................ 13

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Senter v. JPMorgan Chase Bank, N.A.*,
    810 F. Supp. 2d 1339 (S.D. Fla. 2011) ................................................................. 12

*Sini v. Citibank, N.A.*,
    990 F. Supp. 2d 1370 (S.D. Fla. 2014) .......................................................... 7, 8, 9

*Sotomayor v. Deutsche Bank Nat'l Tr. Co.*,
    2016 WL 3163074 (S.D. Fla. Feb. 5, 2016)............................................................ 19

*Stuart v. Ryan*,
    818 F. App'x 858 (11th Cir. 2020) ....................................................................... 10

*Tardibuono-Quigley v. HSBC Mortg. Corp.*,
    2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017) ................................................. 12, 13

*Thomas v. Guild Mortg. Co.*,
    2011 WL 676902 (D. Ariz. Feb. 23, 2011)............................................................ 15

*Trevathan v. Select Portfolio Serv., Inc.*,
    142 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................. 11

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012).............................................................................. 20

*Willson v. Bank of Am., N.A.*,
    2016 WL 8943333 (S.D. Fla. May 23, 2016) ................................................... 7, 10

*Zarrella v. Pac. Life Ins. Co.*,
    755 F. Supp. 2d 1218 (S.D. Fla. 2010) ................................................................. 19

**Statutes**

15 U.S.C. § 1639g............................................................................................................ 17

15 U.S.C. § 1640(e) ......................................................................................................... 15

15 U.S.C. § 1692 ............................................................................................................... 5

15 U.S.C. § 1692a(5) ....................................................................................................... 14

15 U.S.C. § 1692k(d) ....................................................................................................... 15

15 U.S.C. §§ 1692a(3) ..................................................................................................... 14

18 U.S.C. § 1961................................................................................................................ 5

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fla. Stat. § 559.72(9)............................................................................................. 5

Fla. Stat. §§ 501.201-501.203 ................................................................................ 5

Fla. Stat. Ann. § 501.212(4)(c) ............................................................................. 19

Fla. Stat. Ann. § 559.77(4)..................................................................................... 15

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................................ 2, 13, 18

Defendant Bank of America, N.A. ("BANA") requests that the Court dismiss Plaintiff Kimn S. Sullivan's Complaint.  Grounds for this motion are set forth in the following incorporated memorandum of law.[1]

## PRELIMINARY STATEMENT

When the owner of a waterfront townhouse in a gated Palm Beach community fell on hard times a decade ago, defaulting on both her BANA mortgage and her homeowners' association dues, Plaintiff saw an opportunity for a windfall.  Taking advantage of the HOA's foreclosure sale, Plaintiff purchased the three-bedroom home for pennies on the dollar—paying just $7,400 for a property now valued at nearly $1 million.  But while the sale resolved the original borrower's debt to the HOA, it did nothing to satisfy the borrower's obligation to BANA, which held a senior priority lien on the property.  As a result, even though Florida law allowed Plaintiff to take title of the property with no personal obligation to assume or pay under the existing agreement between BANA and the original borrower, the property was (and remains) still subject to BANA's lien.  Thus, while Plaintiff has no personal obligation to pay off the mortgage and note, she needs to do so if she wants to keep the property.

But for nearly a decade, Plaintiff has frustrated BANA's efforts to claim its interest in the property.  In 2012, BANA initiated a state-court foreclosure action—a proceeding still pending today.  BANA added Plaintiff as a party in 2014, only to watch Plaintiff shield herself from litigating the case by seeking to quash service multiple times.  When Plaintiff finally appeared in the state foreclosure action, Plaintiff asserted a range of counterclaims and separate claims, which have gone nowhere.  Now, in a transparent attempt to further disrupt the foreclosure proceedings, Plaintiff turns to this Court, attempting to transform her individual foreclosure action defenses and counterclaims into a federal putative class action, despite her highly individualized circumstances and the ongoing overlapping state court action.

Plaintiff's claims fail for multiple reasons.  First, because this action is duplicative of the pending state-court action, this Court should stay or dismiss Plaintiff's Complaint under the *Colorado River* doctrine.  *See Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813–16 (1976).  The same key parties—BANA and Plaintiff—are already litigating substantially similar issues in a state foreclosure proceeding that Plaintiff now seeks to litigate

---

[1] Unless otherwise noted, internal citations and quotations are omitted, and emphases are added.

with better success on a parallel track here.  Federal courts routinely abstain under *Colorado River* when a plaintiff challenges substantially similar conduct already challenged in state foreclosure proceedings.  The factors that courts weigh when deciding whether to abstain— including the state court's assertion of jurisdiction over the property in question, the progress made in that first-filed proceeding, the interest in avoiding piecemeal litigation, and Plaintiff's transparent attempt to escape the adverse rulings she received in state court—weigh strongly in favor of abstention here.

Even if the Court were to consider Plaintiff's attempt to weaponize her state-court defenses here, her claims would still fail.  To begin, Plaintiff cannot proceed on her contract-based claims.  Despite enjoying no obligation to pay on the mortgage agreement she has never been a party to, she now improperly seeks to enforce the very terms that have never applied to her.  Plaintiff cannot have her cake and eat it too.  As a stranger to the contract, she lacks standing under Florida law to assert a breach of contract claim.  She likewise cannot assert a claim for breach of the implied covenant of good faith and fair dealing because it is redundant of her untenable breach of contract claim.  Her civil RICO claim—which is little more than a dressed-up version of her breach of contract claim—also cannot survive.  Courts routinely dismiss attempts to expand the reach of the RICO statute to encompass mere contractual disputes.  In any event, Plaintiff cannot satisfy Rule 9(b)'s stringent pleading requirements for establishing a predicate act.

Numerous deficiencies similarly plague Plaintiff's grab bag of consumer protection-related claims—allegations largely rehashed from her unsuccessful defenses in the state foreclosure proceeding.  Again, as a non-party to the mortgage contract with BANA, Plaintiff is not a "debtor" or "consumer" under either the Florida Consumer Collection Practices Act ("FCCPA") or Fair Debt Collection Practices Act ("FDCPA") and therefore lacks standing to sue under either the state or federal statute.  For similar reasons, she lacks standing to sue under the Truth in Lending Act ("TILA").  And under all three statutes, Plaintiff's claims are time-barred.  In any event, Plaintiff's FCCPA and FDCPA claims cannot be premised on TILA-required statements, which courts routinely hold are not "debt collection" activities.

Plaintiff also alleges claims that are simply inapplicable here under Florida law.  Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") fails because the statute does not apply to federally regulated banks such as BANA.  And Plaintiff's

claim for unjust enrichment cannot survive where she cannot allege that she actually paid the disputed fees to BANA, much less that BANA accepted or retained any such benefit.

Plaintiff's last-ditch, kitchen-sink gambit to forestall BANA's foreclosure action should be rejected. This Court should abstain or, in the alternative, dismiss Plaintiff's claims with prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiff purchased the Property subject to BANA's lien but has never been a party to BANA's Agreement with the original borrower.

On February 15, 2005, Anita Mandal purchased the property at issue, located at 5 Marina Gardens Drive, Palm Beach Gardens, Florida 33410 (the "Property"), and executed a note in favor of BANA in the principal amount of $988,000, as well as a mortgage securing the note (together, the "Agreement"). Compl. ¶ 73; ECF No. 1-4, Ex. 1 (copy of note and mortgage). In or around 2010, Ms. Mandal defaulted on the Agreement with BANA and subsequently failed to pay her homeowners' association ("HOA") dues. The HOA took action first, foreclosing on the Property to recover Ms. Mandal's delinquent HOA dues.

On May 8, 2012, capitalizing on the foreclosure action, Plaintiff purchased the Property from the HOA for just $7,400[2]—a fraction of the nearly $1 million it is worth today. Compl. ¶ 73; RJN, Ex. A.[3] But Plaintiff's purchase resolved only Ms. Mandal's debt to the HOA. BANA still had a senior lien on the Property, so even though Plaintiff took title to the Property, the Property remained subject to BANA's lien. Compl. ¶ 73; *Garcia v. Stewart*, 906 So. 2d 1117, 1120 (Fla. Dist. Ct. App. 2005) ("[F]oreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed. . . . [T]he successful bidder at a junior lien foreclosure takes title subject to the prior liens."). Indeed, since Plaintiff took title to the Property, the mortgage has remained in default, as Plaintiff did not assume the Agreement or satisfy the mortgage balance. *See generally* Compl.

---

[2] RJN, Ex. B.

[3] Citations to "Ex. __" are to the exhibits attached to the Declaration of J. Randolph Liebler in support of BANA's Request for Judicial Notice.

**B.      BANA initiates foreclosure proceedings in 2012 that remain pending, and Plaintiff files numerous failed claims against BANA in multiple actions.**

To recover the amount Ms. Mandal still owed, BANA initiated a mortgage foreclosure action on July 18, 2012.  RJN, Ex. C.  On March 4, 2014, BANA added Plaintiff as a party to that case.  RJN, Ex. D.  After years of seeking to quash service, Plaintiff was finally served in 2018.  But instead of just answering BANA's amended complaint, Plaintiff went on the offensive.  She counterclaimed for "slander of title" in 2018, complaining that BANA's foreclosure placed a "cloud" on the Property, and alleging that BANA's actions "were illegal, improper, and in violation of law."  RJN, Ex. E.

Recognizing that the counterclaim was meritless, Plaintiff voluntarily dismissed the claim, RJN Ex. F, but then initiated a separate action against BANA on July 16, 2019, alleging violation of the FCCPA based on a July 12, 2018 payoff correspondence that BANA allegedly sent to Plaintiff, RJN, Ex. G.  Among other allegations, Plaintiff claimed that the payoff letter included "charges that were not due and owing and which were never incurred," and that property inspection fees that purportedly "did not occur" were "manufactured to illegally bill" Plaintiff.  RJN, Ex. G ¶¶ 14–16, 21–22.  That complaint, too, was baseless, and voluntarily dismissed on May 7, 2021.  RJN, Ex. H.

On May 15, 2020, the state court granted Plaintiff's motion to file, and deemed filed, an amended answer to BANA's amended complaint in the foreclosure action, adding counterclaims for violation of the FCCPA and unjust enrichment.  RJN, Exs. I and J.  Those claims, like Plaintiff's claims in this case, are premised on allegedly unwarranted property inspection and unnecessary insurance fees added to the loan balance.  RJN, Ex. I.  BANA filed a motion to dismiss those two counterclaims, which the court granted with leave to amend.  RJN, Exs. K and L.  But instead of simply amending her FCCPA and unjust enrichment claims, as the court instructed, Plaintiff improperly added five causes of action, including an alleged TILA violation, which she likewise alleges here.  RJN, Ex. M.  BANA moved to dismiss those claims, and the court dismissed them with prejudice on February 2, 2021, but her FCCPA and unjust enrichment claims remain pending.  RJN, Exs. N and O.

On April 6, 2021, BANA and Plaintiff convened for a mediation conference in the state foreclosure action.  RJN, Ex. P.  The parties were unable to reach an agreement.  RJN, Ex. Q.

**C.      Plaintiff files the federal Complaint with allegations overlapping the state foreclosure action.**

With the state foreclosure action still pending after almost ten years of litigation and nowhere close to resolution, Plaintiff now comes to federal court in hopes of manufacturing leverage.  On May 7, 2021, shortly after the failed mediation, she filed this putative class action against BANA and Safeguard Properties Management, LLC ("Safeguard"), seeking to transform the affirmative defenses in her individual foreclosure action into offensive class-wide claims. ECF No. 1 ("Compl.").  Hewing closely to her core state-court allegations, Plaintiff alleges: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) violations of the FCCPA, Fla. Stat. § 559.72(9); (5) violations of the FDCPA, 15 U.S.C. § 1692, et seq.; (6) violations of the TILA, 15 U.S.C. § 1601, et seq.; (7) violations of the FDUTPA, Fla. Stat. §§ 501.201-501.203; and (8) violation of RICO subsection (c), 18 U.S.C. § 1961, et seq.  Compl. ¶¶ 150–282.

Plaintiff challenges fees related to property inspections that were permitted under BANA's Agreement with Ms. Mandal, Compl. ¶ 45 ("Lender . . . may make reasonable entries upon and inspections of the Property"), but that, according to Plaintiff, were excessive, unreasonable, and unnecessary.  *Id.* ¶ 80 (alleging 100 inspections from May 17, 2010, through March 6, 2019); *id.* (alleging that a guard of the Property's gated community denied the inspector access for 57 inspections); *id.* ¶ 158 (claiming that Plaintiff inhabited the Property when inspections were ordered).  She also contends that BANA improperly added these inspection fees to the loan balance, notwithstanding clear language in the Agreement (attached and incorporated into the Complaint) explicitly stating that BANA "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property," and that "any amount disbursed by the Lender for taking [such] action . . . becomes additional debt of Borrower secured by this Security Instrument."  Compl. ¶ 45; ECF No. 1-4, Ex. 1 at 15.

Additionally, Plaintiff challenges BANA's application of lender-placed insurance ("LPI") on the Property.  As Plaintiff concedes, BANA is contractually permitted under its Agreement with Ms. Mandal to obtain insurance coverage where the coverages described in the Agreement are not adequately maintained.  Compl. ¶ 89; ECF No 1-4, Ex. 1 at 13.  BANA expressly discloses that "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance" that could have been obtained, and that "amounts disbursed by Lender . . . shall

become additional debt of Borrower secured by this Security Instrument." ECF No 1-4, Ex. 1 at 13.  Among the coverages required by the Agreement—and at issue here—is flood insurance. *Id.* (stating the Property must be "insured against loss by . . . floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts . . . and for periods that Lender requires.").  According to Plaintiff, BANA applied high-premium LPI to the Property despite Plaintiff's having allegedly maintained coverage "at all relevant time periods."  Compl. ¶¶ 87, 93, 124–125.  Plaintiff, however, does not and cannot allege that she has paid any of the property inspection fees or LPI premiums that BANA added to the loan balance.  *See generally* Compl.

Plaintiff's allegations are overlapping and, in some instances, essentially identical with her assertions in the state foreclosure case.  For example:

| Allegations | State Proceeding | Federal Complaint |
|---|---|---|
| BANA "fraudulently charged for property inspections that were never performed."[4] | RJN, Ex. M ¶ 17; *see also id.* ¶¶ 11, 16; RJN, Ex. I ¶ 37. | Compl. ¶ 79; *see also id.* ¶¶ 1, 27, 33, 51-56, 58, 61, 70, 157–161, 169, 171, 175, 243, 246–247. |
| BANA charged fees for lender-placed "property insurance that was not necessary and/or never procured," despite Plaintiff maintaining adequate flood insurance coverage. | RJN, Ex. M ¶ 12; *see also id.* ¶ 37. | Compl. ¶ 76 n.14; *see also id.* ¶¶ 2, 81–87, 94–101, 113–114, 117, 119–121, 126, 145, 162, 169, 171, 175. |
| "Due to the nature of the gated community in which the Property is located, Sullivan suspected that the amounts BOA claimed to be owed for purported property inspections were false and otherwise fraudulent." | RJN, Ex. M ¶ 16. | Compl. ¶ 78. |
| BANA does not accurately disclose the amounts due and owing under the mortgage. | RJN, Ex. M ¶¶ 14–15; RJN, Ex. I ¶¶ 27–31. | Compl. ¶¶ 74, 76, 79, 131, 145, 218, 228, 230. |

Plaintiff continues to prosecute her counterclaims in the foreclosure action—both also pleaded in her federal complaint—in state court, where she filed a motion to strike BANA's affirmative defenses to those claims earlier this week.  RJN, Ex. R.

---

[4] Quoted language in these tables is identical in the Complaint and pleadings in the state court foreclosure action.

**ARGUMENT**

Plaintiff must "plead sufficient facts to state a claim that is plausible on its face." *Megaval Enters., Ltd. v. Bank of Am., N.A.*, 2014 WL 12609318, at *2 (S.D. Fla. Oct. 8, 2014). To do so, Plaintiff must allege "more than labels and conclusions." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*, 2019 WL 1406466, at *1 (S.D. Fla. Mar. 28, 2019). "When a plaintiff pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Megaval Enters.*, 2014 WL 12609318, at *3. Here, Plaintiff's allegations fall well short of this well-established standard and, accordingly, dismissal is warranted.

**I.   THE COURT SHOULD ABSTAIN UNDER *COLORADO RIVER* AND STAY THIS CASE IN FAVOR OF THE FIRST-FILED FORECLOSURE ACTION.**

Under the *Colorado River* doctrine, which authorizes a federal court to stay or dismiss a federal suit that is duplicative of a parallel suit pending in state court, this Court need not even consider Plaintiff's claims. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–16 (1976). Indeed, federal courts routinely abstain under *Colorado River* when a plaintiff challenges conduct already challenged in state foreclosure proceedings. *See, e.g.*, *Willson v. Bank of Am., N.A.*, 2016 WL 8943333, at *6 (S.D. Fla. May 23, 2016) (collecting cases); *Hall v. Bank of Am., N.A.*, 2013 WL 10799537 (S.D. Fla. June 25, 2013) (staying federal LPI-related claims where plaintiffs asserted affirmative defenses and counterclaims relating to the same in state court); *DHL Express (USA) Inc. v. USS Logistics, LLC*, 2010 WL 11505107, at *3 (S.D. Fla. Aug. 18, 2010) (Dimitrouleas, J.) (abstaining and staying).

*Colorado River* applies where, as here, federal and state proceedings involve "substantially the same parties and substantially the same issues." *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (emphasizing that the "cases need not share identical parties and issues"). The parties here are substantially the same because Plaintiff and BANA are the key parties in both cases, and neither the additional defendant in the federal action (Safeguard) nor Plaintiff's choice to add a putative class (despite her highly individualized allegations) precludes a finding of substantial similarity. *Hall*, 2013 WL 10799537, at *1 (staying claims of named plaintiffs in putative class action based on parallel individual

foreclosure proceedings in Florida court); *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (cases substantially the same, including parties, where second action involved additional defendants).

The issues are also substantially the same. As illustrated above, in the foreclosure action, Plaintiff asserts affirmative defenses for "various fees and charges to the subject loan account," RJN, Ex. I ¶ 48; challenges "monthly fees for inspections that never occurred" and "duplicative and unnecessary insurance coverage," RJN, Ex. M ¶ 21; and claims that BANA listed these allegedly improper fees in various written communications, RJN, Ex. M ¶¶ 12–16. Those allegations mirror the Complaint here, which challenges property inspection fees and allegedly unnecessary LPI, Compl. ¶¶ 150–163, and contends that BANA's communications were inaccurate because they included property inspection and LPI fees that Plaintiff contends were improper, *id.* ¶¶ 193–233. Plaintiff's core allegations in the foreclosure action are therefore substantially similar to the allegations in this case, as are the issues in both actions. *See Sini*, 990 F. Supp. 2d at 1377 (issues substantially the same where "the same conduct … forms the basis" for a party's claims in both actions and a ruling in one court could affect liability in the other, even where not every specific issue in the federal case is before the state court); *Hall*, 2013 WL 10799537, at *1 (abstaining despite a RICO claim, among others, not alleged in state court).

Where, as here, the parties and issues are substantially similar, courts "flexibly and pragmatically" weigh a range of factors to decide whether to abstain, including:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal*, 368 F.3d at 1331. The U.S. Supreme Court has also emphasized "that 'the vexatious or reactive nature of either the federal or the state litigation' is an important consideration." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1346 (S.D. Fla. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983)). These factors favor abstention here.

***Jurisdiction over Property.*** The state court asserted jurisdiction over the Property on July 18, 2012, nearly a decade before Plaintiff filed this Complaint. RJN, Ex. S. That strongly favors abstention. *See Burgos v. Suntrust Bank N.A.*, 2014 WL 11880360, at *4 (S.D. Fla. Nov. 17, 2014) (abstaining where bank filed notice of lis pendens five years before plaintiff filed

federal complaint), *report and recommendation adopted*, 2015 WL 11201189 (S.D. Fla. Jan. 26, 2015); *Hendricks v. Mortg. Elec. Registration Sys. Inc.*, 2013 WL 1279035, at *4 (M.D. Fla. Mar. 28, 2013) (same, with notice of lis pendens filed one year before federal complaint).

**Order and Progress of Litigation.**  Courts consider not just "which complaint was filed first," but also "how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 22.  Here, BANA first filed its foreclosure action in 2012 and named Plaintiff as a defendant in 2014, and after years of litigating service of process, Plaintiff filed her first answer, affirmative defenses, and counterclaim on March 16, 2018.  RJN, Ex. E.  Plaintiff has thus been involved in the state case for more than seven years, the parties have litigated the same issues for more than three, and multiple dispositive motions and amended pleadings have been filed.  *Cf. Bosdorf*, 79 F. Supp. 2d at 1345 (weighing this factor in favor of abstention where the state proceeding began less than a year before federal action).  Moreover, discovery began years ago in the state proceeding—Plaintiff filed her first motion to compel discovery in July 2018, RJN, Ex. T—which itself "is a persuasive factor when deciding whether to abstain."  *Sini*, 990 F. Supp. 2d at 1378.  Because the state "action was first filed and now has progressed substantially farther than the instant action, . . . this factor weighs heavily in favor of abstention."  *DHL Express*, 2010 WL 11505107, at *3 (abstaining and staying).

**Piecemeal Litigation.**  Abstention is favored when "the two cases, though not 'identical,' are so inextricably intertwined in both their factual and legal issues that dual litigation would likely result in deleterious duplication of judicial resources."  *Sini*, 990 F. Supp. 2d at 1379. Plaintiff asserts both of her surviving state counterclaims (for violation of the FCCPA and unjust enrichment) in this Complaint, and all of Plaintiff's claims in both cases hinge on the same issue: whether BANA's property inspection and LPI fees and disclosures were lawful.  "Given the duplicative . . . counterclaims in the state action, the redundant proofs required by the respective claims, and the potential for conflicting rulings . . . this factor weighs strongly in favor of abstention."  *Id.* at 1379–80.

**Vexatious or Reactive.**  As with the Complaint here, a suit is "likely reactive" if it is filed "long after the state court ha[s] been asked to decide" the issue.  *Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760, 764 (11th Cir. 2018).  Plaintiff litigated her claims in state court for three years, repeatedly changing strategy and retaining additional counsel.  RJN, Exs. U, V, W, X, Y and Z.  On February 3, 2021, the state court dismissed with prejudice five of Plaintiff's

counterclaims, and just three months later Plaintiff filed this Complaint—which realleges the same TILA claim that the state court rejected. Plaintiff's belated excursion to federal court is a transparent "attempt to avoid adverse or unfavorable rulings," warranting abstention. *Bosdorf*, 79 F. Supp. 2d at 1346 (finding this "factor weighs significantly" and abstaining); *accord Willson*, 2016 WL 8943333, at *5 (emphasizing that a federal filing in response to a loss in state court favors abstention).

*Other Factors.* The remaining factors are neutral. The state and federal fora are comparably convenient, *see Bosdorf*, 79 F. Supp. 2d at 1344, and the state court is entirely capable of protecting Plaintiff's rights, including by adjudicating her federal claims—indeed, Plaintiff brought several in the state foreclosure proceedings. *See Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 133 (11th Cir. 2005); *Bosdorf*, 79 F. Supp. 2d at 1345–46.

In sum, "the preponderance of the factors … weigh[s] strongly in favor of abstention," and "no factor weighs against abstention." *DHL Express*, 2010 WL 11505107, at *3. "Florida foreclosure proceedings adequately protect the rights of all parties," *Stuart v. Ryan*, 818 F. App'x 858, 863 (11th Cir. 2020), and a parallel federal case can lead only to "interference with the orderly and comprehensive disposition of the state court proceeding," *Delta Dev. & Constr. Corp. v. Sav. One Ass'n*, 637 F. Supp. 629, 631 (S.D. Fla. 1986). Rather than reward Plaintiff's gamesmanship and dilatory tactics, this Court should allow the state court to adjudicate the parties' dispute in the first instance (as it has been doing for years) and stay this needlessly duplicative lawsuit.

## II.   EVEN IF THE COURT WERE NOT TO ABSTAIN, PLAINTIFF'S INDIVIDUAL CLAIMS FAIL.

Although this Court need not duplicate the work of the state court, it will have no trouble identifying the deficiencies in Plaintiff's individual claims if it should choose to consider them. Plaintiffs' contract-based claims all fail as a matter of law—foremost because Plaintiff is not even a party to the Agreement she seeks to enforce. She similarly lacks standing to assert her laundry list of consumer protection claims, all of which are time-barred in any event. And Florida law forecloses her FDUTPA and unjust enrichment claims, given that BANA is a federally regulated bank and Plaintiff conferred on it no benefit.

**A.      Plaintiff's contract-based claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of civil RICO must be dismissed.**

**1.      Plaintiff lacks standing to allege breach of contract.**

Despite never having assumed the Agreement—which has allowed her to personally avoid the obligation to pay under the Agreement for nearly a decade—Plaintiff now seeks to enforce the Agreement's terms.  She claims that BANA breached the Agreement by adding excessive[5] and unnecessary property inspection and LPI fees to the loan balance.  Compl. ¶¶ 127, 135.  But that assertion is not even colorable.  As a stranger to the Agreement, Plaintiff lacks standing to enforce it.

Florida law is clear: "A person who is not a party to a contract may not sue for a breach of that contract" even if the person receives some incidental benefit from it.  *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So.2d 1028, 1030–31 (Fla. 4th DCA 1994).  Here, Plaintiff concedes that when she purchased the Property from the HOA in 2012, she merely "acquired title . . . subject to the previous owner's first mortgage of record."  Compl. ¶ 73.  But Plaintiff does not and cannot allege that she ever assumed or became a party to the Agreement.  *See generally* Compl.[6]  Simply stated, Plaintiff wants to enforce the terms of an Agreement that have at no point applied to her.  *LaFaille v. Nationstar Mortg., LLC*, 197 So. 3d 1246, 1247 (Fla. 3d DCA 2016) (subsequent purchaser not a party to the mortgage contract generally cannot assert rights under the contract that belong to the parties); *see also Olivares v. Pyatt*, 2015 WL

---

[5] To the extent Plaintiff claims that the LPI premium rates are too high, that claim would be precluded by the filed-rate doctrine.  *Patel v. Specialized Loan Serv LLC*, 183 F. Supp. 3d 1238, 1244 (S.D. Fla. 2016) (dismissing all claims premised on allegations that insurer and loan servicer "charged borrowers inflated premiums as a result of kickbacks"), *aff'd* 904 F.3d 1314 (11th Cir. 2018); *Trevathan v. Select Portfolio Serv., Inc.*, 142 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (Dimitrouleas, J.) (extending filed-rate doctrine to lender/servicers and dismissing "claims arising from inflated rates . . . with prejudice").

[6] Even if Plaintiff were a party to the Agreement, her claims would fail because she did not comply with the notice and cure provision in paragraph 20 of the Agreement.  ECF No. 1-4, at 20.  *See Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *2–3 (S.D. Fla. July 2, 2015) (dismissing all of plaintiff's RICO, breach of contract, breach of implied covenant, and unjust enrichment claims against mortgage loan servicer for failure to comply with the notice and cure provision); *Charles v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (dismissing TILA, FDCPA, and FCCPA claims based on allegedly inflated property-inspection fees because plaintiff failed to comply with the mortgage's pre-suit notice and cure provisions before commencing the action).

12751698, at *3–4 (S.D. Tex. Aug. 15, 2016) (dismissing third-party purchaser's breach of contract claim for lack of standing, reasoning that the plaintiff could not bring contract-related claims when he had no contract with the bank).  But this attempt plainly fails under well-established Florida law.

### 2.    Plaintiff's implied covenant claim fails with her breach of contract claim, and is redundant in any event.

Plaintiff's implied covenant claim fails for similar reasons.  According to Plaintiff, BANA breached the implied covenant of fair dealing by ordering property inspections that were more frequent than necessary and selecting LPI with high premiums.  Compl. ¶¶ 169, 171.  But these are the same core allegations underlying her empty breach of contract claim.  *Id.* ¶ 158 ("inspections were neither reasonable nor appropriate"); *id.* ¶ 159 ("excessive and unfair property inspections"); *id.* ¶ 162 (LPI was "unnecessary and excessive").  This alone warrants dismissal because Plaintiff's implied covenant claim is redundant of her breach of contract claim. *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (implied covenant claim dismissed as redundant where "based on the same allegations" as contract claim).

This claim also fails for the independent reason that it "cannot be maintained under Florida law in the absence of a breach of an express term of a contract."  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005); *see also Royale Green Condo Ass'n v. Aspen Specialty Ins. Co.*, 2008 WL 11333559, at *2 (S.D. Fla. July 24, 2008) ("Under Florida law . . . there is no independent cause of action for breach of an implied covenant of good faith and fair dealing.").  Because Plaintiff lacks standing to allege a breach of contract claim, so too must her implied covenant claim fail.  *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1361 (S.D. Fla. 2011) (dismissing good faith and fair dealing claim where plaintiff failed to allege valid contract with defendant).

### 3.    Plaintiff's civil RICO claim cannot transform an alleged contractual breach into racketeering activity.

Plaintiff's attempt to expand the reach of civil RICO liability, based on BANA's ordering of property inspections and applying the disputed fees to the loan balance on the Property, fails as a matter of law.  Compl. ¶¶ 51–72, 235–282.  Courts routinely dismiss civil RICO claims where, as here, the claim is just a dressed-up attempt to assert a breach of contract.  *See Tardibuono-Quigley v. HSBC Mortg. Corp.*, 2017 WL 1216925, at *10 (S.D.N.Y. Mar. 30, 2017) (dismissing civil RICO claim where plaintiff alleged bank was charging unnecessary

inspection fees because "[a]t best, the plaintiffs allege mail and wire fraud occur where accurate account statements are mailed to customers . . . [which] cannot be the basis for a RICO claim"); *cf. Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000) (dismissing civil RICO claim because the "facts alleged in this contractual dispute are not the types of activities that RICO was intended to eliminate . . . [and a]ny other interpretation would indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity'").

Plaintiff fails to state a civil RICO claim in any event.  To state a civil RICO claim based on predicate acts of mail and wire fraud, Compl. ¶¶ 256–280, Plaintiff must satisfy the stringent pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Tardibuono-Quigley*, 2017 WL 1216925, at *9 (noting that "all allegations of fraudulent predicate acts are subject to the heightened pleading requirements" of Rule 9(b), including "allegations of predicate acts of mail and wire fraud").  Specifically, Rule 9(b) requires that Plaintiff allege "what statements . . . documents or oral representations or what omissions were made," the "time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same," the "content of such statements" and "manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud."  *See Dykes v. Bank of Am., N.A.*, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018) (Dimitrouleas, J.) (dismissing fraud claim premised on property inspection fees).

Here, the Complaint is devoid of the specific facts required to satisfy Rule 9(b).  For example, Plaintiff does not specify when the alleged predicate acts occurred.  Nor does she allege with any specificity what the false statements were in the alleged "mortgage invoices, loan statements, payoff demands, or proofs of claims" she purportedly received.  Compl. ¶ 268.  Rather, Plaintiff's core claim is simply that because she considers the property inspections unwarranted, the fees must be incorrect.  *Id.* ¶ 128 ("imposition of improper fees renders . . . disclosures inaccurate").  But this is insufficient to satisfy Rule 9(b) and adequately state predicate acts of mail and wire fraud under civil RICO.  *Gustafson v. BAC Home Loans Serv.,*

*LP*, 2012 WL 7071488, at *7 (C.D. Cal. Dec. 26, 2012) (dismissing RICO claim in LPI case for failure to specify what was misleading about or misrepresented in communications).[7]

**B.   Plaintiff's consumer protection-related claims for alleged violations of the FCCPA, FDCPA, and TILA fail and are time-barred in any event.**

Plaintiff throws three consumer protection statutes against the proverbial wall, hoping something sticks by rehashing allegations from her dismissed FCCPA case and her pending counterclaims in the state foreclosure action.  But none of them apply.  Plaintiff claims that BANA violated section 559.72(9) of the FCCPA by attempting to collect property inspection fees and LPI premiums that it purportedly knew were not legitimate debts, Compl. ¶ 189, and sections 1962e(2)(A), e(2)(b), e(10), and f(1) of the FDCPA by using allegedly "deceptive means" of collecting improper debts not authorized by the Agreement through monthly loan and payoff statements, *id.* ¶¶ 198, 203–206.  She also claims that BANA violated TILA by sending her documents that were allegedly inaccurate because they included the fees she deems "improper," and by not disclosing that the challenged fees were assessed.  *Id.* ¶¶ 128–131, 214–219.  Numerous deficiencies plague these claims.

**1.   Plaintiff lacks standing to sue under the FCCPA, FDCPA, and TILA.**

*FCCPA and FDCPA.*  Plaintiff, as a stranger to the Agreement, lacks standing to sue for violations of the FCCPA and FDCPA because, by her own allegations, she is not a "debtor" or "consumer" under the plain meaning of the statutes.  Florida Statute section 559.55(8) defines a "debtor" or "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  Similarly, the FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt" and "debt" as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction."  15 U.S.C. §§ 1692a(3) & 1692a(5).

Here, as discussed, Plaintiff neither claims to be nor is a party to the Agreement, so she cannot be a borrower or mortgagor.  *See generally* Compl.; *id.* ¶ 73 (explaining that Plaintiff is a third-party purchaser).  And because she has never assumed the Agreement or the obligation to pay that comes with it—despite taking title to the Property subject to the mortgage balance—Plaintiff does not and cannot allege that she owes any "obligation" to pay under the loan.  *Cf.*

---

[7] Although it is unclear whether Plaintiff alleges a violation of Section 1962(d) in addition to her Section 1962(c) claim, to the extent she does, her Section 1962(d) claim fails because Plaintiff has failed to state a claim for substantive RICO violations.  *Gutterman v. Herzog*, 2020 WL 6728787, at *8 (E.D.N.Y. Nov. 16, 2020) (dismissing civil RICO claims).

*Centennial Bank v. Noah Grp., LLC*, 2010 WL 11558224, at *2 (S.D. Fla. Oct. 20, 2010) (non-party to loan "could [not] be obligated to satisfy any amount due" under the loan); *Morse v. City Fed. Sav. & Loan Ass'n*, 567 F. Supp. 699, 703 (S.D. Fla. 1983) (suggesting obligation to assume mortgage debt not complete until there is clear agreement between bank and transferee). Because Plaintiff "is not obligated, or allegedly obligated, to pay any debt to [BANA], [s]he is not a consumer under the FDCPA." *Condon v. Glob. Credit & Collection Corp.*, 2010 WL 5071014, at *6 (M.D. Fla. Dec. 7, 2010) (dismissing FDCPA and FCCPA claims where plaintiff was a non-obligor). Accordingly, Plaintiff lacks standing to assert her FDCPA claim here, and because she "lacks standing under the FDCPA, [s]he also lacks standing to assert the same violation under the FCCPA," *id.*, which is "construed in accordance with the FDCPA," *Jones v. Select Portfolio Servicing, Inc.*, 2018 WL 2316636, at *2 (S.D. Fla. May 2, 2018) (dismissing FCCPA and FDCPA claims).

**TILA.** Similarly, Plaintiff lacks standing to raise a TILA claim because she was "not a party to the mortgage or note." *Britt v. Flagstar Bank, FSB*, 2011 WL 6941710, at *4 (E.D. Mich. Oct. 27, 2011), *report and recommendation adopted sub nom. Britt v. Flagstar Bank*, 2012 WL 12804 (E.D. Mich. Jan. 4, 2012) (dismissing TILA claim); *see also Thomas v. Guild Mortg. Co.*, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (dismissing TILA claim for lack of standing because the plaintiff was not a party to the mortgage); *cf. Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868 (11th Cir. 2010) (holding that non-borrower lacked Article III standing where she was not a party to the loan). Plaintiff's TILA claim must be dismissed in its entirety for this reason alone.

### 2. The FCCPA's, FDCPA's, and TILA's statutes of limitations preclude Plaintiff's claims.

Plaintiff's FCCPA, FDCPA, and TILA claims are also each time-barred. TILA and the FCDPA each impose a one-year statute of limitations, both of which run "from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (one-year FDCPA statute of limitations); *see Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (rejecting argument that limitations period for FDCPA begins when plaintiff knew or should have known of the violation); 15 U.S.C. § 1640(e) (one-year statute of limitations for TILA). Similarly, the FCCPA's two-year statute of limitations begins to run "from the date the alleged violation occurred." Fla. Stat. Ann. §

559.77(4); *Harrington v. Roundpoint Mortg. Servicing Corp.*, 163 F. Supp. 3d 1240, 1246–47 (M.D. Fla. 2016) (FCCPA limitations period begins to run on the date of each violation).

Here, Plaintiff has been involved in a dispute with BANA over the Property since 2014, when BANA added her as a party to the foreclosure action.  Compl. ¶ 75; RJN, Exs. D and AA. Plaintiff's LPI- and inspection-based allegations are thus time-barred under each statute's limitations period.  According to Plaintiff, BANA violated the FCCPA and FDCPA when it attempted to collect debts through mortgage or payoff statements, and violated TILA through certain disclosures as well.  Compl. ¶¶ 181–208.  But the dates Plaintiff alleges she received written communications from BANA—December 17, 2017, Compl. ¶ 127; and March 21, 2019, *id.* ¶ 77—all place her allegations outside the relevant limitations periods of all three statutes. Plaintiff also claims that she received a "TILA disclosure" on January 16, 2020, and a loan history statement on December 28, 2019, *id.* ¶¶ 78, 219, both of which predate her Complaint by more than a year, thus rendering her TILA and FDCPA claims time-barred.

To the extent Plaintiff contends that these dates fall within the FCCPA's two-year limitations period, that argument fails because, as discussed below, *see infra* Section II.B.3, TILA-required disclosures are not debt collection communications that trigger FCCPA liability. *Brown v. Select Portfolio Servicing*, 2017 WL 1157253, at *2–4 (S.D. Fla. Mar. 24, 2017) (Dimitrouleas, J.) (reasoning that disclosures mandated by TILA are not debt collection activities under the FCCPA).  And loan history statements, like the monthly mortgage statements at issue in *Brown*, are informational and not debt collection communications.

Nor can "equitable tolling" save Plaintiff's claims.  Although Plaintiff frames her allegations as establishing "equitable tolling," her claim is based on her purportedly delayed discovery of the alleged violation, Compl. ¶ 132 ("Plaintiff did not know and could not have learned the true facts underlying her claims"); *accord id.* ¶¶ 133–137, and thus under Florida law, she seeks to invoke the discovery rule, not equitable tolling.  *Hearndon v. Graham*, 767 So.2d 1179, 1184 (Fla. 2000) ("the delayed discovery doctrine may only be applied to the accrual of a cause of action" and is not equitable tolling).  The discovery rule, however, does not apply to FCCPA, FDCPA, or TILA claims.  *See, e.g.*, *Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *3 (S.D. Cal. Aug. 23, 2010) (finding TILA claim barred by statute of limitations and rejecting equitable tolling premised on allegations of "fraudulent concealment" of violations); *See Rotkiske*, 140 S. Ct. at 360–61 (limitations period does not begin when plaintiff

knew or should have known of the violation under FDCPA); *Crossman v. Asset Acceptance, L.L.C.*, 2014 WL 2612031, at \*5–6 (M.D. Fla. June 11, 2014) (discovery rule does not apply to FCCPA claims). Accordingly, Plaintiff's efforts to expand the limitations periods fall flat.

### 3.   Plaintiff fails to state a claim for violation of the FCCPA and FDCPA.

Even if Plaintiff had standing and her consumer protection-based claims were not time-barred, Plaintiff's FCCPA and FDCPA claims still fail. To the extent Plaintiff premises her FCCPA and FDCPA claims on her receipt of mortgage and payoff statements, black-letter law makes clear that the delivery of monthly mortgage statements is not an attempt to "collect a debt" under the FCCPA and FDCPA—indeed, TILA *requires* mortgagees, like BANA, to send such statements. *Jones*, 2018 WL 2316636, at \*3–5 (dismissing FCCPA and FDCPA claims with prejudice based on plaintiff's receipt of monthly mortgage statements with content required by TILA). This Court's ruling in *Brown* is instructive. There, the plaintiff alleged that the defendant had violated the FCCPA and FDCPA by sending a monthly mortgage statement that overstated the amounts owed on the loan. 2017 WL 1157253, at \*1. The court explained that the borrower could not state a claim under the FDCPA or FCCPA because the source of the claim—the monthly mortgage statement—"was not debt collection activity within the meaning of the FDCPA," and, in fact, TILA requires the mortgagee to send it. *Id.* at \*2–4; *id.* at \*2 ("Plaintiff cannot state a claim under the FDCPA with respect to the monthly mortgage statements sent pursuant to federal law."). The court did not even need to "determine if the [disputed information] contained in the mortgage statement provided misleading information because Plaintiff ha[d] no cause of action under the FDCPA" or FCCPA, and it dismissed those claims with prejudice. *Id.* at 4. So too should the Court dismiss Plaintiff's FCCPA and FDCPA claims here. *See, e.g.*, Compl. ¶ 197.

The same logic applies to payoff statements. Plaintiff alleges that she made "many repeated requests for a payoff statement," Compl. ¶ 76, and that BANA sent them, *e.g., id.* ¶ 198. Payoff statements, like monthly mortgage statements, are required to be sent under TILA. 15 U.S.C. § 1639g ("A creditor or servicer of a home loan shall send an accurate payoff balance . . . ."). They, too, are informational and, here, were sent at Plaintiff's request. For the same reasons that apply to mortgage statements, these payoff statements were not "debt collection" activities, and Plaintiff's FCCPA claim cannot be predicated on payoff statements

that she herself requested.  *Cf. Brown*, 2017 WL 1157253, at *2–4 (disclosures required by TILA not debt collection activities under the FCCPA).

Plaintiff's FCCPA claim also fails because she does not adequately allege that BANA intended to collect a debt that did not exist.  A plaintiff "must allege knowledge or intent" to state an FCCPA claim.  *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) (dismissing FCCPA claim with prejudice for failing to adequately allege knowledge). Merely alleging that BANA "knew it had no legal right to collect the fees," as Plaintiff does here, Compl. ¶ 190, is not enough.  "Under Florida law, the use of the word 'knows' requires actual knowledge of the impropriety . . . ."  *Reese*, 686 F. Supp. 2d at 1309.  As this Court has held, where "Plaintiff simply makes the conclusory allegation that Defendant[] . . . knew [it] did not have a legal right," "such conclusory allegations are clearly insufficient under *Twombly*" and must be dismissed.  *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (Dimitrouleas, J.) (dismissing FCCPA claim for failing to adequately allege knowledge).

Plaintiff's FDCPA claim must also be dismissed because it fails to satisfy Rule 9(b)'s stringent pleading requirements.  Where FDCPA claims are premised on false or misleading statements, such claims "must be pled with particularity pursuant to Rule 9(b)."  *Melford v. Kahane & Associates*, 2018 WL 5044601, at *4 (S.D. Fla. Oct. 17, 2018).  And since Plaintiff alleges that BANA's monthly loan and payoff statements were "deceptive" and represented those amounts "falsely or in a misleading manner," Plaintiff must satisfy Rule 9(b).  *Id.*; Compl. ¶¶ 203–205.  But Plaintiff fails to describe the nature, form, or substance of the communications, or when the communications were made.  Nor does she allege with the requisite detail what was false or misleading about the statements, other than to claim, in conclusory fashion, that the amounts were inaccurate because, in her view, BANA was not permitted to collect the fees.  *See* Compl. ¶¶ 203–206.  The Court need not credit this bald legal conclusion.  *Megaval Enters.*, 2014 WL 12609318, at *3.

### 4.     Plaintiff fails to state a claim for violation of TILA.

In addition to the same standing and limitations period barriers described above, Plaintiff's TILA claim fails for the independent reason that no new disclosure was required for the assessment of property inspection fees and LPI premiums.  According to Plaintiff, when BANA allowed "new and additional credit" through lender-placed insurance charges, it "created a new debt obligation" triggering a requirement under TILA to "provide a new set of disclosures

showing the amount of the insurance charges."  Compl. ¶¶ 214–215.  But as numerous courts have held, where the relevant fees—here, the LPI premiums and property inspection fees—did not change the terms of the mortgage agreement, they do not give rise to a disclosure obligation under TILA.  *Montoya v. PNC Bank, N.A.*, 2014 WL 4248208, at *16 (S.D. Fla. Aug. 27, 2014) (dismissing TILA claim where contract expressly allowed bank to apply lender-placed insurance and thus did not change the terms of the mortgage); *Hackett v. Bayview Loan Servicing, LLC*, 2018 WL 6812617, at *3 (D. Md. Dec. 27, 2018) ("[T]he property inspection fees, when assessed, did not require new TILA disclosures because the fees had been part of the original agreement.").  Since the Agreement here expressly allows BANA to assess the disputed fees, there was no change in the terms of the Agreement that would warrant a new disclosure under TILA.  *Hackett*, 2018 WL 6812617, at *3 ("fees contemplated in the original agreement are not 'new' credit transactions" triggering new disclosures merely because plaintiffs claim fees are improper).  Nor can Plaintiff rely on her conclusory allegation that the amounts in mortgage and payoff statements were inaccurate.  Compl. ¶¶ 128–129.  "That some of [the] fees included in the payoff statement are later disputed and could perhaps at a future date be removed or reversed does not render the payoff statement inaccurate for purposes of TILA."  *Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3163074, at *3 (S.D. Fla. Feb. 5, 2016) (dismissing TILA claim).

C.   **Plaintiff's FDUTPA and unjust enrichment claims are meritless under Florida law.**

1.   **Plaintiff cannot state a claim under the FDUTPA against BANA.**

Plaintiff's FDUTPA claim is a non-starter.  Under the plain language of the statute, the FDUTPA does not apply to "banks . . . regulated by federal agencies," like BANA, which is regulated by the OCC.  Fla. Stat. Ann. § 501.212(4)(c).  Accordingly, Plaintiff's FDUTPA claim fails as a matter of law.  *See Dykes*, 2018 WL 7822282, at *3 (dismissing FDUTPA claim against BANA because BANA "is statutorily exempt from suit for violating the FDUTPA").

2.   **Plaintiff's unjust enrichment claim fails because she conferred no benefit on BANA.**

Plaintiff's unjust enrichment claim fares no better.  As a threshold matter, to the extent Plaintiff takes the unfounded position that she is a party to the Agreement, her unjust enrichment claim is foreclosed.  "No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract."  *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (dismissing unjust enrichment claim).

But regardless of her contractual allegations, Plaintiff fails to state an unjust enrichment claim because she cannot adequately allege that she conferred a benefit on BANA, or that BANA voluntarily accepted and retained the benefit conferred. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (elements include that "the defendant voluntarily accepted and retained that benefit; and [] the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof"). Fatal to Plaintiff's claim is her failure to allege that she actually paid the property inspection fees or LPI premiums she claims BANA added to the loan balance, *see generally* Compl.; she alleges only that BANA "charged" those fees, *see, e.g.*, *id.* ¶¶ 175, 177. While she alleges that she made payments on invoices that "included" property inspection fees and LPI premiums, *id.* ¶ 268, she does not allege, nor can she, that she paid the invoices in full, or that any payments she purportedly made applied specifically to the property inspection fees or LPI premiums that BANA added to the loan balance. Because Plaintiff has conferred no benefit on BANA, her unjust enrichment claim must be dismissed. *Virgilio*, 680 F.3d at 1337 (affirming dismissal of unjust enrichment claim because plaintiffs did not confer a benefit on defendants); *Gardner v. GMAC, Inc.*, 796 F.3d 390, 397 (4th Cir. 2015) (dismissing unjust enrichment claim where disputed balance owed was not "collected" because the "full principal amount of the loan" had not been recouped). And because Plaintiff has made no payment to BANA, BANA has neither accepted nor retained any benefit from Plaintiff, which further warrants dismissal.

## CONCLUSION

Based on the foregoing, the Court should stay the case in favor of the first-filed foreclosure action in state court or, alternatively, grant BANA's Motion to dismiss the Complaint in its entirety with prejudice.

## REQUEST FOR ORAL ARGUMENT

BANA requests a hearing to clarify for the Court any questions it may have regarding the arguments in this Motion.

///

///

///

///

///

DATED:  July 16, 2021                  Respectfully submitted,

*/s/ Allen W. Burton*
Allen W. Burton (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
(212) 326-2000
aburton@omm.com

William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000
wpao@omm.com

*/s/ J. Randolph Liebler*
J. Randolph Liebler (Florida Bar #507954)
Dora F. Kaufman (Florida Bar #771244)
LIEBLER, GONZALEZ & PORTUONDO
44 West Flagler Street, Courthouse Tower,
25th Floor
Miami, FL 33130
(305) 379-0400
jrl@lgplaw.com
dfk@lgplaw.com
(Local Counsel)

*Attorneys for Defendant Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY the foregoing document was filed with the Clerk of the Court using CM/ECF on this 16th day of July, 2021.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.


*/s/ J. Randolph Liebler*
J. RANDOLPH LIEBLER