UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

KIMN S. SULLIVAN a/k/a KIMBERLY
SULLIVAN,

              Plaintiff,

  v.

BANK OF AMERICA, N.A., et al.,

              Defendants.

Case No. 9:21-CV-80828-WPD

DEFENDANT BANK OF AMERICA, N.A.'S
MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW

*Oral Argument Requested*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ................................................................. 3

    A.    Plaintiff purchased the Property subject to BANA's lien but has never been a party to BANA's Agreement with the original borrower. ........................ 3

    B.    BANA initiates foreclosure proceedings in 2012 that remain pending, and Plaintiff files numerous failed claims against BANA in multiple actions. ............ 3

    C.    Plaintiff files the federal Complaint with allegations overlapping with the state foreclosure action. ...................................................................................... 4

ARGUMENT ............................................................................................................................. 6

I.    THE COURT SHOULD ABSTAIN UNDER *COLORADO RIVER* AND STAY THIS CASE IN FAVOR OF THE FIRST-FILED FORECLOSURE ACTION ............... 7

II.    EVEN IF THE COURT WERE NOT TO ABSTAIN, PLAINTIFF'S INDIVIDUAL CLAIMS FAIL .................................................................................. 11

    A.    Plaintiff's contract-based claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of civil RICO must be dismissed .................................................................................. 11

        1.    Plaintiff lacks standing to allege breach of contract. ............................... 11

        2.    Plaintiff's implied covenant claim fails with her breach of contract claim, and is redundant in any event. ...................................................... 12

        3.    Plaintiff's civil RICO claim cannot transform an alleged contractual breach into racketeering activity. .......................................... 13

    B.    Plaintiff's consumer protection claims for alleged violations of the FDCPA, TILA, RESPA, and FDUTPA fail. ........................................................ 15

        1.    Plaintiff lacks standing to sue under the FDCPA, TILA, and RESPA. .................................................................................................. 15

        2.    The FDCPA's and TILA's statutes of limitations preclude Plaintiff's claims. .................................................................................. 17

        3.    Plaintiff fails to state her claims for violation of the FDCPA ................. 18

        4.    Plaintiff fails to state a claim for violation of TILA. .............................. 19

        5.    Plaintiff's FDUTPA claim is meritless under Florida law ...................... 20

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
  905 F. Supp. 2d 1334 (S.D. Fla. 2012) .................................................................... 13

*Ambrosia Coal and Constr. Co. v. Morales*,
  368 F.3d 1320 (11th Cir. 2004)............................................................................ 7, 8

*Baker v. Warner/Chappell Music, Inc.*,
  759 F. App'x 760 (11th Cir. 2018) ......................................................................... 10

*Barnes v. Compass Bank*,
  568 F. App'x 743 (11th Cir. 2014) ......................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 6

*Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*,
  2019 WL 1406466 (S.D. Fla. Mar. 28, 2019) .......................................................... 6

*Bosdorf v. Beach*,
  79 F. Supp. 2d 1337 (S.D. Fla. 1999) ............................................................ 8, 9, 10

*Branzuela v. JPMorgan Chase Bank*,
  2019 WL 5156722 (N.D. Cal. Oct. 15, 2019).......................................................... 16

*Britt v. Flagstar Bank, FSB*,
  2011 WL 6941710 (E.D. Mich. Oct. 27, 2011) ....................................................... 16

*Brown v. Portfolio Servicing Inc.*,
  2017 WL 1157253 (S.D. Fla. ................................................................................... 19

*Burgos v. Suntrust Bank N.A.*,
  2014 WL 11880360 (S.D. Fla. Nov. 17, 2014).......................................................... 9

*Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*,
  647 So.2d 1028 (Fla. 4th DCA 1994) ..................................................................... 12

*Centennial Bank v. Noah Grp., LLC*,
   2010 WL 11558224 (S.D. Fla. Oct. 20, 2010)........................................................ 15

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*,
  420 F.3d 1146 (11th Cir. 2005)............................................................................... 13

*Cirino v. Bank of Am., N.A.*,
  2015 WL 3669078 (C.D. Cal. Feb. 10, 2015).......................................................... 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Charles v. Deutsche Bank Nat'l Tr. Co.*,
  2016 WL 950968 (S.D. Fla. Mar. 14, 2016) ............................................................. 12

*Colo. River Water Conserv. Dist. v. United States*,
  424 U.S. 800 (1976) ................................................................................................... 1, 7

*Condon v. Glob. Credit & Collection Corp.*,
  2010 WL 5071014 (M.D. Fla. Dec. 7, 2010) ............................................................ 15

*Cummings v. Wells Fargo, N.A.*,
  2019 WL 180188 (N.D. Miss. Jan. 11, 2019) ........................................................... 17

*Delta Dev. & Constr. Corp. v. Sav. One Ass'n*,
  637 F. Supp. 629 (S.D. Fla. 1986) ........................................................................... 11

*DHL Express (USA) Inc. v. USS Logistics, LLC*,
  2010 WL 11505107 (S.D. Fla. Aug. 18, 2010) .................................................. 7, 9, 11

*Dykes v. Bank of Am., N.A.*,
  2018 WL 7822282 (S.D. Fla. July 10, 2018) ........................................................ 14, 20

*Foxfield Villa Assocs., LLC v. Regnier*,
  918 F. Supp. 2d 1192 (D. Kan. 2013) ....................................................................... 7, 8

*Fred McGilvray, Inc. v. Bank of Am., N.A.*,
  2010 WL 11586436 (S.D. Fla. May 5, 2010) .......................................................... 10

*Garcia v. Stewart*,
  906 So. 2d 1117 (Fla. Dist. Ct. App. 2005) ............................................................... 3

*Green v. Cent. Mortg. Co.*,
  2015 U.S. Dist. LEXIS 117241 (N.D. Cal. Sept. 2, 2015) ....................................... 16

*Gustafson v. BAC Home Loans Serv., LP*,
  2012 WL 7071488 (C.D. Cal. Dec. 26, 2012) ......................................................... 14

*Gutterman v. Herzog*,
  2020 WL 6728787 (E.D.N.Y. Nov. 16, 2020) ......................................................... 14

*Hackett v. Bayview Loan Servicing, LLC*,
  2018 WL 6812617 (D. Md. Dec. 27, 2018) ............................................................. 20

*Hall v. Bank of Am., N.A.*,
  2013 WL 10799537 (S.D. Fla. June 25, 2013) ........................................................ 7, 8

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Harper v. Chase Manhattan Bank*,
    138 F. App'x 130 (11th Cir. 2005) .................................................................. 10

*Hendricks v. Mortg. Elec. Registration Sys. Inc.*,
    2013 WL 1279035 (M.D. Fla. Mar. 28, 2013)........................................................ 9

*Hill v. Nationstar Mortg. LLC*,
    2015 WL 4478061 (S.D. Fla. July 2, 2015) ............................................................ 12

*Jackson v. Bank of Am., N.A.*,
    898 F.3d 1348 (11th Cir. 2018)........................................................................... 13

*Johnson v. Ocwen Loan Servicing*,
    374 F. App'x 868 (11th Cir. 2010) ...................................................................... 16

*Jones v. Select Portfolio Servicing, Inc.*,
    2018 WL 2316636 (S.D. Fla. May 2, 2018) ........................................................... 19

*LaFaille v. Nationstar Mortg., LLC*,
    197 So. 3d 1246 (Fla. 3d DCA 2016) .................................................................. 12

*Makeen Inv. Grp., LLC v. Woodstream Falls Condo. Ass'n, Inc.*,
    2017 WL 8309979 (D. Colo. Aug. 22, 2017) .......................................................... 8

*Megaval Enters., Ltd. v. Bank of Am., N.A.*,
    2014 WL 12609318 (S.D. Fla. Oct. 8, 2014)................................................ 6, 7, 19

*Melford v. Kahane & Associates*,
    2018 WL 5044601 (S.D. Fla. Oct. 17, 2018)........................................................ 19

*Montoya v. PNC Bank, N.A.*,
    2014 WL 4248208 (S.D. Fla. Aug. 27, 2014)........................................................ 20

*Morse v. City Fed. Sav. & Loan Ass'n*,
    567 F. Supp. 699 (S.D. Fla. 1983) ...................................................................... 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)............................................................................................ 8, 9

*O'Dell v. Doychak*,
    2006 WL 4509634 (M.D. Fla. Oct. 20, 2006) ....................................................... 10

*Olivares v. Pyatt*,
    2015 WL 12751698 (S.D. Tex. Aug. 15, 2016)...................................................... 12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Palestini v. Homecomings Fin., LLC*,
   2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) ....................................................... 18

*Patel v. Specialized Loan Serv LLC*,
   183 F. Supp. 3d 1238 (S.D. Fla. 2016) ................................................................. 11

*Rotkiske v. Klemm*,
   140 S. Ct. 355 (2019) .............................................................................................. 18

*Royale Green Condo Ass'n v. Aspen Specialty Ins. Co.*,
   2008 WL 11333559 (S.D. Fla. July 24, 2008) ...................................................... 13

*Royce Int'l Broad. Corp. v. Field*,
   2000 WL 236434 (N.D. Cal. Feb. 23, 2000) ......................................................... 13

*Senter v. JPMorgan Chase Bank, N.A.*,
   810 F. Supp. 2d 1339 (S.D. Fla. 2011) ................................................................. 13

*Sides v. Simmons*,
   2007 WL 3344405 (S.D. Fla. Nov. 7, 2007) ............................................................ 9

*Sini v. Citibank, N.A.*,
   990 F. Supp. 2d 1370 (S.D. Fla. 2014) ...................................................... 7, 8, 9, 10

*Sotomayor v. Deutsche Bank Nat'l Tr. Co.*,
   2016 WL 3163074 (S.D. Fla. Feb. 5, 2016) .......................................................... 20

*Spraggins v. Caliber Home Loans, Inc.*,
   2020 WL 8366645 (N.D. Tex. Dec. 31, 2020) ...................................................... 17

*Stuart v. Ryan*,
   818 F. App'x 858 (11th Cir. 2020) ........................................................................ 11

*Tardibuono-Quigley v. HSBC Mortg. Corp.*,
   2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017) ................................................. 13, 14

*Thomas v. Guild Mortg. Co.*,
   2011 WL 676902 (D. Ariz. Feb. 23, 2011) ........................................................... 16

*Trevathan v. Select Portfolio Serv., Inc.*,
   142 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................. 12

*Trustmark Ins. Co. v. ESLU, Inc.*,
   299 F.3d 1265 (11th Cir. 2002) ................................................................................ 9

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Vanover v. NCO Fin. Servs., Inc.*,
    857 F.3d 833 (11th Cir. 2017) ................................................................. 9

*Willson v. Bank of Am., N.A.*,
    2016 WL 8943333 (S.D. Fla. May 23, 2016) .................................... 7, 10

**Statutes and Regulations**

12 C.F.R. § 1024.30 ................................................................................ 16

12 C.F.R. § 1024.31 ................................................................................ 16

12 C.F.R. § 1024.37 ................................................................................ 10

12 U.S.C. § 2601 ..................................................................................... 16

12 U.S.C. § 2605 ....................................................................................... 5

15 U.S.C. § 1601 ....................................................................................... 5

15 U.S.C. § 1640 ..................................................................................... 18

15 U.S.C. § 1692 ....................................................................................... 5

15 U.S.C. § 1692a ................................................................................... 15

15 U.S.C. § 1692k ................................................................................... 18

15 U.S.C. § 1692a ................................................................................... 15

18 U.S.C. § 1961 ....................................................................................... 5

Fla. Stat. Ann. § 501.212 ....................................................................... 20

Fla. Stat. Ann. § 687.0304 ..................................................................... 11

**Rules**

Federal Rule of Civil Procedure 9 ................................................. 2, 13, 18

Defendant Bank of America, N.A. ("BANA") requests that the Court dismiss Plaintiff Kimn S. Sullivan's Amended Complaint.  Grounds for this motion are set forth in the following incorporated memorandum of law.[1]

## PRELIMINARY STATEMENT

When the owner of a waterfront townhouse in a gated Palm Beach community fell on hard times a decade ago, defaulting on both her BANA mortgage and her homeowners' association ("HOA") dues, Plaintiff saw an opportunity for a windfall.  Taking advantage of the HOA's foreclosure sale, Plaintiff purchased the three-bedroom home for pennies on the dollar— paying just $7,400 for a property now valued at nearly $1 million.  RJN, Ex. A.[2]  But while the sale resolved the original borrower's debt to the HOA, it did nothing to satisfy her obligation to BANA, which held a senior priority lien on the property.  As a result, even though Florida law allowed Plaintiff to take title of the property with no personal obligation to assume or pay under the existing agreement between BANA and the original borrower, the property was (and remains) still subject to BANA's lien.  Thus, while Plaintiff has no personal obligation to pay off the mortgage and note to discharge the lien, she needs to do so if she wants to keep the property.

But for nearly a decade, Plaintiff has frustrated BANA's efforts to recover its interest in the property.  In 2012, BANA initiated a state-court foreclosure action (the "Foreclosure Action"), which is still pending today.  BANA added Plaintiff as a party in 2014, only to watch her shield herself from litigating the case by evading and then seeking to quash service multiple times.  When Plaintiff finally appeared in the Foreclosure Action, she asserted a range of counterclaims and separate claims, which have gone nowhere.  Now, in a transparent attempt to further disrupt the foreclosure proceedings, Plaintiff asks this Court to transform her individual Foreclosure Action defenses and counterclaims into a federal putative class action, despite her highly individualized circumstances and the ongoing, overlapping Foreclosure Action.

Setting aside the dubious goals of this suit, Plaintiff's claims fail as a matter of law for multiple reasons.  First, because this action is duplicative of a pending state-court action, this Court should stay or dismiss Plaintiff's Complaint under the *Colorado River* doctrine.  *See Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813–816 (1976).  The same key

---

[1] Unless otherwise noted, internal citations and quotations are omitted, and emphases are added.
[2] Citations to "Ex. ___" are to the exhibits attached to the Declaration of J. Randolph Liebler in support of BANA's Request for Judicial Notice.

1

parties—BANA and Plaintiff—are already litigating substantially similar issues in the state Foreclosure Action that Plaintiff now seeks to litigate with better success on a parallel track here. Filing parallel federal litigation is unfortunately part of the playbook for individuals hoping to forestall a just foreclosure process, and federal courts routinely abstain under *Colorado River* when substantially similar conduct is already challenged in state proceedings.  The factors that courts weigh when deciding whether to abstain—including the state court's assertion of jurisdiction over the property in question, the progress made in that first-filed proceeding, the interest in avoiding piecemeal litigation, and Plaintiff's transparent attempt to escape the adverse rulings she received in state court—weigh strongly in favor of abstention here.

Even if the Court were to consider Plaintiff's attempt to weaponize her state Foreclosure Action defenses here, her claims would still fail.  To begin, Plaintiff cannot proceed on her contract-based claims.  Despite enjoying no obligation to pay on the mortgage agreement she has never been a party to, she now improperly seeks to enforce the very terms that have never applied to her.  Plaintiff cannot have her cake and eat it too.  As a stranger to the contract, she lacks standing under Florida law to assert a breach of contract claim.  She likewise cannot assert a claim for breach of the implied covenant of good faith and fair dealing because it is redundant of her untenable breach of contract claim.  Her civil RICO claim—which is little more than a dressed-up version of her breach of contract claim—also cannot survive.  Courts regularly dismiss attempts to expand the reach of the RICO statute to encompass mere commercial or contractual disputes like this one.  In any event, Plaintiff cannot satisfy Rule 9(b)'s stringent pleading requirements for establishing a predicate act.

Numerous deficiencies similarly plague Plaintiff's grab bag of consumer protection claims—allegations largely rehashed from her unsuccessful defenses in the Foreclosure Action. Again, as a non-party to the mortgage contract with BANA, Plaintiff is not a "debtor" or "consumer" under the Fair Debt Collection Practices Act ("FDCPA") and therefore lacks standing to sue under it.  She likewise lacks standing to sue under the Truth in Lending Act ("TILA") because she is not a "party to the mortgage or note" and the Real Estate Settlement Procedures Act ("RESPA") because she is not a "borrower."  And under both TILA and FDCPA, Plaintiff's claims are time-barred.  In any event, Plaintiff's FDCPA claim cannot be premised on TILA-required statements, which courts have repeatedly held are not "debt collection" activities. Finally, Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

fails because the statute does not apply to federally regulated banks such as BANA.

Plaintiff's last-ditch, kitchen-sink gambit to forestall BANA's foreclosure action—and unfairly occupy a property she has paid next to nothing to inhabit—should be rejected. This Court should abstain or, in the alternative, dismiss Plaintiff's claims with prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

### A.   Plaintiff purchased the Property subject to BANA's lien but has never been a party to BANA's Agreement with the original borrower.

On February 15, 2005, Anita Mandal purchased the property at issue, located at 5 Marina Gardens Drive, Palm Beach Gardens, Florida 33410 (the "Property"), and executed a note in favor of BANA in the principal amount of $988,000, as well as a mortgage securing the note (together, the "Agreement"). Amended Complaint ("AC") ¶ 73; Exhibit 1 to AC ("AC Ex. 1") (ECF No. 27–1) (copy of note and mortgage). In or around 2010, Ms. Mandal defaulted on the Agreement with BANA and subsequently failed to pay her homeowners' association ("HOA") dues. The HOA took action first, foreclosing on the Property to recover Ms. Mandal's delinquent HOA dues.

On May 8, 2012, capitalizing on the foreclosure, Plaintiff purchased the Property from the HOA for just $7,400[3]—a fraction of the nearly $1 million it is worth today. AC ¶ 73; RJN, Ex. B. But Plaintiff's purchase resolved only Ms. Mandal's debt to the HOA. BANA still had a senior lien on the Property, so even though Plaintiff took title to the Property, the Property remained subject to BANA's lien. AC ¶ 73; *Garcia v. Stewart*, 906 So. 2d 1117, 1120 (Fla. Dist. Ct. App. 2005) ("Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed. . . . The successful bidder at a junior lien foreclosure takes title subject to the prior liens.").[4] Indeed, since Plaintiff took title to the Property, the mortgage has remained in default, as Plaintiff did not assume the Agreement or satisfy the mortgage balance. *See generally* AC.

### B.   BANA initiates foreclosure proceedings in 2012 that remain pending, and Plaintiff files numerous failed claims against BANA in multiple actions.

To recover the amount Ms. Mandal still owed, BANA initiated the Foreclosure Action on July 18, 2012. RJN, Ex. C. On March 4, 2014, BANA added Plaintiff as a party to that case.

---

[3] RJN, Ex. A.

[4] Internal quotations and citations are omitted, and emphases are added unless otherwise noted.

RJN, Ex. D.  After years of evading and then seeking to quash service, Plaintiff was finally served in 2017.  RJN, Ex. E.  But instead of just answering BANA's amended complaint, Plaintiff went on the offensive.  She counterclaimed for "slander of title" in 2018, complaining that BANA's foreclosure placed a "cloud" on the Property, and alleging that BANA's actions in connection with the Property "were illegal, improper, and in violation of law."  RJN, Ex. F at 5.

Recognizing that her counterclaim was meritless, Plaintiff voluntarily dismissed the claim, RJN, Ex. G, but then initiated a separate action against BANA on July 16, 2019, alleging violation of the FCCPA based on a July 12, 2018 payoff correspondence that BANA allegedly sent to Plaintiff, RJN, Ex. H.  Among other allegations, Plaintiff claimed that the payoff letter included "charges that were not due and owing and which were never incurred," and that property inspection fees that purportedly "did not occur" were "manufactured to illegally bill" Plaintiff.  RJN, Ex. H ¶¶ 14–16, 21–22.  That complaint, too, was baseless, and it was eventually dismissed on May 7, 2021.  RJN, Ex. I.

On May 15, 2020, the state court granted Plaintiff's motion to file, and deemed filed, an amended answer to BANA's amended complaint in the Foreclosure Action, adding counterclaims for violation of the FCCPA and unjust enrichment.  RJN, Exs. J and K.  Those claims, like Plaintiff's claims in this case, are premised on allegedly unwarranted property inspections and supposedly unnecessary insurance fees added to the loan balance.  RJN, Ex. J.  BANA filed a motion to dismiss those counterclaims in the Foreclosure Action, which the court granted with leave to amend.  RJN, Exs. L and M.  But instead of simply amending her FCCPA and unjust enrichment claims, as the court instructed, Plaintiff improperly added five causes of action, including an alleged TILA violation, which she likewise alleges here.  RJN, Ex. N.  BANA moved to dismiss those claims, and the court dismissed them with prejudice on February 2, 2021, but her FCCPA and unjust enrichment claims remain pending.  RJN, Exs. O and P.

On April 6, 2021, BANA and Plaintiff convened for a court-ordered mediation conference in the Foreclosure Action.  RJN, Ex. Q.  The parties were unable to reach an agreement.  RJN, Ex. R.

### C.   Plaintiff files the federal Complaint with allegations overlapping with the state foreclosure action.

With the state Foreclosure Action still pending after almost ten years of litigation and nowhere close to resolution, Plaintiff now comes to federal court in hopes of manufacturing

leverage or securing further delay.  On May 7, 2021, shortly after the failed state-court mediation, she filed this putative class action against BANA and Safeguard Properties Management, LLC ("Safeguard"), repackaging her affirmative defenses from the Foreclosure Action into offensive class-wide claims.  Complaint (ECF No. 1).  After BANA moved to dismiss, Plaintiff filed an amended complaint in a transparent attempt to minimize the most superficial redundancies with the state-court Foreclosure Action while maintaining her substantively duplicative allegations.  *See generally* AC.  But, hewing closely to her core state-court allegations, Plaintiff claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of the FDCPA, 15 U.S.C. § 1692, *et seq.*; (4) violations of the TILA, 15 U.S.C. § 1601, *et seq.*; (5) violations of the FDUTPA, Fla. Stat. §§ 501.201–501.203; (6) violations of RESPA, 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. §§ 1024.35–1024.36; and (7) violation of RICO, 18 U.S.C. § 1961(c), *et seq.*  AC ¶¶ 187–309.

Plaintiff challenges fees related to property inspections that were permitted under BANA's Agreement with Ms. Mandal, *id.* ¶ 45 ("Lender . . . may make reasonable entries upon and inspections of the Property"), but that, according to Plaintiff, were excessive, unreasonable, and unnecessary, *id.* ¶¶ 80, 195.  She also contends that BANA improperly added these inspection fees to the loan balance, notwithstanding clear language in the Agreement (attached and incorporated into the Amended Complaint) explicitly stating that BANA "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property," and that "any amount disbursed by the Lender for taking [such] action . . . becomes additional debt of Borrower secured by this Security Instrument."  *Id.* ¶ 45 (emphasis omitted); AC Ex. 1 at 15.

Additionally, Plaintiff challenges BANA's application of lender-placed insurance ("LPI") on the Property.  As Plaintiff concedes, BANA is contractually permitted under its Agreement with Ms. Mandal to obtain insurance coverage where the coverages described in the Agreement are not adequately maintained.  AC ¶ 89; AC Ex. 1 at 13.  BANA expressly discloses that "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance" that could have been obtained privately, and that "amounts disbursed by Lender . . . shall become additional debt of Borrower secured by this Security Instrument."  AC Ex. 1 at 14.  Among the coverages required by the Agreement—and at issue here—is flood insurance.  *Id.* at 13 (stating the Property must be "insured against loss by . . . floods, for which Lender requires insurance. This insurance shall be maintained in the amounts . . . and for periods that Lender requires.").

According to Plaintiff, BANA applied high-premium LPI to the Property despite Plaintiff's having allegedly maintained coverage "at all relevant time periods." AC ¶¶ 87, 93, 124–125. Plaintiff, however, does not and cannot allege that she has paid any of the property inspection fees or LPI premiums that BANA added to the loan balance. *See generally* AC.

Plaintiff's allegations are overlapping and, in some instances, essentially identical with her claims in the Foreclosure Action. For example:

| Allegations | State Foreclosure Action | Federal Complaint |
|---|---|---|
| BANA "fraudulently charged for property inspections that were never performed."[5] | RJN, Ex. N ¶ 17; *see also id.* ¶¶ 11, 16; RJN, Ex. J ¶ 37. | AC ¶ 79; *see also id.* ¶¶ 1, 27, 33, 51–56, 58, 61, 70, 194–198, 206, 208, 270, 273–274. |
| BANA charged fees for lender-placed "property insurance that was not necessary and/or never procured," despite Plaintiff maintaining adequate flood insurance coverage. | RJN, Ex. N ¶ 12; *see also id.* ¶ 37. | AC ¶ 76 n.14; *see also id.* ¶¶ 2, 81–87, 94–101, 113–114, 117, 119–121, 126, 182, 199, 206, 208. |
| "Due to the nature of the gated community in which the Property is located, Sullivan suspected that the amounts BOA claimed to be owed for purported property inspections were false and otherwise fraudulent." | RJN, Ex. N ¶ 16. | AC ¶ 78. |
| BANA does not accurately disclose the amounts due and owing under the mortgage. | RJN, Ex. N ¶¶ 14–15;  RJN, Ex. J ¶¶ 27–31. | AC ¶¶ 74, 76, 79, 168, 182, 235, 245, 247. |

Plaintiff continues to prosecute her counterclaims in the Foreclosure Action in state court, where she has engaged in extensive discovery for years.

## ARGUMENT

To survive a motion to dismiss, Plaintiff must "plead sufficient facts to state a claim that is plausible on its face." *Megaval Enters., Ltd. v. Bank of Am., N.A.*, 2014 WL 12609318, at *2 (S.D. Fla. Oct. 8, 2014). Plaintiff must allege "more than labels and conclusions." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*, 2019 WL 1406466, at *1 (S.D. Fla. Mar. 28, 2019).

---

[5] Quoted language in these tables is identical in the Complaint and pleadings in the state court foreclosure action.

"When a plaintiff pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Megaval Enters.*, 2014 WL 12609318, at *3. Here, Plaintiff's allegations fall far short of this well-established standard and, accordingly, dismissal is warranted.

## I.      THE COURT SHOULD ABSTAIN UNDER *COLORADO RIVER* AND STAY THIS CASE IN FAVOR OF THE FIRST-FILED FORECLOSURE ACTION.

Under the *Colorado River* doctrine, which authorizes a federal court to stay or dismiss a federal suit that is duplicative of a parallel suit pending in state court, this Court need not even consider the adequacy of Plaintiff's claims. *See Colo. River*, 424 U.S. at 813–816. Indeed, federal courts routinely abstain under *Colorado River* when a plaintiff challenges conduct already being litigated in state-court foreclosure proceedings. *See, e.g.*, *Willson v. Bank of Am., N.A.*, 2016 WL 8943333, at *6 (S.D. Fla. May 23, 2016), *aff'd*, 684 F. App'x 897 (11th Cir. 2017) (collecting cases); *Hall v. Bank of Am., N.A.*, 2013 WL 10799537 (S.D. Fla. June 25, 2013) (staying federal LPI-related claims where plaintiffs asserted affirmative defenses and counterclaims relating to the same in state court); *DHL Express (USA) Inc. v. USS Logistics, LLC*, 2010 WL 11505107, at *3 (S.D. Fla. Aug. 18, 2010) (Dimitrouleas, J.) (abstaining and staying).

*Colorado River* applies where, as here, federal and state proceedings involve "substantially the same parties and substantially the same issues." *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (emphasizing that the "cases need not share identical parties and issues"). The parties here are substantially the same because Plaintiff and BANA are the key parties in both cases, and neither the additional defendant in the federal action (Safeguard) nor Plaintiff's choice to add putative class claims (despite her highly individualized allegations) precludes a finding of substantial similarity. *Hall*, 2013 WL 10799537, at *1 (staying claims in putative class action based on parallel individual foreclosure proceedings in Florida court); *Ambrosia Coal & Constr. Co. v. Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (cases substantially the same, including parties, where second action involved additional defendants); *see also Foxfield Villa Assocs., LLC v. Regnier*, 918 F. Supp. 2d 1192, 1197 (D. Kan. 2013) ("[P]laintiffs may not avoid application of the *Colorado River* doctrine by including additional defendants or claims in the federal suit.").

The issues are also substantially the same.  As illustrated above, in the Foreclosure Action, Plaintiff asserts affirmative defenses for "various fees and charges to the subject loan account," RJN, Ex. J ¶ 48; challenges "monthly fees for inspections that never occurred" and "duplicative and unnecessary insurance coverage," RJN, Ex. N ¶ 21; and claims that BANA listed these allegedly improper fees in various written communications, RJN, Ex. N ¶¶ 12–16. Those allegations mirror the Amended Complaint here, which also centers on allegedly unnecessary property inspection fees and allegedly excessive LPI, AC ¶¶ 187–200, and contends that BANA's communications were inaccurate because they included property inspection and LPI fees that Plaintiff contends were improper, *id.* ¶¶ 210–250.  Plaintiff's core allegations in the Foreclosure Action are therefore substantially similar to the allegations in this case, as are the issues in both actions.  *See Sini*, 990 F. Supp. 2d at 1377 (issues substantially the same where "the same conduct . . . forms the basis" for a party's claims in both actions and a ruling in one court could affect liability in the other, even where not every specific issue in the federal case is before the state court); *Hall*, 2013 WL 10799537, at *1 (abstaining despite a RICO claim, among others, not alleged in state court); *see also Regnier*, 918 F. Supp. 2d at 1198 (issues substantially the same where plaintiffs alleged new "RICO claim . . . based on many of the same facts as the claims in the state case").  Plaintiff "clearly attempted to avoid" a finding of substantial similarity by dropping "overlapping state law claims," but "the remaining claims, nevertheless, implicate the same issues," and the cases remain parallel.  *Makeen Inv. Grp., LLC v. Woodstream Falls Condo. Ass'n, Inc.*, 2017 WL 8309979, at *3 (D. Colo. Aug. 22, 2017).

Where, as here, the parties and issues are substantially similar, courts "flexibly and pragmatically" weigh a range of factors to decide whether to abstain, including:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal*, 368 F.3d at 1331–1332.  The Supreme Court has also emphasized "that 'the vexatious or reactive nature of either the federal or the state litigation' is an important consideration."  *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1346 (S.D. Fla. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983)).  Each of these factors favors abstention here.

***Jurisdiction Over Property.***  The state court asserted jurisdiction over the Property on July 18, 2012, nearly a decade before Plaintiff filed the Complaint.  RJN, Ex. T.  That strongly favors abstention.  *See Burgos v. Suntrust Bank N.A.*, 2014 WL 11880360, at *4 (S.D. Fla. Nov. 17, 2014), *R. & R. adopted*, 2015 WL 11201189 (S.D. Fla. Jan. 26, 2015) (abstaining where bank filed notice of *lis pendens* five years before plaintiff filed federal complaint); *Hendricks v. Mortg. Elec. Registration Sys. Inc.*, 2013 WL 1279035, at *4 (M.D. Fla. Mar. 28, 2013) (same, with notice of *lis pendens* filed one year before federal complaint**)**.

***Order and Progress of Litigation.***  Courts consider not just "which complaint was filed first," but also "how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21.  Here, BANA first filed its Foreclosure Action in 2012 and named Plaintiff as a defendant in 2014, and after years of litigating service of process, Plaintiff filed her first answer, affirmative defenses, and counterclaim on March 16, 2018.  RJN, Ex. F.  Plaintiff has thus been involved in the state case for more than seven years, the parties have litigated the same issues for more than three, and multiple dispositive motions and amended pleadings have been filed and decided.  *Cf. Bosdorf*, 79 F. Supp. 2d at 1345 (weighing this factor in favor of abstention where the state proceeding began less than a year before federal action).  And discovery began years ago in the Foreclosure Action—Plaintiff filed her first motion to compel discovery in July 2018, RJN, Ex. U—which itself "is a persuasive factor when deciding whether to abstain."  *Sini*, 990 F. Supp. 2d at 1378.  Because the state "action was first filed and now has progressed substantially farther than the instant action, . . . this factor likewise weighs heavily in favor of abstention."  *DHL Express*, 2010 WL 11505107, at *3 (abstaining and staying); *see also Sides v. Simmons*, 2007 WL 3344405, at *4 (S.D. Fla. Nov. 7, 2007) (same, explaining that doing so here "protects the neutrality of the federal system" and honors "judicial notions of issue and claim preclusion").

***Piecemeal Litigation.***  Abstention is favored when "the two cases, though not 'identical,' are so inextricably intertwined in both their factual and legal issues that dual litigation would likely result in deleterious duplication of judicial resources."[6]  *Sini*, 990 F. Supp. 2d at 1379.  Plaintiff has tactically withdrawn her surviving state counterclaims (for violation of the FCCPA and unjust enrichment) from this Amended Complaint, but all of Plaintiff's claims in both cases hinge on the same issues: whether BANA's property inspections, LPI fees, and disclosures were

---

[6] For this reason, the Eleventh Circuit has endorsed district courts' authority to dismiss cases for claim splitting.  *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 840–843 (11th Cir. 2017).

lawful.  "Given the duplicative . . . counterclaims in the state action, the redundant proofs required by the respective claims, and the potential for conflicting rulings . . . this factor weighs strongly in favor of abstention."  *Id.* at 1379–1380; *see also Fred McGilvray, Inc. v. Bank of Am., N.A.*, 2010 WL 11586436, at *2 (S.D. Fla. May 5, 2010) ("Abstention is appropriate even if the state court proceedings merely narrow[] the issues presented in the federal case . . .").

  ***Vexatious or Reactive.***  As with the original Complaint here, a suit is "likely reactive" if it is filed "long after the state court ha[s] been asked to decide" the issue.  *Baker v. Warner/Chappell Music*, *Inc.*, 759 F. App'x 760, 764 (11th Cir. 2018); *see also O'Dell v. Doychak*, 2006 WL 4509634, at *9 (M.D. Fla. Oct. 20, 2006) (suit reactive when plaintiff "split one case involving many of the same issues and parties between two courts").  Plaintiff litigated her claims in the Foreclosure Action for three years, repeatedly changing strategy and retaining additional counsel.  RJN, Exs. V, W, X, Y, Z and AA.  On February 3, 2021, the state court dismissed with prejudice five of Plaintiff's counterclaims.  Just three months later, Plaintiff filed this lawsuit—realleging*, inter alia*, the same TILA claim that the state court rejected.  Plaintiff's belated excursion to federal court has always been a transparent "attempt to avoid adverse or unfavorable rulings," warranting abstention.  *Bosdorf*, 79 F. Supp. 2d at 1346 (finding this "factor weighs significantly" and abstaining); *accord Willson*, 2016 WL 8943333, at *5 (emphasizing that a federal filing in response to a loss in state court favors abstention).  And the Amended Complaint makes Plaintiff's gamesmanship only more obvious: Plaintiff amended her pleadings to omit the two claims that remain pending in the Foreclosure Action.[7]  Despite this attempt to conceal the similarities between the two cases, the substance of Plaintiff's allegations remains the same, and this lawsuit remains as vexatious and duplicative as it always has been.

  ***Other Factors.***  The remaining factors are neutral.  The state and federal fora are comparably convenient, *see Bosdorf*, 79 F. Supp. 2d at 1344, and the state court is entirely capable of protecting Plaintiff's rights, including by adjudicating her federal claims—indeed, Plaintiff already brought several in the state Foreclosure Action.  *See Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 133 (11th Cir. 2005); *Bosdorf*, 79 F. Supp. 2d at 1345–1346.

---

[7] Plaintiff's First Amended Counterclaim in the Foreclosure Action added a RESPA claim alleging a violation of 12 C.F.R. § 1024.37.  *See* RJN Ex. N.  That claim was dismissed with prejudice.  *See* RJN Ex. P.

In sum, "the preponderance of the factors . . . weigh[s] strongly in favor of abstention," and "no factor weighs against abstention." *DHL Express*, 2010 WL 11505107, at *3. "Florida foreclosure proceedings adequately protect the rights of all parties," *Stuart v. Ryan*, 818 F. App'x 858, 863 (11th Cir. 2020), and a parallel federal case can lead only to "interference with the orderly and comprehensive disposition of the state court proceeding," *Delta Dev. & Constr. Corp. v. Sav. One Ass'n*, 637 F. Supp. 629, 631 (S.D. Fla. 1986). Rather than reward Plaintiff's gamesmanship and dilatory tactics, this Court should allow the state court to adjudicate the parties' dispute in the first instance (as it has been doing for years) and stay or dismiss this needlessly duplicative lawsuit.

## II.    EVEN IF THE COURT WERE NOT TO ABSTAIN, PLAINTIFF'S INDIVIDUAL CLAIMS FAIL.

Although this Court need not duplicate the work of the state court, it will have no trouble identifying the deficiencies in Plaintiff's claims if it should choose to consider them. Plaintiffs' contract-based claims all fail as a matter of law—foremost because Plaintiff is not even a party to the Agreement she seeks to enforce. To be enforceable under Florida law, a credit agreement must be in writing, set forth the relevant terms and conditions, and be "signed by the creditor and the debtor." Fla. Stat. Ann. § 687.0304(2). Plaintiff does not (and cannot) allege any such writing. Plaintiff similarly lacks standing to assert her laundry list of consumer protection claims, most of which are time-barred in any event. And Florida law forecloses her FDUTPA claim, given that BANA is a federally regulated bank.

### A.    Plaintiff's contract-based claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of civil RICO must be dismissed.

#### 1.    Plaintiff lacks standing to allege breach of contract.

Despite never having assumed the Agreement—which has allowed her to personally avoid the obligation to pay under the Agreement for nearly a decade—Plaintiff now seeks to enforce the Agreement's terms. She claims that BANA breached the Agreement by adding excessive and unnecessary property inspection and LPI fees to the loan balance.[8] AC ¶¶ 127,

---

[8] To the extent Plaintiff claims that the LPI premium rates are too high, that claim would be precluded by the filed-rate doctrine. *Patel v. Specialized Loan Servicing LLC*, 183 F. Supp. 3d 1238, 1244 (S.D. Fla. 2016), *aff'd* 904 F.3d 1314 (11th Cir. 2018) (dismissing all claims premised on allegations that insurer and loan servicer "charged borrowers inflated premiums as a

11

172.  But that assertion is not even colorable.  As a stranger to the Agreement, Plaintiff lacks standing to enforce it.

Florida law is clear: "A person who is not a party to a contract may not sue for a breach of that contract," even if the person receives some incidental benefit from it.  *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So.2d 1028, 1030–1031 (Fla. 4th DCA 1994).  Here, Plaintiff concedes that when she purchased the Property from the HOA in 2012, she merely "acquired title . . . subject to the previous owner's first mortgage of record."  AC ¶ 73.  But Plaintiff does not and cannot allege that she ever assumed or became a party to the Agreement. *See generally* AC.[9]  Simply stated, Plaintiff wants to unilaterally enforce the terms of an Agreement that have at no point applied to her.  *LaFaille v. Nationstar Mortg., LLC*, 197 So. 3d 1246, 1247 (Fla. Dist. Ct. App. 2016) (subsequent purchaser not a party to the mortgage contract generally cannot assert rights under the contract that belong to the parties); *see also Olivares v. Pyatt*, 2015 WL 12751698, at *3–4 (S.D. Tex. Aug. 15, 2016) (dismissing third-party purchaser's breach of contract claim for lack of standing, reasoning that the plaintiff could not bring contract-related claims when he had no contract with the bank).  This attempt plainly fails under well-established Florida law.

### 2.    Plaintiff's implied covenant claim fails with her breach of contract claim, and is redundant in any event.

Plaintiff's implied covenant claim fails for similar reasons.  According to Plaintiff, BANA breached the implied covenant of fair dealing by ordering property inspections more frequently than necessary and by selecting LPI with high premiums.  AC ¶¶ 206, 208.  But these are the same core allegations underlying her empty breach of contract claim.  *Id.* ¶ 195

---

result of kickbacks"); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (Dimitrouleas, J.) (extending filed-rate doctrine to lender/servicers and dismissing "claims arising from inflated rates . . . with prejudice").

[9] Even if Plaintiff were a party to the Agreement, her claims would fail because she did not comply with the notice and cure provision in paragraph 20 of the Agreement.  Exhibit 4 to Compl. (ECF No. 1–4) at 20.  *See Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *2–3 (S.D. Fla. July 2, 2015) (Dimitrouleas, J.) (dismissing all of plaintiff's RICO, breach of contract, breach of implied covenant, and unjust enrichment claims against mortgage loan servicer for failure to comply with the notice and cure provision); *Charles v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (dismissing TILA, FDCPA, and FCCPA claims based on allegedly inflated property-inspection fees because plaintiff failed to comply with the mortgage's pre-suit notice and cure provisions before commencing the action).

("inspections were neither reasonable nor appropriate"); *id.* ¶ 196 ("excessive and unfair property inspections"); *id.* ¶ 199 (LPI was "unnecessary and excessive").  This alone warrants dismissal because Plaintiff's implied covenant claim is redundant of her breach of contract claim. *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (implied covenant claim dismissed as redundant where "based on the same allegations" as contract claim).

> This claim also fails for the independent reason that it "cannot be maintained under Florida law in the absence of a breach of an express term of a contract."  *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005); *see also Royale Green Condo Ass'n v. Aspen Specialty Ins. Co.*, 2008 WL 11333559, at *2 (S.D. Fla. July 24, 2008) ("Under Florida law . . . there is no independent cause of action for breach of an implied covenant of good faith and fair dealing.").  Because Plaintiff lacks standing to allege a breach of contract claim, so too must her implied covenant claim fail.  *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1361 (S.D. Fla. 2011) (dismissing good faith and fair dealing claim where plaintiff failed to allege valid contract with defendant).

### 3. Plaintiff's civil RICO claim cannot transform an alleged contractual breach into racketeering activity.

> Plaintiff's attempt to expand the reach of civil RICO liability, based on BANA's ordering of property inspections and applying the disputed fees to the loan balance on the Property, fails as a matter of law. AC ¶¶ 51–72, 262–309.  Courts routinely dismiss civil RICO claims where, as here, the claims are just dressed-up attempts to assert a breach of contract.  *See Tardibuono-Quigley v. HSBC Mortg. Corp.*, 2017 WL 1216925, at *10 (S.D.N.Y. Mar. 30, 2017) ("At best, the plaintiffs allege mail and wire fraud occur where accurate account statements are mailed to customers . . . [which] cannot be the basis for a RICO claim"); *cf. Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000) (dismissing civil RICO claim because the "facts alleged in this contractual dispute are not the types of activities that RICO was intended to eliminate . . . [and a]ny other interpretation would indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises' in failed business transactions to constitute 'racketeering activity'").  The Eleventh Circuit has even endorsed the use of sanctions "when plaintiffs brought RICO claims with no underlying factual basis to support them."  *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1359 (11th Cir. 2018).

Plaintiff fails to state a civil RICO claim in any event.  To state a civil RICO claim based on predicate acts of mail and wire fraud, AC ¶¶ 283–307, Plaintiff must satisfy the stringent pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Tardibuono-Quigley*, 2017 WL 1216925, at *9 (noting that "[a]ll allegations of fraudulent predicate acts are subject to the heightened pleading requirements" of Rule 9(b), including "allegations of predicate acts of mail and wire fraud").  Specifically, Rule 9(b) requires that Plaintiff allege "what statements . . . documents or oral representations or what omissions were made," the "time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same," the "content of such statements" and "manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud."  *See Dykes v. Bank of Am., N.A.*, 2018 WL 7822282, at *2 (S.D. Fla. July 10, 2018) (Dimitrouleas, J.) (dismissing fraud claim premised on property inspection fees).

Here, the Amended Complaint is devoid of the specific facts required to satisfy Rule 9(b). For example, Plaintiff does not specify when the alleged predicate acts occurred.  Nor does she allege with any specificity what the false statements were in the alleged "mortgage invoices, loan statements, payoff demands, or proofs of claims" she purportedly received.  AC ¶ 295.  Rather, Plaintiff's core claim is simply that because she considers the property inspections unwarranted, the fees must be incorrect, and therefore fraudulent. *Id.* ¶ 165.  But this is insufficient to satisfy Rule 9(b) and adequately state predicate acts of mail and wire fraud under civil RICO. *Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 7071488, at *7 (C.D. Cal. Dec. 26, 2012) (dismissing RICO claim in LPI case for failure to specify what was misleading in communications).[10]  Plaintiff also fails to sufficiently allege a RICO enterprise, as others before her making nearly identical allegations have too.  *See, e.g.*, *Cirino v. Bank of Am., N.A.*, 2015 WL 3669078, at *4 (C.D. Cal. Feb. 10, 2015) (dismissing RICO claim where plaintiff alleged enterprise between BANA and Safeguard aimed at "ordering and conducting inspections without regard to whether they were necessary or reasonable.").

---

[10] Although it is unclear whether Plaintiff alleges a violation of Section 1962(d), any such claim fails because Plaintiff has failed to state a claim for substantive RICO violations.  *See Gutterman v. Herzog*, 2020 WL 6728787, at *8 (E.D.N.Y. Nov. 16, 2020) (dismissing civil RICO claims).

**B.      Plaintiff's consumer protection claims for alleged violations of the FDCPA, TILA, RESPA, and FDUTPA fail.**

Plaintiff also throws four consumer protection statutes against the proverbial wall, hoping something sticks by rehashing allegations from her pending counterclaims in the state Foreclosure Action.  Numerous deficiencies plague each claim.

**1.      Plaintiff lacks standing to sue under the FDCPA, TILA, and RESPA.**

*FDCPA.*  Plaintiff claims that BANA violated sections 1962e(2)(A), e(2)(b), e(10), and f(1) of the FDCPA by using allegedly "deceptive means" of collecting improper debts not authorized by the Agreement through monthly loan and payoff statements, AC ¶¶ 215, 220–223.  But Plaintiff, as a stranger to the Agreement, lacks standing to sue for violations of the FDCPA because, by her own allegations, she is not a "debtor" or "consumer" under the plain meaning of the statutes.  The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt" and "debt" as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction."  15 U.S.C. §§ 1692a(3) & 1692a(5).

Here, as discussed, Plaintiff neither claims to be nor is a party to the Agreement, so she cannot be a borrower or mortgagor.  *See generally* AC; *id.* ¶ 73 (explaining that Plaintiff is a third-party purchaser).  And because she has never assumed the Agreement or the obligation to pay that comes with it—despite taking title to the Property subject to the mortgage balance— Plaintiff does not and cannot allege that she owes any "obligation" to pay under the loan.  *Cf. Centennial Bank v. Noah Grp., LLC*, 2010 WL 11558224, at *2 (S.D. Fla. Oct. 20, 2010) (non-party to loan "could [not] be obligated to satisfy any amount due" under the loan); *Morse v. City Fed. Sav. & Loan Ass'n*, 567 F. Supp. 699, 703 (S.D. Fla. 1983) (suggesting obligation to assume mortgage debt not complete until there is clear agreement between bank and transferee).  Because Plaintiff "is not obligated, or allegedly obligated, to pay any debt to [BANA], [s]he is not a consumer under the FDCPA."  *Condon v. Glob. Credit & Collection Corp.*, 2010 WL 5071014, at *6 (M.D. Fla. Dec. 7, 2010) (dismissing FDCPA and FCCPA claims where plaintiff was a non-obligor).  Accordingly, Plaintiff lacks standing to assert her FDCPA claim.

*TILA.*  Plaintiff also claims that BANA violated TILA by sending her documents that were allegedly inaccurate because they included the fees she deems "improper," and by not disclosing that the challenged fees were assessed.  AC ¶¶ 165–168, 231–236.  But just as with her FDCPA claim, Plaintiff lacks standing to pursue a TILA claim because she was "not a party

to the mortgage or note." *Britt v. Flagstar Bank, FSB*, 2011 WL 6941710, at *4 (E.D. Mich. Oct. 27, 2011), *R. & R. adopted sub nom. Britt v. Flagstar Bank*, 2012 WL 12804 (E.D. Mich. Jan. 4, 2012) (dismissing TILA claim); *see also Thomas v. Guild Mortg. Co.*, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (dismissing TILA claim for lack of standing because the plaintiff was not a party to the mortgage); *cf. Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868 (11th Cir. 2010) (non-borrower lacked Article III standing where she was not a party to the loan). Plaintiff's TILA claim must be dismissed in its entirety for this reason alone.

     ***RESPA.*** Plaintiff alleges that BANA failed to comply with RESPA, 12 U.S.C. § 2601 *et seq.*, with respect to certain requests for information and payoffs she sent to BANA in 2019 and 2020. Specifically, Plaintiff claims to be entitled to responses required of servicers under Regulation X, 12 C.F.R. §§ 1024.30 through 1024.41. AC ¶¶ 128–164. This claim fails for multiple, independent reasons.

     First, only *borrowers* have standing to assert RESPA claims. *See, e.g.*, *Green v. Cent. Mortg. Co.*, 2015 U.S. Dist. LEXIS 117241, at *14 (N.D. Cal. Sept. 2, 2015) (dismissing RESPA claim where plaintiff was not a borrower under then-existing definition). A 2018 amendment to Regulation X provides that a "confirmed successor in interest" is treated as a "borrower," 12 C.F.R. § 1024.30(d), but Plaintiff does not meet the Regulation's definition of a confirmed successor in interest—"a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures a mortgage loan subject to this subpart." 12 C.F.R. § 1024.31. A "successor in interest," in turn, is defined narrowly, when (i) the transferee of an ownership interest received the transfer upon death of the borrower; (ii) the spouse or children of the borrower become the new property owner; (iii) a divorce or legal separation occurs; or (iv) the property is transferred into inter vivos trust. *Id*. None of the scenarios enumerated in the Regulation applies to Plaintiff.[11]

     The definition of "confirmed successor in interest," as well as common sense, make clear that, to be a "confirmed successor," a party must first be a "successor in interest," which, as discussed, Plaintiff is not under the Regulation's plain language. *Id*. Cases analyzing whether a

---

[11] Regulation X also contains provisions applicable to a "potential successor in interest." 12 C.F.R. § 1024.36. Plaintiff does not claim to be a "potential successor in interest," and in any event, potential successors in interest have no private right of action. *Branzuela v. JPMorgan Chase Bank*, 2019 WL 5156722, at *1 (N.D. Cal. Oct. 15, 2019).

plaintiff is a "confirmed successor in interest" look to the statutory meaning of "successor in interest" in making that determination.  *E.g.*, *Spraggins v. Caliber Home Loans, Inc.*, 2020 WL 8366645, at *9–10 (N.D. Tex. Dec. 31, 2020), *R. & R. adopted*, 2021 WL 311869 (N.D. Tex. Jan. 29, 2021) (finding plaintiff not to be a successor in interest).  Because Plaintiff is not a "successor in interest" to the original borrower per 12 CFR § 1024.31, she cannot be a "confirmed successor in interest" and has no RESPA standing.

Regardless of whether BANA previously sent Plaintiff communications describing her as a "successor in interest," *see* AC ¶ 149, any such communications do not and cannot change Plaintiff's legal status under RESPA.  Even if it wanted to, BANA is powerless to confer statutory rights upon Plaintiff where she falls outside the definition of "confirmed successor in interest."  Federal courts construe these definitions strictly and have not permitted plaintiffs to exploit status communications by private actors for the purpose of manufacturing federal claims. For instance, the District Court for the Northern District of Mississippi concluded that although a plaintiff was misidentified as a "borrower" on a deed of trust, she did not execute the note, was not obligated on the loan, was not a "borrower" for RESPA purposes, and thus had no standing. *Cummings v. Wells Fargo, N.A.*, 2019 WL 180188, at *3 (N.D. Miss. Jan. 11, 2019); *see also id.* (concluding same for plaintiff's TILA and FDCPA claims).  Communications from BANA do not transform Plaintiff's legal status under RESPA or permit her to bring a claim that the statute and its implementing regulations do not allow.

Finally, even though Plaintiff has no colorable RESPA claim, she has substantial access to information about the loan.  As a practical matter, Plaintiff has been in litigation with BANA for years and has received ample information about the loan in discovery.  *E.g.*, RJN Exs. D, E, F.  Notably, Plaintiff does not and cannot allege that she lacks the information necessary to make payments on the loan.  And to the extent that Plaintiff is attempting to challenge the amount owed on the loan by seeking a "corrected" payment statement, AC ¶¶ 150–155, RESPA is not the proper vehicle for that challenge.  The amount owed is precisely the subject of the ongoing Foreclosure Action, and Plaintiff must hash out her disagreement with BANA there.

**2.    The FDCPA's and TILA's statutes of limitations preclude Plaintiff's claims.**

Plaintiff's FDCPA and TILA claims are also each time-barred.  TILA and the FCDPA each impose a one-year statute of limitations, both of which run "from the date on which the

violation occurs." 15 U.S.C. § 1692k(d) (one-year FDCPA statute of limitations); *see Rotkiske v. Klemm*, 140 S. Ct. 355, 360–361 (2019) (discovery rule does not apply to FCPA limitations period); 15 U.S.C. § 1640(e) (one-year statute of limitations for TILA).

Here, Plaintiff has been involved in a dispute with BANA over the Property since 2014, when BANA added her as a party to the foreclosure action. AC ¶ 75; RJN, Exs. D and BB. Plaintiff's LPI- and inspection-based allegations are thus time-barred under each statute's limitations period. According to Plaintiff, BANA violated the FDCPA when it attempted to collect debts through mortgage or payoff statements, and violated TILA through certain disclosures as well. AC ¶¶ 210–239. But the only two dates that Plaintiff alleges she received written communications from BANA—December 17, 2017, *id*. ¶ 127; and March 21, 2019, *id.* ¶ 77—place her allegations outside the relevant limitations periods of all three statutes. Plaintiff also claims that she received a "TILA disclosure" on January 16, 2020, and a loan history statement on December 28, 2019, *id.* ¶¶ 78, 236, both of which predate her Complaint by more than a year, thus rendering her TILA and FDCPA claims time-barred.

Nor can "equitable tolling" save Plaintiff's claims. Although Plaintiff frames her allegations as establishing "equitable tolling," her argument is based on a purported delay in discovering the alleged violations. AC ¶ 169 ("Plaintiff did not know and could not have learned the true facts underlying her claims"); *accord id.* ¶¶ 170–174. She thus seeks to invoke the *discovery rule*, not equitable tolling. *Barnes v. Compass Bank*, 568 F. App'x 743, 744 (11th Cir. 2014) (the "delayed discovery rule . . . *prevents a cause of action from accruing*" and is not equitable tolling) (quoting *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1271 (11th Cir. 2002)). But the discovery rule does not apply to FDCPA or TILA claims. *See, e.g.*, *Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *3 (S.D. Cal. Aug. 23, 2010) (finding TILA claim barred by statute of limitations and rejecting equitable tolling premised on allegations of "fraudulent concealment" of violations); *Rotkiske*, 140 S. Ct. at 360–361 (limitations period does not begin when plaintiff knew or should have known of the violation under FDCPA). Accordingly, Plaintiff's efforts to expand the limitations periods fall flat.

### 3.   Plaintiff fails to state her claims for violation of the FDCPA.

Even if Plaintiff had standing and her consumer protection claims were not time-barred, Plaintiff's FDCPA claims still fail. To the extent Plaintiff premises her FDCPA claims on her receipt of mortgage and payoff statements, black-letter law makes clear that the delivery of

monthly mortgage statements is not an attempt to "collect a debt" under the FDCPA—indeed, TILA *requires* mortgagees, like BANA, to send such statements. *Jones v. Select Portfolio Servicing, Inc.*, 2018 WL 2316636, at *3–5 (S.D. Fla. May 2, 2018) (dismissing FDCPA claims with prejudice based on plaintiff's receipt of monthly mortgage statements with content required by TILA). This Court's ruling in *Brown* is instructive. There, the plaintiff alleged that the defendant had violated the FDCPA by sending a monthly mortgage statement that overstated the amounts owed on the loan. *Brown v. Portfolio Servicing Inc.*, 2017 WL 1157253, at *1 (S.D. Fla. Mar. 24, 2017). The court explained that the borrower could not state a claim under the FDCPA because the source of the claim—the monthly mortgage statement—"was not debt collection activity within the meaning of the FDCPA," and, in fact, TILA requires the mortgagee to send it. *Id.* at *2–4; *id.* at *2 ("Plaintiff cannot state a claim under the FDCPA with respect to the monthly mortgage statements sent pursuant to federal law."). The court did not even need to "determine if the [disputed information] contained in the mortgage statement provided misleading information because Plaintiff ha[d] no cause of action under the FDCPA," and it dismissed those claims with prejudice. *Id.* at *4. So too should the Court dismiss Plaintiff's FCCPA and FDCPA claims here. *See, e.g.*, AC ¶ 214.

Plaintiff's FDCPA claims must also be dismissed because they fail to satisfy Rule 9(b)'s stringent pleading requirements. FDCPA claims premised on false or misleading statements "must be pled with particularity pursuant to Rule 9(b)." *Melford v. Kahane & Assocs.*, 2018 WL 5044601, at *4 (S.D. Fla. Oct. 17, 2018). Plaintiff's allegations that BANA's monthly loan and payoff statements were "deceptive" and represented those amounts "falsely or in a misleading manner" thus must satisfy Rule 9(b). *Id.*; AC ¶¶ 220–222. But Plaintiff fails to describe the nature, form, substance, or date of the "debt collection" communications. Nor does she allege with the requisite detail what was false or misleading about the statements, other than to claim without support that the amounts were inaccurate because, in her view, BANA was not permitted to collect the fees. *See id.* ¶¶ 220–223. The Court need not credit this bald legal conclusion. *Megaval Enters.*, 2014 WL 12609318, at *3.

### 4.    Plaintiff fails to state a claim for violation of TILA.

In addition to the standing and limitations period barriers described above, Plaintiff's TILA claim fails for the independent reason that no new disclosure was required for the assessment of property inspection fees and LPI premiums. According to Plaintiff, when BANA

allowed "new and additional credit" through lender-placed insurance charges, it "created a new debt obligation" triggering a requirement under TILA to "provide a new set of disclosures showing the amount of the insurance charges." AC ¶¶ 231–232. But as numerous courts have held, where the relevant fees—here, the LPI premiums and property inspection fees—did not change the terms of the mortgage agreement, they do not give rise to a disclosure obligation under TILA. *Montoya v. PNC Bank, N.A.*, 2014 WL 4248208, at *16 (S.D. Fla. Aug. 27, 2014) (dismissing TILA claim where contract expressly allowed bank to apply LPI and thus did not change the terms of the mortgage); *Hackett v. Bayview Loan Servicing, LLC*, 2018 WL 6812617, at *3 (D. Md. Dec. 27, 2018) ("[T]he property inspection fees, when assessed, did not require new TILA disclosures because the fees had been part of the original agreement."). Since the Agreement expressly allows BANA to assess the disputed fees, there was no change in the terms of the Agreement that would warrant a new disclosure under TILA. *Id.* ("fees contemplated in the original agreement are not 'new' credit transactions" triggering new disclosures merely because plaintiffs claim fees are improper). Nor can Plaintiff rely on her conclusory allegation that the amounts in mortgage and payoff statements were inaccurate. AC ¶¶ 165–166. "That some of [the] fees included in the payoff statement are later disputed and could perhaps at a future date be removed or reversed does not render the payoff statement inaccurate for purposes of TILA." *Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 3163074, at *3 (S.D. Fla. Feb. 5, 2016) (dismissing TILA claim).

### 5.      Plaintiff's FDUTPA claim is meritless under Florida law.

Plaintiff's FDUTPA claim is a non-starter. Under the plain language of the statute, the FDUTPA does not apply to "banks . . . regulated by federal agencies," like BANA, a national bank regulated by the OCC. Fla. Stat. Ann. § 501.212(4)(c). Accordingly, Plaintiff's FDUTPA claim fails as a matter of law. *See Dykes*, 2018 WL 7822282, at *3 (dismissing FDUTPA claim against BANA because BANA "is statutorily exempt from suit for violating the FDUTPA").

### CONCLUSION

Based on the foregoing, the Court should stay the case in favor of the first-filed foreclosure action in state court or, alternatively, grant BANA's Motion to dismiss the Complaint in its entirety with prejudice.

DATED:  October 29, 2021                    Respectfully submitted,

*/s/ Allen W. Burton*
Allen W. Burton (*pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
(212) 326-2000
aburton@omm.com

William K. Pao (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000
wpao@omm.com

*/s/ J. Randolph Liebler*
J. Randolph Liebler (Florida Bar #507954)
Dora F. Kaufman (Florida Bar #771244)
LIEBLER, GONZALEZ & PORTUONDO
44 West Flagler Street, Courthouse Tower,
25th Floor
Miami, FL 33130
(305) 379-0400
jrl@lgplaw.com
dfk@lgplaw.com
(Local Counsel)

*Attorneys for Defendant Bank of America, N.A.*

## **REQUEST FOR ORAL ARGUMENT**

BANA requests a hearing to clarify for the Court any questions it may have regarding the arguments in this Motion.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY the foregoing document was filed with the Clerk of the Court using CM/ECF on this 29th day of October, 2021.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

<div align="center" style="margin-left:auto">

*/s/ J. Randolph Liebler*
J. RANDOLPH LIEBLER

</div>