## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 21-CV-80828-DIMITROULEAS-MATTHEWMAN

KIMN S. SULLIVAN a/k/a
KIMBERLY S. SULLIVAN, individually
and on behalf of those similarly situated

       Plaintiff,

vs.

BANK OF AMERICA, N.A., and
SAFEGUARD PROPERTIES
MANAGEMENT, LLC,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS

Plaintiff KIMN S. SULLIVAN ("Ms. Sullivan"), through her counsel, hereby files this Plaintiff's Response in Opposition to the Motion to Dismiss filed by Defendant BANK OF AMERICA, N.A., and in support thereof states as follows:

### INTRODUCTION

Abuses in mortgage servicing by lenders and servicers themselves have been fought in courts across the country for years. The claims asserted against the Defendants here have already been upheld by many Courts in this District. Defendant BANK OF AMERICA, N.A. ("BOA") has filed its Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss") on multiple grounds, but not one of these grounds supports dismissal at this stage. First, this Court should not abstain from hearing Ms. Sullivan's claims because, as explained below, the current individual state court foreclosure action is not a parallel proceeding, *i.e.,* it does not involve the same parties or the same issues, and because the *Colorado River* factors do not support this Court's departure from the rule favoring the proper exercise of federal jurisdiction. Second, Ms. Sullivan has standing to bring her claims and has properly stated claims for relief against both Defendants.

### STANDARD OF REVIEW

On a motion to dismiss, the Court must accept as true all the allegations in the complaint and construe them in the light most favorable to the plaintiff. *Jackson v. Bellsouth Telecomms.*, 372

F.3d 1250, 1262 (11th Cir. 2004). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is well established that a pleading must have more than "labels and conclusions," and "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a defendant's motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a Rule 12(b)(6) motion, a court considers only the four corners of a complaint, along with any documents attached to or incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). With respect to dismissing a complaint for lack of standing, a complaint must be construed in the light most favorable to the plaintiff. *See Wein v. Am. Huts, Inc., 313 F. Supp. 1356, 1359* (S.D. Fla. 2004).

## LEGAL ARGUMENT

### I.      ABSENTION IS NOT WARRANTED IN THIS ACTION

BOA argues that this Court should stay this action under the *Colorado River* abstention doctrine because of a state court foreclosure proceeding filed in 2012 by a non-party borrower, in which Ms. Sullivan was added as an interested party in 2019, after taking possession of the foreclosed property. She then filed a pending counterclaim against BOA which seeks setoffs for various wrongful charges imposed against the borrowers account, including Lender Placed Insurance ("LPI") charges. BOA's argument fails because, under the narrow *Colorado River* abstention doctrine, the proceedings are not parallel and the six *Colorado River* factors mitigate against abstention.

####      A.  The *Colorado River* Doctrine is a Narrow Exception to the Duty of a Federal Court to Exercise its Jurisdiction

Defendants' Motion seeks a stay as if the *Colorado River* abstention doctrine requires a simple balancing test, in which there is no preference for the exercise or abstention of jurisdiction. On the contrary, the United States Supreme Court has stated:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception

> to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the **exceptional circumstances** where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), *quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) (internal quotations omitted, emphasis added).  Courts refer to the calculus of the doctrine as the "exceptional circumstances" test.

The *Colorado River* doctrine of abstention is an exception to the federal courts' "virtually unflagging obligation to exercise the jurisdiction given them." *Id. at* 817. The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id. at* 817.

*Colorado River* abstention was extensively reviewed in *Jackson-Platts v. GE Capital Corp.*, 727 F.3d 1127 (11th Cir. 2013). There, the Eleventh Circuit held that "only the clearest of justifications" will merit abstention. *Id. at* 1140, *quoting Colorado River*.  The Court explained that "while abstention as a general matter is rare, *Colorado River* abstention is particularly rare, 'permissible in fewer circumstances than are the other abstention doctrines.'" *Id. at* 1140. Finally, courts "are required to weigh the [*Colorado River*] factors with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, 727 F.3d at 1141; *see also Met. Life v. Lockette*, 155 F.3d 1339, 1341 (11th Cir. 1998).

The exercise of federal jurisdiction is presumed to be proper, unless making an exception is explicitly justified by the circumstances of both cases. As the Eleventh Circuit has stated:

> Our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," . . . to justify the surrender of jurisdiction.

*Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir. 1990) (emphasis in original).  Accordingly, "[t]he most important requirement underlying a district court's analysis . . . is that the circumstances be *exceptional*."  *Noonan South, Inc. v. Cnty. of Volusia*, 841 F.2d 380, 382 (2d. Cir. 1988) (emphasis in original).

**B. The State Court Foreclosure Action and the Instant Case are not "Parallel Proceedings" under the *Colorado River* Doctrine**

The threshold inquiry for application of the *Colorado River* abstention doctrine is whether the federal and state cases are sufficiently parallel, involving substantially the same parties and substantially the same issues. *Acosta v. James A. Gustino, P.A.,* 478 Fed. App'x. 620, 621 (11th Cir. 2012). If the cases are not parallel, the *Colorado River* doctrine does not apply, and "any doubt regarding the parallel nature of the proceedings should be resolved in favor of exercising jurisdiction." *Martin Props., Inc. v. Florida Indus. Investment Corp.*, 2003 WL 23162442, at *2 (N.D. Ill. Jun. 19, 2003). If the actions are parallel, the district court must apply a six-factor test to determine whether "exceptional circumstances" warrant abstention. *Lops v. Lops*, 140 F.3d 927, 942-43 (11th Cir. 1998). The threshold inquiry is not satisfied here because the state court foreclosure proceeding is not a parallel proceeding. Even if the proceeding were found to be parallel, the *Colorado River* factors weigh heavily against abstention.

Moreover, it is not enough to simply analyze whether a claim involves substantially the same parties and substantially the same issues for a case to be considered parallel for abstention. Numerous courts have held that for actions in state and federal court to be truly parallel, the resolution of the state court action will also resolve *all* issues in the federal action. *See Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593 (W.D. Tenn. 2011); *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925 (N.D. Ohio 2021). Here resolution of the state court foreclosure action will not resolve all the claims raised before this Court.

First, the state court action BOA claims this Court should abstain in favor of does not involve the same parties. Both Ms. Sullivan and BOA are parties to the state foreclosure proceeding but this federal action involves a critical additional party to this lawsuit who is not a party to that action - Safeguard Properties Management, LLC ("Safeguard"). Adjudication of the state court action will not resolve the issues raised against Safeguard, which are inextricably intertwined with the claims raised in this case against BOA. *See Sherzer v. Homestar Mortg. Servs.*, 2010 WL 1947042, at *13-14 (E.D. Pa. May 7, 2010) (actions not parallel despite similar TILA claim where federal action involved additional parties and claims).

Further, the issues presented in the state court foreclosure action are materially different from the issues presented in this putative class action. The foreclosure is an *in rem* proceeding wherein the note holder, BOA, seeks the foreclosure and sale of the real property Ms. Sullivan

4

obtained title for, from the original mortgagor (who is not a party to the federal action). In the foreclosure, the plaintiff (BOA) claims that mortgagor (not Ms. Sullivan) did not pay their debts, and therefore the lender (BOA) wants its security. Additionally, Ms. Sullivan's counterclaims in the foreclosure action challenge whether Ms. Sullivan has any viable setoffs for monies she has already paid for taxes and insurance on the property plus other fees, which BOA is charging, and whether BOA should have reduced the amount of principle owed, based upon a settlement with the DOJ. All these questions are not before to this Court.

By contrast, this case is an *in personam* action, and no foreclosure is sought. Ms. Sullivan is not challenging the foreclosure here or asking the Court to determine any rights to real property. Rather, the issues in this action arise from the unlawful conduct of BOA and Safeguard in manipulating property inspection practices and charges; as well as the practices of BOA and its affiliates in force-placing insurance, which includes excessive costs and fees in furtherance of a common scheme to profit from their manipulation of the force-placed insurance market. These claims can hardly be deemed "substantially similar."[1] *See DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1046 (D.N.J. 2011) ("The state foreclosure action involves U.S. Bank seeking a judgment of foreclosure on property subject to a mortgage. The federal action, by contrast, seeks only damages for various debt collection practices but does not seek to invalidate the foreclosure proceeding.").

Finally, not only does this case involve different parties and different issues than the state court proceeding, but it is a putative class action, seeking damages on behalf of those similarly situated to Ms. Sullivan. In such cases, courts have recognized that putative class action proceedings are not parallel to state court actions involving a party in their individual capacity. *See Beals v. Bank of Am., N.A.*, 2011 WL 5415174, *6-7 (D.N.J. Nov. 4, 2011) (abstention not warranted where the plaintiff-borrowers were parties to the state foreclosure actions only in their individual capacities, whereas they represented other borrowers in the federal class action, and although claims before the district court overlapped with counterclaims in the foreclosure cases, the federal class action included claims not present in the state litigation).

---

[1] As the case progresses it is likely to be determined which affiliates of BOA were involved in this manipulation of the forced-placed insurance market and will be appropriately named as parties to this class action litigation.

### C.  Application of the *Colorado River* Factors do not Support Abstention

If the Court were to find as a threshold matter that the cases under discussion are indeed parallel proceedings, *Colorado River, Moses H. Cone*, and their progeny set forth the following six factors to use in determining whether abstention is appropriate:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Jackson-Platts*, 727 F.3d at 1141. The factors are applied flexibly and pragmatically, not mechanically. *Jackson-Platts, supra*, at 1141; *Ambrosia Coal, supra*, at 1332. Further, no single factor is dispositive, and courts are required to weigh them "with a heavy bias favoring the federal courts' obligation to exercise the jurisdiction that Congress has given them." *Jackson-Platts*, *supra*, at 1141. Not only does BOA fail to establish "parallel proceedings," but analysis of the six *Colorado River* factors also demonstrates that BOA has not met its burden of showing exceptional circumstances meriting abstention.

### 1.  Application of the First Factor Weighs Against Abstention as Both Courts Have not Been Asked to Assume Jurisdiction of Property

The first *Colorado River* factor is order of jurisdiction over property. When two cases involve a court assuming jurisdiction over the same real property, this factor suggests that the court which assumed such jurisdiction later should yield to the earlier court. BOA argues, in highly conclusory fashion, that this factor weighs in favor of abstention because the state court "asserted jurisdiction over the Property…nearly a decade before Plaintiff filed the Complaint." Motion, p. 9. According to BOA that fact "strongly favors abstention." *Id.* However, BOA's argument completely misinterprets the application of this factor as the Court in the instant case is not being asked to exercise jurisdiction over any property whatsoever. *See Forehand v. First Ala. Bank of Dothan*, 727 F.2d 1033, 1035 (11th Cir. 1984) (first factor did not favor abstention where, as here, state court had taken control over property, but federal action did not purport to determine the ownership rights to that property).

This case is not an *in rem* proceeding, and it does not ask the Court to assume jurisdiction over real property or review the propriety of the state court foreclosure action. Therefore, the first factor weighs against abstention.

### 2. Application of the Second Factor Weighs Against Abstention as Both State and Federal Fora are Equal for Convenience

The second factor is the relative convenience of the two fora. BOA concedes that "[t]he state and federal fora are comparably convenient." Motion, p. 10. However, this point weighs against abstention. First, any neutral factor among the six should be counted as a factor weighing against abstention. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 102 (2d. Cir. 2011) ("again, under *Colorado River*, a neutral factor counsels against abstention."). Second, this factor "focuses primarily on the physical proximity of the federal forum to the evidence and the witnesses." *Jackson-Platts*, *supra*, at 1141; *Ambrosia Coal*, *supra*, at 1332.

In *Jackson-Platts*, the district court found - and the Eleventh Circuit agreed - that:

> [t]he federal forum neighbors Polk County, Florida, where the state forum is located. Hence, the federal forum and the state forum are equally convenient; this factor thus cuts against abstention.

*Jackson-Platts*, *supra*, at 1141. The District Court in *Jackson-Platts* sat in Tampa, while the Polk County court sat in Bartow, roughly 47 miles away. Here, the state court sits in neighboring Palm Beach County, which coincidentally is roughly 47 miles from this Court's chambers. *See also Noonan South*, *supra*, at 382 (same outcome when the two courts were fifty miles apart, in Orlando and Daytona Beach).

The parallel could not be more precise. When "the federal forum and the state forum are equally convenient . . . this factor cuts *against* abstention." *Jackson-Platts*, *supra*, at 1141 (emphasis added). That is the case here - this factor weighs against abstention.

### 3. Application of the Third Factor Weighs Against Abstention as Avoidance of Piecemeal Litigation is Inapplicable

The third *Colorado River* factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances will likely lead to piecemeal litigation that is "abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333; *see, e.g., Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1990) (*Colorado River* abstention "is

not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues … [S]omething more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction.").

Further, this factor does not counsel in favor of abstention where the litigation is "inevitably piecemeal," as in this case, where Ms. Sullivan has the right to a federal forum for her diversity claims. *See American Mfrs. Mut. Inc. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984). Where such a controversy exists, as here, a stay order would not *avoid* piecemeal litigation, but would simply delay it. *Id.* The Eleventh Circuit has explained that it will not uphold a district court's decision to stay its proceedings pending resolution of a "parallel state action, when that state action is not truly parallel because it does not involve the *same* issues presented in the federal case." *Id. at* 1525-26 (emphasis added). A court should not stay a case, as here, when "the stay only postpones the district court's inevitable consideration of the claim." *Id. at* 1525.

Moreover, "[t]he mere possibility of piecemeal litigation does not make abstention automatically appropriate; rather, there must be a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Colorado River*, 424 U.S. at 820 (abstention proper where McCarran Amendment reflected specific Congressional intent for view that water rights should be adjudged in single proceeding); *see also Beals*, 2011 WL 5415174, at *7.[2] BOA has not identified any Congressional policy in favor of abstention in the context of this litigation. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd*., 556 F.3d 459, 467 (6th Cir. 2009) (quoting *Colorado River*, 424 U.S. at 820) ("[T]he 'most important' factor a court must consider is whether there is a 'clear federal policy evinc[ing]…the avoidance of piecemeal adjudication' found within the statutory schemeat issue.").

In this case the statutory schemes include state consumer protection statutes, federal consumer protection and debt collection statutes, the diversity jurisdiction statute, and the Class

---

[2] In *Beals*, the court also observed that the class action nature of the plaintiffs' claims made piecemeal litigation "almost a necessity." 2011 WL 5415174, at *7. The court reasoned that the plaintiffs could not bring class-action counterclaims in the state foreclosure action, and interpreting the "piecemeal litigation" factor to require abstention would "mean that each foreclosure defendant would need to bring these claims as counter-claims and affirmative defenses in state court or else surrender them as defenses to the foreclosure action. In so doing, they would effectively be locked out of participation in a subsequent class action," by the doctrine of *res judicata. Id.* Here, other class members who have been pushed to the brink of foreclosure by Defendants' servicing and force-placed insurance practices will be similarly situated to the class in *Beals*.

Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"). None of the statutes here evince avoidance of piecemeal adjudication in the context of a class action brought in diversity. If no clear federal policy against piecemeal litigation exists in the relevant statutory scheme, then this critical factor weighs against abstention—*even if exercising jurisdiction would lead to piecemeal adjudication*. *See Med. Quant USA, Inc. v. Karns*, No. 1:16-CV-2081, 2016 WL 6996149, at *5 (N.D.Ohio Nov. 29, 2016) (this factor weighs against abstention because "[i]n this case, there is no federal policy or statute governing this matter that expressly instructs against piecemeal litigation.").

Indeed, here the opposite controls. CAFA further expanded traditional diversity jurisdiction for class actions such as this one by dispensing with complete diversity requirements for federal jurisdiction. 28 U.S.C. §§ 1332(d). The clear policy behind this expansion of jurisdiction is to ensure the availability of a federal forum for such class actions, even though doing so increases the risk that there will be concurrent state and federal cases involving the same subject matter. *See, e.g.*, *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective [ is] ensuring Federal court consideration of interstate cases of national importance.") (citations omitted).

BOA's argument that this case and the state foreclosure case are inextricably intertwined is completely contrary to fact. Moreover, their acerbic suggestion that Ms. Sullivan abandoned her unjust enrichment and FCCPA claims before this Court because they hinge on the same factual issues is also wrong. And even if the facts of Ms. Sullivan's counterclaims and the claims being considered by this Court overlapped, this does not rise to the level of duplication that would be a waste of judicial resources necessitating abstention as BOA claims. To the contrary, the statutory structure of Ms. Sullivan's class action here favors exercising jurisdiction.

### 4. Application of the Fourth Factor, the Order in Which the Fora Obtained Jurisdiction Weighs Against Abstention

Contrary to BOA's arguments, the order of obtaining jurisdiction does <u>not</u> favor abstention here. Although this class action was filed years after the state court had acquired jurisdiction, the state foreclosure lawsuit has moved at a snail's pace and the counterclaims raised by Ms. Sullivan regarding her entitlements to any setoffs has only begun. The mere fact that the foreclosure case is procedurally further along, and discovery has taken place, is not dispositive or in favor of abstention. *See Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1306 (S.D. Fla. 2014) (reasoning, "the fact that the state foreclosure action was filed first and discovery has been taken does not merit abstention."). Thus, the fourth factor weighs against abstention by this Court.

9

### 5. The Issues are Complex, Federal Law Applies, and Thus the Fifth Factor Weighs Against Abstention

BOA glosses over the application and analysis of the fifth factor, whether state or federal law will be applied to the claims at bar. Indeed, the preponderance of Ms. Sullivan's claims apply federal law and are complex in nature, such as Ms. Sullivan's RICO claims and her claims under TILA, RESPA, and FDCPA, all which arise under federal law. It is of no moment that some of Ms. Sullivan's claims are based upon the application of Florida law, or that federal claims can be addressed in state court as well. *See Gannett Co., Inc., v. Clark Const. Group, Inc.*, 286 F.3d 737, 747 (4th Cir. 2002) (presence of state law claims in federal diversity case did not weigh in favor of abstention because, *inter alia*, "federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction"). The Eleventh Circuit has instructed when evaluating this factor that:

> The fifth factor requires us to determine whether federal law or state law provides the rule of decision…. But this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve.

*Jackson-Platts*, *supra*, at 1143. As this Court is better suited to decide issues of federal law over which it has original jurisdiction, this factor also weighs against abstention.

### 6. The Sixth Factor Weighs Against Abstention as Federal Court is More Appropriate to Protect Ms. Sullivan's Rights and Those of the Class

The sixth factor is the adequacy of the state forum to protect the rights of all the parties. Again, BOA gives it little analysis, simply stating that the state court can adequately protect Plaintiff's rights. However, this is not the case, and this Court is better suited to protect the interests of all the parties, including the members of the putative class. Even if considered neutral, that fact would weigh in Plaintiff's favor and against abstention. *See Evanston Ins. Co. v. Jimco, Inc*., 844 F.2d 1185, 1193 (5th Cir. 1988).

Moreover, BOA has made no assertion that the federal forum is inadequate to protect anyone's rights. Indeed, it is BOA's burden to do so to justify abstention. Rather, the state court forum under these circumstances is inadequate to protect the rights of the putative class, where the state-court foreclosure proceedings do not provide Ms. Sullivan with an avenue to pursue relief on behalf of a nationwide or state class. *See Beals*, 2011 5415174, at *7 ("the inability to take advantage of the class action mechanism means that this factor weighs against abstention").

### D. This Case is not "Vexatious" and Such a Policy Consideration Does not Support Abstention

BOA asserts that a federal court may consider whether a lawsuit is "vexatious and reactive in nature," as a factor favoring abstention. Motion, p. 12. In fact, the concept of "vexatious and reactive" suits is *dicta* drawn from a footnote to *Moses H. Cone*, and has been applied only as an added justification for abstention in cases where some combination of the six factors also calls for abstention. *See Moses H. Cone*, *supra*, at 17, n. 20. To say that Ms. Sullivan's current lawsuit is "vexatious" or "an attempt to avoid unfavorable rulings" is simply untrue. The claims before this Court have nothing to do with the success or failure of the claims in the state foreclosure case. This Court is not being asked to determine if BOA has a right to foreclose or not, or if Ms. Sullivan is entitled to any setoff or reduction in principle on the amount owed. Indeed, even if BOA is successful and takes back Ms. Sullivan's home, her claims before this Court will remain. BOA is trying to vilify Ms. Sullivan for trying to protect her rights. Ms. Sullivan filed this action because she discovered that BOA was engaging in the wrongful debt collection practices and manipulations of the forced-placed insurance market to not just herself, but to individuals nationwide. Moreover, this is not the first time BOA has been sued in a national class action for their forced-placed insurance schemes and wrongful servicing practices. Ms. Sullivan merely decided to stand against these practices, for herself and others nationwide, and seek redress for the violations committed against her, and she would like to do so under the jurisdiction of this Court

For all these reasons, the *Colorado River* factors do not support abstention by this Court of the significant claims raised in this putative class action. *See TruServ Corp. v. Flegles*, 419 F.3d 584, 593 (7th Cir. 2005) ("If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation.").

## II.    Ms. Sullivan has Properly Pleaded her Individual Claims.

### A.  Ms. Sullivan's Claims for Breach of Contract Should Not Be Dismissed

#### 1.  Standing

BOA argues that Ms. Sullivan's breach of contract claim fails as a matter of law because she is not a party to the Agreement. This argument, however, fails to acknowledge Ms. Sullivan's rights as the confirmed successor in interest of the Property.

BOA correctly asserts a well-known principal of Florida law that "[a] person who is not a party to a contract may not sue for a breach of that contract." *Intercoastal Realty, Inc. v. Tracey*, 706 F. Supp. 2d 1325, 1329 (S.D. Fla. 2010) (quoting *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So.2d 1028, 1030–31 (Fla. 4th DCA 1994). BOA ignores, however, that "a Plaintiff may establish standing based on successor-in-interest status in a breach of contract action." *Inspirations Nev. LLC v. Med. Pro Billing, Inc.,* 2021 WL 2156677, *6 (S.D. Fla. May 26, 2021). In 2018, the Real Estate Settlement Procedures Act ("RESPA") and Truth in Lending Act ("TILA") were amended by regulation ("Regulation X") to make it easier for successors in interest to communicate with mortgage services and establish their status as successor in interest. 81 Fed. Reg. 72,160 at 72,165. Pursuant to Regulation X, Ms. Sullivan established herself as successor in interest of the Property when she signed and submitted the required Successor in Interest Acknowledgment Form to BOA on August 2, 2019. BOA began acknowledging Ms. Sullivan as the confirmed successor in interest on March 21, 2019. Am. Compl. ¶ 77. BOA continued to treat Ms. Sullivan as the confirmed successor in interest by providing Ms. Sullivan with a Loan History Statement on December 28, 2019. *Id.* at ¶ 78. In fact, BOA addressed and treated Ms. Sullivan as successor in interest in all written communication until the filing of this complaint. Under Florida law, Ms. Sullivan has standing to assert her breach of contract claim against BOA as the confirmed successor in interest of the Property.

BOA also argues that Ms. Sullivan did not fulfill her duty under the Agreement's notice and cure provision. (Counterparty Risk Ltr.) This is false. Ms. Sullivan not once, but twice notified BOA about her claims. On June 20, 2019, Ms. Sullivan sent to BOA two (2) separate notices via certified mail consisting of a NOE and Request for Payoff Statement pursuant to 12 C.F.R. § 1024.35(b)(4) and an RFI pursuant to 12 C.F.R. § 1024.38(b)(2). Am. Compl. ¶ 150. She did not receive a payoff statement nor did the receive the requested information or correction of error. On

February 6, 2020, she sent another NOE, RFI, and request for accurate payoff statement, specifically correcting the errors of the flood and hazard insurance paid by Plaintiff. *Id*. at 152. Ms. Sullivan received only a payoff statement, though it was not corrected. *Id*. at 153. On November 29, 2020, Ms. Sullivan sent another two (2) sets of notices to BOA pursuant to RESPA and Regulation X. *Id*. at 154. Ms. Sullivan provided ample notice.

### 2. Implied Covenant Claim

BOA claims that Ms. Sullivan's implied covenant claim should be dismissed for redundancy because it is based on the same allegations as her breach of contract claim. The Eleventh Circuit has found that "a cause of action for breach of the implied covenant cannot be maintained … in the absence of breach of an express term of the underlying contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999).

Because in some instances an implied covenant claim requires the violation of an express term of the contract, it is unsurprising that the allegations underlying the claims appear similar. A plaintiff "can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim." *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08-20424-CIV, 2008 WL 11333560, at *4 n. 2 (S.D. Fla. Apr. 14, 2008). Here, Plaintiff's implied covenant claim is based on allegations different from her breach of contract claim. In her breach of contract claim, Ms. Sullivan alleged that BOA violated the express terms of the Agreement by charging her property inspection fees that she was not contractually required to pay for, charging her inflated property inspection fees due to the portion of the charges retained by BOA and/or safeguard, and charging unnecessary and excessive forced placed flood insurance. Am. Compl. ¶ 197-199. BOA violated the express terms of the Agreement by protecting the property in a manner that was neither "reasonable" nor "appropriate." *Id*. at 195. In her implied covenant claim, Ms. Sullivan alleged that BOA breached its duty of good faith and fair dealing by using an automated system that did not consider the necessity for the inspection; ordering a property inspection more frequently than necessary; imposing charges inapplicable by law or mortgage provisions for property inspections; charging for property inspections which were not completed; charging for insufficient property inspections; charging for forced placed flood insurance that was legally impermissible and/or in violation of the applicable mortgage provisions; exercising its discretion to choose a force-placed insurance policy with artificially inflated charges; and assessing inflated and unnecessary insurance policy charges and misrepresenting the reason for

the cost or the need of the policies. *Id*. at 208. There is sufficient variation in the factual allegations underpinning Ms. Sullivan's breach of contract claim and breach of implied covenant claim for each claim to survive BOA's Motion to Dismiss.

### 3.  Civil RICO Claim

Ms. Sullivan's RICO claim is not a dressed-up contract claim as BOA alleges. Ms. Sullivan's fraud allegations do not arise out of BOA's breach of the mortgage *terms*, but rather from BOA's misrepresentations surrounding their performance of their obligations under the agreement. *See Dykes v. Bank of Am., N.A.*, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018) (Dimitrouleas, J.) (holding that allegations of fraud for false statements of fact by parties under contract is distinct from claims about the contract). Ms. Sullivan's breach of contract claim arises from BOA's "excessive and unfair" property inspections, Am. Compl. ¶ 196, in violation of the mortgage terms, which permitted only "reasonable and appropriate" measures to protect the property. *Id*. at 191. Alternatively, Ms. Sullivan's RICO claims arise from BOA's misrepresentations and/or concealment of the "excessive and unfair" property inspections, particularly the inspections that never happened but were still added to the monthly statement. *Id*. at 43. In her RICO claim, Ms. Sullivan's allegations regarding BOA's misrepresentation and/or concealment of the frequency of the property inspections and the misrepresentations and/or concealment of the inflated property inspection fees in Ms. Sullivan's and the Class Member's monthly statements. *Id*. at 280. In her breach of contract claim, Ms. Sullivan alleges that BOA acted outside of the mortgage terms. In her RICO claim, Ms. Sullivan alleges that BOA misrepresented and/or concealed that excess to Ms. Sullivan. Ms. Sullivan's complaint about the fraudulent misrepresentations and/or concealment of BOA's property inspections is distinct from her complaints for breach of contract in ordering property inspections that were "neither reasonable nor appropriate." *Id*. at 195.

Ms. Sullivan satisfies Fed. R. Civ. P. 9(b) pleading requirements in her allegations that BOA used mails and wires to further its fraudulent scheme. Rule 9(b) requires a plaintiff to allege the "statements … documents or oral representations or what omissions were made," the "time and place of each such statement and the person responsible for making same," the "content of such statements" and "manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud." *Dykes v. Bank of Am., N.A.*, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018) (Dimitrouleas, J.). Ms. Sullivan alleged with specificity that BOA misleads borrowers because it "does not transparently disclose these inspections fee charges on a standard mortgage

14

statement for every instance they are performed." Am. Compl. ¶ 63. Further, Ms. Sullivan identified 57 out of 100 inspections from May 17, 2010 through March 6, 2019 that were not completed but were added to her monthly statement by BOA. *Id*. at 80. Ms. Sullivan also sufficiently alleged that "many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendant's books and records." *Id*. at 295. Such use of mail and wire includes "accepting Plaintiff's payments for invoices that included fraudulent and improper Property Inspections." *Id*. *See Young v. Wells Fargo & Co.*, 671 F.Supp.2d 1006 (S.W. Iowa 2009) (holding that "prior to discovery, plaintiffs cannot be expected to have highly specific information regarding the defendant's internal communications."). Ms. Sullivan alleged with specificity that BOA "does not consistently disclose these inspection charges" and instead lumps them into an "other advances" category without explanation, a practice that misleads Ms. Sullivan and Class Members. Am. Compl. ¶63. Finally, Ms. Sullivan alleges that the fraudulent inspection scheme "creates more 'float' income, boosting the bank's bottom line." *Id*. at 65. Ms. Sullivan's RICO claim concerns BOA's misrepresentations and/or concealment of their breach of the Agreement and because the claim stands apart from Ms. Sullivan's breach of contract claim and is satisfies pleading requirements. It should not be dismissed.

### B. Ms. Sullivan's Consumer Protection Claims Should Not be Dismissed.

#### 1. Under Florida Law, Plaintiff Has Standing to Sue Pursuant to the FDCPA, TILA, and RESPA

**FDCPA**

Under the FDCPA, "debt collectors are prohibited from falsely representing the 'character, amount, or legal status of any debt.'" FDCPA § 1692e(2)(A). Here, BOA "represented falsely or in a misleading manner stated, or mispresented, the amount, character, or status of the amounts needed to payoff Ms. Sullivan's and the Members of the Classes' mortgage debts." Am. Compl. ¶ 221. A mischaracterization of Ms. Sullivan's debt constitutes an injurious withholding of information that the FDCPA requires the debt collector to disclose to Ms. Sullivan, and an invasion of Ms. Sullivan's right to such information. Thus, Ms. Sullivan has suffered a concrete injury under the FDCPA and has standing to bring that claim. *See Hill v. Resurgent Capital Services, L.P.*, 461 F. Supp. 3d 1232, 1237 (S.D. Fla. 2020); *Church v. Accretive Health, Inc.*, 654 F. Appx 990, 995 (11th Cir. 2016).

**TILA**

The Truth in Lending Act (TILA) imposes liability "on creditor[s] who fail[] to comply with any requirement imposed under…section 1635 of this title [and] subsection (f) or (g) of section 1641." *Scott v. 360 Mortgage Group, LLC*, 2017 WL 3732097, at *7 (S.D. Fla. Aug. 30, 2017). The person to whom credit was offered and who is a named party to the mortgage and note has standing to bring a claim under TILA. *See Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1208 (M.D. Fla. 2012). A plaintiff must allege that defendant is the owner of the mortgage itself. *Scott* at *7. Here, Ms. Sullivan is a named party on the mortgage and has properly alleged that BOA "owned and/or serviced Plaintiff's mortgage[.]" Am. Compl. ¶ 229. Therefore, she has standing to bring a claim under the TILA.

**RESPA**

BOA contends that Ms. Sullivan does not have standing to bring a claim under RESPA because she is not considered a 'borrower', or 'confirmed successor in interest,' under 12 C.F.R. § 1024.30(d). Motion, p. 16. Yet, BOA itself treated Ms. Sullivan as a successor in interest by 1) changing the name on statements and communications from Anita Mandal, the previous owner, to Ms. Sullivan's name, pursuant to the statute, and 2) mailing Ms. Sullivan the necessary paperwork and confirming her as a successor in interest pursuant to 12 C.F.R. § 1024.30(d). Am. Compl. ¶¶73, 149. Ms. Sullivan acquired title to the property subject to the mortgage of record. As such, BOA changed the name on communications with Ms. Sullivan, indicating she was a successor in interest. Additional paperwork sent by BOA included language explaining to Ms. Sullivan that she could send QWRs, NOEs, and RFIs. Under the doctrine of equitable estoppel, Ms. Sullivan has standing to bring a RESPA claim.

The doctrine of equitable estoppel requires of a showing that:

(1) the party to be estopped misrepresented material facts;
(2) the party to be estopped was aware of the true facts;
(3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it;
(4) the party asserting the estoppel did not know, nor should have known, the true facts; and
(5) the party asserting the estoppel detrimentally relied on the misrepresentation.

*Albright v. Union Bankers Ins. Co.*, 105 F. Supp. 2d 1330, 1334-35 (S.D. Fla. 2000). Here, BOA misrepresented whether Ms. Sullivan was a successor in interest and was aware of such

misrepresentations. For six years, BOA refused to acknowledge Ms. Sullivan's interest in the property but finally, in 2019, BOA acknowledged Ms. Sullivan as Successor in Interest. Am. Compl. ¶77. BOA intended for Ms. Sullivan to rely on these misrepresentations to conceal the fraudulent amounts they were claiming to be owed. Ms. Sullivan paid those fees. Finally, Ms. Sullivan did not know the true facts and detrimentally relied on these misrepresentations. Without BOA's cooperation, there was no way for Ms. Sullivan to obtain the relevant property inspection records to determine the inspection fees. As a result, Ms. Sullivan incurred expenses.

### 2.   Ms. Sullivan's FDCPA and TILA Claims are Subject to Equitable Tolling and Not Precluded by Statutes of Limitations.

Florida law provides a one-year statute of limitations period to bring claims under the FDCPA. The Eleventh Circuit held that the date of mailing was the debt collector's last opportunity to comply with the FDCPA. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009)(citing *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir.1995)). The date of mailing is "a better and more practical approach because it provided a date that was easy to determine, ascertainable by both parties, and easily applied." *Id*. Ms. Sullivan's claims, however, are subject to equitable tolling, which is appropriate when a "plaintiff has established (1) extraordinary circumstances, and (2) due diligence." *Dittdhart v. North Ocean Condos, L.P.*, 580 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008). The Eleventh Circuit defines "extraordinary circumstances" to include "situations where a defendant either affirmatively conceals its own wrongdoing or otherwise misleads the plaintiff into sleeping on his or her rights, or when the plaintiff simply had no reasonable way of timely discovering the wrongs perpetrated against him or her despite the exercise of due diligence." *In re Chiquita Brands International, Inc.*, 284 F. Supp. 3d 1284, 1320 (S.D. Fla. 2018). And if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of a claim, equitable tolling permits a plaintiff to avoid the statute of limitations. *Id*. (internal quotation omitted).

This case constitutes an extraordinary circumstance. BOA affirmatively concealed their own wrong, or at the very least misled Ms. Sullivan into delaying her right to bring suit. BOA represented that the charges for property inspection and forced placed insurance fees were legitimate. The arrangements manipulating the force-placed insurance market and premium inflation was not included in the mortgage agreement. BOA knowingly and intentionally engaged in conduct calculated to induce Ms. Sullivan to refrain from or postpone the commencement of an

action. Furthermore, despite Ms. Sullivan's due diligence (*i.e.* sending BOA two separate notices consisting of a NOE and Request for Payoff Statement and an RFI; sending an additional NOE, RFI, and request for accurate payoff statement; sending another two sets of notices pursuant to RESPA and Regulation X). Ms. Sullivan has established extraordinary circumstances and due diligence and as such, her claims are subject to equitable tolling.

### 3.  Ms. Sullivan has Properly Stated Claims Under the FDCPA.

To state a claim under the FDCPA, a plaintiff must allege that the conduct was materially misleading. To be material, "a statement must influence a consumer's decision or ability to pay or challenge a debt." *Anselmi v. Shendell & Associates, P.A.*, Case No. 12-61599-CIV-WILLIAMS, 2015 WL 11121357, at * (S.D. Fla. Jan. 7, 2015)(citing *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 8-14-CV-635-T-33TBM, 2014 WL 3587550, at *8 (M.D. Fla. July 18, 2014)). BOA's conduct was materially misleading. BOA collected debts that contained illegal fees for unnecessary flood insurance, inspection fees, and forced place insurance. These unnecessary fees are intentionally disguised as being necessary or otherwise reasonable expenses to deceive homeowners. BOA adversely changed the terms of Ms. Sullivan's loan by requiring and threatening to force-place more insurance than necessary to protect its interest in the property securing the mortgage. BOA's representation that these fees were necessary and even required, which influenced Ms. Sullivan's decision to challenge the mortgage. BOA's conduct was materially misleading and Ms. Sullivan's FDUPTA claim should not be dismissed.

### 4.  Ms. Sullivan has Properly Stated Claims Under the TILA

The TILA requires lenders to fully disclose to borrowers in credit transactions the terms of credit being extended. Such disclosure was meant to protect consumers "from becoming unknowingly obligated to pay hidden and unreasonable charges imposed by lenders and to permit them to meaningfully compare the terms of credit extended by different lenders." *Nussbaum v. Mortgage Service America Co.*, 913 F. Supp. 1548, 1553 (S.D. Fla. 1995). BOA argues that because the relevant fees – the LPI premiums and property inspection fees – did not change the terms of the mortgage, they did not give rise to a disclosure obligations. Motion, p. 20. However, these fees were not attributable to LPI costs authorized under the mortgage agreements. These were kickbacks in the form of commissions and discounted services. Even if these did not change the terms of the mortgage, disclosure is still required because "[k]ickbacks are not properly classified as 'premiums

for insurance'" and Defendant would have to disclose the amount and nature of the commissions. *Jackson v. U.S. Bank, N.A.*, 44 F.Supp.3d 1210, 1219 (S.D. Fla. 2014). Furthermore, when a lender force-places insurance not contemplated in the mortgage agreement, like BOA did here, "the associated premiums are not exempt from disclosure under TILA. *Casey v. Citibank, N.A.*, 915 F.Supp.2d 255, 266 (N.D.N.Y.2013). BOA failed to disclose both the force-placed insurance charges to Ms. Sullivan's mortgage obligations and the amount and nature of the kickbacks, reinsurance, discount mortgage servicing, and other profiteering involving BOA and/or its affiliates because of the purchase of force-placed insurance. Plaintiff's TILA claim should not be dismissed.

### 5. It is Not Appropriate at the Motion to Dismiss Stage to Decide Whether BOA is Exempt from FDUPTA.

BOA contends that Ms. Sullivan's FDUTPA claim fails because BOA is a national bank, which is excluded from FDUTPA. However, the issue of whether BOA, as a national bank, is exempt from FDUTPA is a question that raises factual issues that are not appropriate for disposition at the motion to dismiss stage of a case. Florida Courts have repeatedly and cursorily denied motions to dismiss when plaintiffs allege FDUTPA claims against national banks. *U.S. Bank Nat. Ass'n v. Capparelli*, 2014 WL 2807648 (S.D. Fla. 2014); *Renfrow v. First Mortg. America, Inc.*, 2011 WL 2416247 (S.D. Fla. 2011); *Degutis v. Financial Freedom, LLC*, 978 F.Supp.2d 1243 (M.D. Fla. 2013); *Bowen v. Wells Fargo Bank, N.A.*, 2011 WL 3627320 (M.D. Fla. 2011). In *Bowen*, the Court denied the defendant's motion to dismiss Plaintiff's FDUTPA claims stating that "[defendant] states that it is a national bank, however, the status of [defendant] as an FDIC insured bank cannot be determined by a review of the allegations in the First Amended Complaint alone. Therefore, the motion to dismiss will be denied." *Bowen*, 2011 WL 3627320 *6. (internal citations omitted).

Furthermore, other courts in the Southern District have found FDUTPA claims to be proper when brought against banks in cases related to prices of force placed insurance. *See Martorella Deutsche Bank. Nat Trust Co.*, 931 F.Supp.2d 1218, 1223 (S.D. Fla. 2013) (holding Plaintiff sufficiently pled the elements of a deceptive act or unfair practice, causation and actual damages against Deutsche Bank to establish a claim under FDUTPA); *Gibson v. Chase Home Finance, LLC*, 2012 WL 1094323 (M.D. Fla. 2012).

19

**CONCLUSION**

For the reasons described above, this Court should deny BOA's Rule 12(b)(6) motion in its entirety as well as its alternative request for *Colorado River* abstention, and order BOA to serve its answer within a reasonable time.

Dated: December 10, 2021

Respectfully submitted,

By: */s/ Scott D. Hirsch*
Scott D. Hirsch
**SCOTT HIRSCH LAW GROUP**
Fla. Bar No.: 50833
scott@scotthirschlawgroup.com
6810 N. State Road 7
Coconut Creek, FL 33073
(561) 569-7062

Daniel C. Hedlund *(Admitted Pro Hac Vice)*
David A. Goodwin (*Admitted Pro Hac Vice*)
**GUSTAFSON GLUEK PLLC**
120 So. 6th St., Ste. 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com

***Attorneys for Kimn S. Sullivan***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on December 10, 2021 with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

*Scott D. Hirsch*
Scott D. Hirsch