UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CV-80828-DIMITROULEAS-MATTHEWMAN

**KIMN S. SULLIVAN a/k/a
KIMBERLY S. SULLIVAN,** individually and
on behalf of those similarly situated,

     **Plaintiff,**

vs.

**BANK OF AMERICA, N.A.**, and
**SAFEGUARD PROPERTIES
MANAGEMENT, LLC,**

     **Defendants.**
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT
SAFEGUARD PROPERTIES MANAGEMENT LLC'S
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff KIMN S. SULLIVAN ("Ms. Sullivan"), through her counsel, hereby files this Plaintiff's Response in Opposition to the Motion to Dismiss filed by Defendant SAFEGUARD PROPERTIES MANAGEMENT, LLC, and in support thereof states as follows:

**INTRODUCTION**

Through its Motion to Dismiss Plaintiff's Amended Class Action Complaint (the "Motion to Dismiss"), SAFEGUARD PROPERTIES MANAGEMENT, LLC ("Safeguard") is seeking to have both claims Ms. Sullivan has raised against them, RICO (Count V) and FDUPTA (Count VII), dismissed.  In support of its bid to have the claims dismissed, Safeguard, with little support, essentially argues it did nothing wrong or had no contractual relationship with Ms. Sullivan.  As discussed below, Safeguard's interpretation of the allegations as plead against them in Ms.

Sullivan's Amended Complaint is misguided and reveals a very myopic reading of the facts as plead against them and the claims Ms. Sullivan raised. Simply put, Ms. Sullivan's Amended Complaint specifically details Safeguard's deceptive actions in charging Ms. Sullivan for property inspections that were not actually performed. Safeguard did this in concert with Defendant BANK OF AMERICA, N.A. to manipulate property inspections on properties in default in such a manner to improperly enrich themselves to the determent of Ms. Sullivan and the putative class.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only "contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations," but only factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (same). When reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is . . . 'exceedingly low.'" *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1178 (S.D. Fla. 2012) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

## LEGAL ARGUMENT

   I.   **Ms. Sullivan Has Adequately Alleged RICO Violations.**

        A. **Ms. Sullivan Does Not Need to Allege Safeguard Owed a Duty to Disclose.**

The RICO Act provides civil liability for persons engaged in "a pattern of racketeering activity". 18 U.S.C. § 1962(a)–(d). The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Company LLC*, 202 F. Supp. 2d 1339, 1346 (S.D. Fla. 2002)(citing to *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988)). Ms. Sullivan has satisfied these elements through the allegation that Safeguard accepts BOA's automated property inspection orders, automatically adds a mark-up to the price of the inspection, and automatically issues their own inspection orders. Am. Compl. ¶¶ 51-53. Ms. Sullivan makes this allegation under claims for wire fraud and mail fraud, both of which are considered 'racketeering activity' under RICO. See *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002).

Furthermore, even if there were a duty to disclose, Ms. Sullivan's alleged failure to do so is irrelevant. Ms. Sullivan's RICO claim against Safeguard does not rest solely on Safeguard's failure to disclose the Inspection Fee Scheme, and thus, Ms. Sullivan is not required to allege that Safeguard had a duty to disclose the scheme to state a RICO claim. Rather, Ms. Sullivan alleges members of the BOA Property Inspection Enterprise each affirmatively *misrepresented* or *concealed* the fraudulent nature of the property inspections. See *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1353-53 (S.D. Fla. 2019) (holding that because Plaintiff's RICO claim did not rest solely on airline's failure to disclose how fee was ultimately distributed, but rather alleged the website proactively misled consumers, Plaintiff was not required to allege that Defendant had duty to disclose.)

### B.  Ms. Sullivan's RICO Claim is Distinct from her Breach of Contract Claim.

Plaintiff's RICO claim is not a recasting of her contract claim as Safeguard alleges. Ms. Sullivan properly alleges a RICO claim for Safeguard's misrepresentations and/or concealment of fraudulent property inspections. *See Dykes v. Bank of Am., N.A.*, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018) (Dimitrouleas, J.) (holding that "multiple false statements of fact" regarding a mortgage agreement constitute a fraud claim). Ms. Sullivan's breach of contract claim arises from Safeguards' objectively "excessive and unfair" property inspections, Am. Compl. ¶¶ 157 – 59, in violation of the mortgage terms, which permitted only "reasonable and appropriate" measures to protect the property. *Id*. at ¶ 154. Alternatively, Ms. Sullivan's RICO claim arises from Safeguard's purported inspections, in most instances "illusory or fabricated, because it is impossible even to do a drive-by inspection on the property." *Id*. at ¶ 62. Further, Ms. Sullivan's allegations identify Safeguard's having "fraudulently charged for property inspections that were never performed." *Id*. at ¶ 79. Simply put, in her breach of contract claim, Ms. Sullivan alleges that Safeguard breached the mortgage terms by acting "excessive and unfair". *Id.* at 157. In her RICO claim, Ms. Sullivan alleges that Safeguard charged her for work that was never performed. *Id.* at ¶ 79. Ms. Sullivan's complaint about the fraudulent misrepresentations and/or concealment of Safeguard's property inspections is distinct from Ms. Sullivan's complaint for breach of contract in ordering property inspections that were "neither reasonable nor appropriate." *Id*. at ¶ 158.

### C. Ms. Sullivan Satisfied the Pleading Standard for her RICO claim with Sufficient Specificity.

Ms. Sullivan satisfies Federal Rule of Civil Procedure 9(b) pleading requirements in her allegations that Safeguard used mail and wires to further the fraudulent scheme. Rule 9(b) requires plaintiff allege the "statements … documents or oral representations or what omissions were made," the "time and place of each such statement and the person responsible for making same," the "content of such statements" and "manner in which they misled the plaintiff," and "what the

4

defendants obtained as a consequence of the fraud." *Dykes v. Bank of Am., N.A.*, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018) (Dimitrouleas, J.). Ms. Sullivan alleged with specificity that Safeguard fraudulently charged Ms. Sullivan for "fabricated and illusory" inspections. Am. Compl. ¶ 62. Further, Ms. Sullivan specifically identified 57 out of 100 incomplete inspections from May 17, 2010 through March 6, 2019 that Safeguard reported to BOA and had added to her monthly statement. *Id*. at ¶ 80. Additionally, Ms. Sullivan sufficiently alleged that "many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendant's books and records." *Id*. at ¶ 268. Such use of mail and wire includes "accepting Plaintiff's payments for invoices that included fraudulent and improper Property Inspections." *Id*. at ¶ 268. *See Young v. Wells Fargo & Co.*, 671 F.Supp.2d 1006 (S.W. Iowa 2009) (holding that "prior to discovery, plaintiffs cannot be expected to have highly specific information regarding the defendant's internal communications."). Ms. Sullivan alleged with specificity that Safeguard billed BOA and subsequently Ms. Sullivan for 57 incomplete inspections and that gate records do not reflect visitors to the property on the dates of allegedly complete inspections. *Id*. at ¶ 79. Finally, Ms. Sullivan alleges that the fraudulent inspection scheme "creates more 'float' income, boosting the bank's bottom line," *Id*. at ¶ 65, by allowing BOA and Safeguard to "reap thousands of dollars in improper and fraudulent inspection fees completing dubious and unnecessary drive-by or fabricated inspections." *Id*. at ¶ 64. Because Ms. Sullivan meets the heightened pleading requirements for her RICO claim the claim should not be dismissed.

 II. **Ms. Sullivan has Plead a Viable Claim for FDUPTA**

In the Motion to Dismiss, Safeguard attacks the propriety of Ms. Sullivan's claim of FDUPTA against them, simply arguing "she has not an cannot plausibly allege that Safeguard

5

committed a deceptive act or unfair practice that caused [Ms. Sullivan] damages" or, "there are no plausible allegations that Safeguard did anything deceptive or unfair with regard to [Ms. Sullivan]." Motion, p. 11.  Safeguard is wrong.

The primary purpose of FDUTPA is "[t]o protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). Accordingly, FDUTPA must be construed liberally to promote that policy.

A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and, (3) actual damages. Fla. Stat. § 501.202.  FDUTPA provides a private cause of action to any aggrieved party, and it provides three types of remedies: (1) declaratory relief; (2) injunctive relief; and (3) damages. *Id*.  An "*unfair practice*" violative of FDUTPA is one that "offends established public policy and ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Cox v. Porsche Fin. Serv., Inc.*, 342 F. Supp.3d 1271, 1286 (S.D. Fla. 2018).  A "*deceptive act*" occurs where "a representation, omission, or practice occurred that was likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id*[1].; *see also Davis v. Powertel, Inc*., 776 So.2d 971 (Fla. 3d DCA 2000). Ms. Sullivan has fully satisfied these pleading requirements.

Specifically, Ms. Sullivan alleged in detail that Safeguard engaged in deceptive acts by charging for property inspections that were excessive and/or not performed. Am. Compl. ¶ 43.

---

[1] Since its enactment, the class of plaintiffs who could bring an action was broadened from "consumers" to "persons," thus giving non-consumers standing to sue. *See, e.g., Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc*., 169 So.3d 164, 169 (Fla. 4th DCA 2015) ("This change indicates that the legislature no longer intended the FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well.")).

Moreover, Ms. Sullivan's Amended Complaint details the fact that she was charged for no less than 57 inspection (out of no less than 100) that were in fact not completed. *Id.* at 80. These are just some examples of the deceptive practices Ms. Sullivan alleges Safeguard engaged in.

Safeguard's arguments that Ms. Sullivan's FDUPTA claim should fail as they charged BOA for the work performed and had no control over what BOA charged to Ms. Sullivan defies logic. Safeguard is a highly sophisticated corporation that specifically works with mortgage lenders and servicers, such as BOA, to provide property preservation and other debt related services on properties that are in default. Indeed, Safeguard is one of the largest companies in the United States providing these services. It strains credulity that Safeguard does not know or understand that the inspections it is charging BOA for are being passed on to consumers, such as Ms. Sullivan, and that these fees are being added to the mortgage debt owed. *See* Am. Compl. ¶¶ 43, 71, 79-80. Accordingly, Safeguard's Motion to Dismiss on this count should be denied.

### III.    Ms. Sullivan did not Need to Amend her Claims Against Safeguard

Without any legal support whatsoever, Safeguard makes the befuddling argument that Ms. Sullivan's claims against them should be dismissed because the allegations against them were not amended. First, there is no requirement that an amended complaint must amend all allegations within a complaint. Secondly, the basis for which Ms. Sullivan represented she was seeking leave to amend was completely accurate. Motion, p. 12. As this Court is aware, Ms. Sullivan dismissed both her FCCPA and unjust enrichment claims, for which unjust enrichment was also against Safeguard, and added facts and claims for RESPA and TILA. Ms. Sullivan is at a loss that Safeguard is even raising this point, as everything she represented came to pass. The fact the majority of the allegations remained against Safeguard has no bearing other than provide Safeguard the opportunity to grandstand with some farcical statement that Ms. Sullivan recognizes

7

her claims against them to be nonviable. As Ms. Sullivan has easily demonstrated above, her claims against Safeguard for violations of RICO and FDUPTA are sound and legally sufficient as a matter of law, and Safeguard's Motion to Dismiss should be denied *in toto*.

## CONCLUSION

For all the forgoing reasons, Safeguard's Motion to Dismiss Ms. Sullivans' Amended Class Action Complaint should be denied.

Dated: December 10, 2021

                                                            Respectfully submitted,

                                                            By: */s/ Scott D. Hirsch*
                                                            Scott D. Hirsch
                                                           **SCOTT HIRSCH LAW GROUP**
                                                           Fla. Bar No.: 50833
                                                           scott@scotthirschlawgroup.com
                                                           6810 N. State Road 7
                                                           Coconut Creek, FL 33073
                                                           (561) 569-7062

                                                           Daniel C. Hedlund *(Admitted Pro Hac Vice)*
                                                           David A. Goodwin (*Admitted Pro Hac Vice*)
                                                           **GUSTAFSON GLUEK PLLC**
                                                           120 So. 6th St., Ste. 2600
                                                           Minneapolis, MN 55402
                                                           Telephone: (612) 333-8844
                                                           Facsimile: (612) 339-6622
                                                           dhedlund@gustafsongluek.com
                                                           dgoodwin@gustafsongluek.com

                                                           ***Attorneys for Kimn S. Sullivan***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed on December 10, 2021 with the Clerk of Court using CM/ECF which caused a copy to be served on all counsel of record.

*Scott D. Hirsch*
Scott D. Hirsch