IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**KIMN S. SULLIVAN a/k/a**
**KIMBERLY S. SULLIVAN**

    **Plaintiff,**

vs.                                    CASE NO.: 9:21-CV-80828-WPD

**BANK OF AMERICA, N.A., et al.,**      Judge: William P. Dimitrouleas
                                              Magistrate Judge: William Matthewman

    **Defendants.**
_____/

**DEFENDANT SAFEGUARD PROPERTIES MANAGEMENT, LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

Defendant, Safeguard Properties Management LLC ("Safeguard"), pursuant to Local Rule 7.1(c)(1), hereby files this Reply to Plaintiff Kimn S. Sullivan's ("Ms. Sullivan" or "Plaintiff's") Opposition to Defendant Safeguard Properties Management LLC's Motion to Dismiss Plaintiff's Class Action Complaint ("Opposition") [D.E. 35], and in support of its Motion to Dismiss Plaintiff's Class Action Complaint and Memorandum of Law in Support ("Motion") [D.E. 28] states as follows:

**INTRODUCTION**

In response to Safeguard's Motion, Ms. Sullivan presents arguments that, in fact, support the legal and factual foundation for dismissing Safeguard from this action. At this juncture, this Court should grant Safeguard's Motion and dismiss all claims against Safeguard with prejudice.

As a threshold matter, in the absence of valid claims against Safeguard, it is apparent from a reading of the Amended Complaint coupled with the Opposition and Ms. Sullivan's Response in Opposition to Bank of America's Motion to Dismiss ("BANA Opposition") [D.E. 34] that the sole basis for Safeguard's inclusion as a defendant in this case is in a (failed) attempt to overcome

obstacles presented by the *Colorado River* doctrine, which co-defendant Bank of America, N.A ("BANA") argues warrants a stay or dismissal of this action in its Motion to Dismiss and Incorporated Memorandum of Law ("BANA Motion") [D.E. 29].  As BANA argued, abstention is warranted because of a state-court foreclosure action involving BANA and Ms. Sullivan concerning substantially the same issues that are at issue in this case. [D.E. 29 at 7].  In the BANA Opposition, Ms. Sullivan tries to deflect the application of the *Colorado River* doctrine by asserting, in part, that Safeguard is a "critical" party to this action.  [D.E. 34 at 4].  Yet, the actual factual allegations in the Amended Complaint, when separated from the hyperbole, speculation, and unsubstantiated legal conclusions, belie this assertion.  Safeguard is not even a proper party to this action, much less a "critical" one.

Plaintiff has wholly failed to allege claims against Safeguard for violations of either RICO or Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") – the only two claims asserted against Safeguard – to both preclude application of the *Colorado River* doctrine and to warrant Safeguard's inclusion in this case.  As set forth below, Ms. Sullivan tries to levy allegations in the Opposition that are not included in the Amended Complaint – namely repeatedly stating that Safeguard *charged her* for inspections and contending that Safeguard engages in "other debt related services" (Opposition at 7) beyond the allegation in the Amended Complaint that Safeguard is a mortgage field services company that facilitates property inspections.  Plaintiff's attempts to expand on Safeguard's involvement through unpled allegations in her Opposition fails.[1]  And, in an attempt to avoid Safeguard's point that she has not alleged a duty to disclose, Ms. Sullivan contends that she has stated a cause of action because Safeguard "misrepresented" and "concealed"

---

[1] Likewise, Ms. Sullivan's conclusion in her Opposition that Safeguard surely must "know" that the costs of the inspections are being passed on to consumers (Opposition at 7) is pure speculation and does not substantiate causes of action against Safeguard.

2

information from her, (Opposition at 3, 4), despite the fact that the Amended Complaint makes clear that there was absolutely no relationship or interaction between Safeguard and Ms. Sullivan and, therefore, no ability for Safeguard to make any "representations" whatsoever – whether accurate or not. And, with no contractual obligation, relationship, interactions with Plaintiff, or affirmative obligations on the part of Safeguard, how exactly did Safeguard *conceal* information? Indeed, Plaintiff does not allege that Safeguard even had any opportunity to *reveal* any information to her. As further addressed below, Ms. Sullivan's attempt to augment – if not entirely alter – the allegations in the Amended Complaint to save her claims against Safeguard fails.

## I. Plaintiff's RICO claim against Safeguard is baseless

As Safeguard explained in its Motion, Ms. Sullivan's RICO claim fails because she does not—and cannot—allege that Safeguard owed her any duties; she fails to plead fraud, upon which her RICO claim is premised, with sufficient particularity; and, her claims are merely reformulated contract claims as between her and BANA. Nothing in Ms. Sullivan's Opposition counters Safeguard's position or warrants allowing these claims to proceed.

### *Plaintiff fails to allege that Safeguard had a duty to disclose*

Ms. Sullivan does not articulate how Safeguard owed her a duty to disclose information related to the property inspections. Rather, Ms. Sullivan tries to argue that no such duty is required by trying to manipulate her claims into ones of affirmative misrepresentations and active concealments. Yet, Ms. Sullivan's reliance on the sole case cited in her Opposition for this proposition illustrates the blatant difference to the allegations here and underscores the fact that she has no real claim against Safeguard. In her Opposition, Ms. Sullivan contends that:

> members of the BOA Property Inspection Enterprise **each affirmatively *misrepresented* or *concealed*** the fraudulent nature of the property inspections. *See Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1353-53 (S.D. Fla. 2019) (holding that because Plaintiff's RICO claim did not rest solely on airline's failure

3

> to disclose how fee was ultimately distributed, **but rather alleged the website proactively misled consumers**, Plaintiff was not required to allege that Defendant had duty to disclose.)

(Opposition at 3) (Emphasis added).

But based on Safeguard's relationship (or, more accurately, lack thereof) with Ms. Sullivan, Safeguard was not in a position to "misrepresent" or "conceal" the "fraudulent nature of the property inspection" from Ms. Sullivan. There are no allegations of any interaction between Safeguard and Ms. Sullivan. To the contrary, Ms. Sullivan repeatedly alleges the inspections were drive-by inspections.[2] (Am. Compl. [D.E. 27] at ¶¶ 7, 58, 62, 64, 67, 68, 71, 80, 193, 274; Opp. at 4, 5). Thus, by her own allegations, accepted as true, Safeguard could not have "misrepresented" or "concealed" anything. Safeguard merely coordinated the property inspections ordered by BANA. This is markedly different than the website at issue in *Dolan* that "proactively misled consumers." Ms. Sullivan was not a consumer or customer of Safeguard, and Safeguard could not have misrepresented or concealed any information to or from Ms. Sullivan even absent a duty of disclosure. *Dolan* does not save Ms. Sullivan's RICO claim.

### *Plaintiff fails to plead RICO fraud with particularity*

In her Opposition, Ms. Sullivan repeatedly asserts that Safeguard misrepresented or concealed the allegedly fraudulent property inspections in her attempt to draw a distinction between her flawed RICO claim and a breach of contract claim.[3] (Opposition at 4). But in making

---

[2] In fact, Ms. Sullivan even alleges in the Amended Complaint that these inspections are not performed by Safeguard, but by "subcontracted third-party inspection vendors and/or property inspectors." (Am. Compl. at ¶ 54).

[3] Notably, in her Opposition, Ms. Sullivan appears to contend that she has asserted a cause of action against Safeguard for breach of contract or, at minimum, that Safeguard has somehow breached a contract. Specifically, in her Opposition, Plaintiff states: "Simply put, in her breach of contract claim, Ms. Sullivan alleges that Safeguard breached the mortgage terms by acting 'excessive and unfair.' *Id.* at 157" and "Ms. Sullivan's breach of contract claim arises from Safeguard's objectively 'excessive and unfair' property inspections, Am. Compl. at ¶¶ 157-159,

4

such conclusory allegations, Ms. Sullivan is merely offering legal conclusions without articulating any particularized facts in support. That is, Ms. Sullivan does not, either in her Amended Complaint or in her Opposition, allege what supposed misrepresentations were made by Safeguard or how Safeguard concealed any information. Safeguard pointed to such conclusory allegations in its Motion as the basis for its argument that Ms. Sullivan has not pled her RICO fraud claim with the necessary particularity to satisfy Rule 9(b). Rather than substantively respond, Ms. Sullivan doubled down on her conclusory RICO fraud allegations, further evidencing the legal futility of her RICO claim. Indeed, Ms. Sullivan contends she "alleges members of the BOA Property Inspection Enterprise each affirmatively *misrepresented* or *concealed* the fraudulent nature of the property inspections," (Opposition at 3), without attributing any specific misrepresentations or concealments directly to Safeguard. Rule 9(b) requires Ms. Sullivan to identify the specific acts committed by a defendant to state a cause of action sounding in fraud against that defendant rather than grouping all defendants together without delineating specific wrongdoing amongst the defendants. Ms. Sullivan wholly fails to attribute any specific actions to Safeguard. She has not met the heightened pleading requirement required by Rule 9(b).

### *Plaintiff tries to substantiate her claims by adding to or contradicting allegations in her Amended Complaint*

In her Opposition, Ms. Sullivan also resorts to an unalleged contention that it is Safeguard that is charging her for improper inspections in an attempt to save her claims, repeatedly making this claim throughout her Opposition. (Opposition at 2, 6, 7). For instance, in her Opposition, Ms. Sullivan contends that she "alleged with specificity that Safeguard fraudulently charged [her] for

---

in violation of the mortgage terms, which permitted only 'reasonable and appropriate measures to protect the property.' *Id.* at ¶154." (Opposition at 4). Safeguard is not a party to the mortgage and Ms. Sullivan does not allege otherwise in the Amended Complaint. There is no breach of contract claim asserted against Safeguard in the Amended Complaint.

'fabricated and illusory' inspections," and cites to paragraph 62 in the Amended Complaint as setting forth this allegation. (Opposition at 5). But Paragraph 62 of the Amended Complaint does no such thing.[4] Likewise, in her Opposition, Ms. Sullivan contends that she alleged 57 incomplete inspections that "Safeguard reported to BOA **and had added** to her monthly statement," insinuating that it was Safeguard that charged her for the inspections, citing to paragraph 80 of the Amended Complaint.[5] (Opposition at 5) (Emphasis added). Ms. Sullivan has not "alleged with specificity that Safeguard billed BOA and subsequently Ms. Sullivan" for fraudulent inspections. (Opposition at 5). In fact, in her Amended Complaint, Ms. Sullivan admits that "[BANA] pays its affiliate Safeguard, and then charges borrowers' accounts for the inspections." (Am. Compl. at ¶ 63). Plaintiff's strategic belated attempts to reword her allegations fail.

A reading of the Amended Complaint makes clear that the inspections are ordered by BANA and that Safeguard has no interaction with consumers such as Ms. Sullivan. Ms. Sullivan does not allege any facts in support of her contention that it was Safeguard that arranged improper inspections, as the inspections are ordered by BANA. She does, however, allege that BANA has a separate contract with Safeguard pursuant to which BANA pays Safeguard for the inspection

---

[4] Rather, Paragraph 62 alleges, in its entirety: "Through the use of its automated system, BOA orders the property inspections which in turn generate work orders to its exclusive field service affiliate Safeguard, who complete purported inspections, but in reality, merely drive by the property and check for signs of residency ('drive-by inspections'), if that. In most instances, the 'inspection' is illusory or fabricated because it is impossible even to do a drive-by inspection on the property because of, *e.g.,* gated communities ('fabricated inspections')." Paragraph 62 does not allege that Safeguard charged Ms. Sullivan for the inspections.

[5] In actuality, paragraph 80 of the Amended Complaint alleges, in its entirety: "The records obtained from BOA reflect that from May 17, 2010 through March 6, 2019, a period of 9 years, BOA and Safeguard ordered 100 drive-by property inspections of Sullivan's home. In 57 of these inspections the reports submitted reflect that the inspector could not gain access and complete the inspection because the property was located in a gated community and the inspector was denied access by the guard. **However, at each instance the loan encumbering Sullivan's property was charged for the 'inspection.'**" (Emphasis added).

services that Safeguard facilitates, wholly separate from BANA's agreement with the mortgagor. (Am. Compl. at ¶¶ 62-63, 71). These are merely allegations of a facially lawful business arrangement; they are not equivalent to alleging fraud with particularity. At its core, the alleged wrongdoing by Safeguard in the Amended Complaint is merely that it "automatically adds a mark-up to the price of the inspections." (Am. Compl. at ¶ 54). A for-profit company adding a profit component to its cost does not give rise to a RICO claim.

### *Plaintiff's RICO claim is a repackaged contract claim*

Ms. Sullivan fails to adequately articulate how her RICO claim against Safeguard is not merely a repackaging of her contract claim against BANA. In her attempt to respond to Safeguard's argument, Ms. Sullivan adds "facts" not alleged in her Amended Complaint. For instance, she insinuates on multiple occasions in her Opposition that her breach of contract claim was also asserted against Safeguard, going so far as to state that "Ms. Sullivan alleges that Safeguard breached the mortgage terms." (Opposition at 4). To be clear, the Amended Complaint has not and cannot allege a breach of contract claim against Safeguard, as Safeguard has never contracted with the mortgagor or Plaintiff.[6] There is no dispute that Safeguard is not a party to the mortgage agreement or any other agreement with Plaintiff.

Despite her red herrings, Plaintiff's dispute is a contract dispute with the loan servicer, BANA. Ms. Sullivan cannot turn a contract dispute with BANA into a RICO claim against Safeguard premised on allegations that the inspections were not lawfully permitted under the mortgage agreement.[7] Whether and to what extent BANA is contractually obligated or permitted

---

[6] Safeguard argued in its Motion that Plaintiff has not alleged that she is a proper party under the mortgage agreement. [D.E. 28 at 2-3]. Plaintiff appears to concede that point insofar as she failed to respond to it in her Opposition.

[7] Despite Ms. Sullivan's efforts, one sentence in paragraph 53 of the Amended Complaint evidences that the RICO claim is a repackaged breach of contract claim: "BOA began to conduct

7

to order an inspection does not implicate Safeguard. There is either a breach of contract or there is not. There is no RICO claim.

## II. Plaintiff's FDUTPA claim fails because it is based entirely on the issuance of fees that BANA charges pursuant to a mortgage agreement

In response to Safeguard's argument that she failed to state a claim against it for a violation of FDUTPA, Ms. Sullivan offers two retorts. First, that "she alleged in detail that Safeguard engaged in deceptive acts by charging for property inspections that were excessive and/or not performed"[8] and, second, that Safeguard *must know* that the costs of its inspections are passed on to consumers. (Opposition at 6-7.) Both points fail as they ignore the allegations and the law and constitute blatant speculation.

First, as addressed above, a plaintiff cannot substantiate its claims through allegations in an opposition to a motion to dismiss that are not made in (or are even contradicted by) the operative pleading. That is exactly what Ms. Sullivan attempts to do here.[9] Safeguard did not charge Ms. Sullivan *anything*. Rather, as set forth in the Amended Complaint and addressed above: BANA is the loan servicer on Ms. Sullivan's property; BANA issued property inspection orders to

---

the Inspection Fee RICO Scheme by using this automated loan servicing platform that automatically triggers orders for property inspections **whether or not they are needed or permitted under the terms of the BOA's agreements."** (Emphasis added).

[8] Interestingly, Ms. Sullivan cites to paragraph 43 of the Amended Complaint for this statement. (Opposition at 6). But paragraph 43 does not make this allegation. Instead, paragraph 43 quotes a 2014 report by the Office of Inspector General pertaining to inspections performed by inspection companies. (Am. Compl. at ¶ 43).

[9] In the Amended Complaint, Ms. Sullivan alleges that Safeguard is a "mortgage field services company," and that Safeguard contracts with BANA to accept property inspection orders and facilitate the inspections. (Am. Compl. at ¶¶ 9, 54). Yet, in her Opposition, Ms. Sullivan vaguely states that Safeguard engages in "other debt related services" and then assumes in conspiratorial fashion that Safeguard must have known that BANA was passing inspection fees on to Ms. Sullivan. (Opposition at 7). Once again, Plaintiff is improperly trying to substantiate her claims by augmenting and contradicting the allegations in the operative complaint.

Safeguard; Safeguard accepted BANA's inspection orders; Safeguard added a "mark-up to the price of the inspections;" Safeguard then issued inspection orders to subcontracted third-party vendors and/or property inspectors; those third-parties accepted the inspection orders from Safeguard and charged for the inspections; BANA paid Safeguard for the inspections and then "charge[d] borrowers accounts for the inspections." (Am. Compl. at ¶¶ 52-55, 63, 71).

Second, while apparently conceding that it is BANA, and not Safeguard, that charged for property inspections, (Opposition at 6)[10], Ms. Sullivan contends that Safeguard is a "highly sophisticated corporation" and that it "strains credulity that Safeguard does not know or understand that the inspections it is charging [BANA] for are being passed on to consumers, such as Ms. Sullivan, and that these fees are being added to the mortgage debt owed."[11] (Opposition at 7). Safeguard never asserted it did not know property inspection costs would be passed on to consumers. Rather, Safeguard's argument for dismissal of the FDUTPA claim is that the Amended Complaint does not allege that Safeguard did anything deceptive or unfair with regard to Plaintiff – rather it contracted with BANA to provide a service and charged BANA for such service, adding a markup to its costs to make a profit. [D.E. 28 at 11-12].

What BANA charged for the inspections as part of the indebtedness on the mortgage is governed by the terms of the mortgage. Ms. Sullivan admits in the Amended Complaint that the "[m]ortgage loan contracts establish the parameters of the relationship between and among a borrower, the Lender and Loan Servicer. The mortgage contracts have provisions that govern when

---

[10] *See also* Am. Compl. at ¶¶ 1, 2, 26, 27, 31, 32, 44, 48, 63, 71.

[11] Here, Ms. Sullivan admits that the fees are added to the mortgage debt owed. Safeguard is not the mortgagee, Safeguard is not the loan servicer, Safeguard is not a party to or beneficiary of the mortgage. Thus, despite Ms. Sullivan's attempts to save her claims by repeatedly asserting in her Opposition that Safeguard charged her for the inspections, she contradicts her own assertions even within her Opposition.

a Loan Servicer can order property inspections and charge a borrower for the cost of such inspections." (Am. Compl. at ¶ 44.) She further claims that "BOA breached Plaintiff's mortgage contracts by charging Plaintiff for property inspections that Plaintiff was not required to pay for by the terms of her mortgage contract." (Am. Compl. at ¶ 197).

BANA is the alleged loan servicer. Safeguard is not a party to the mortgage or any other agreement with Ms. Sullivan. Rather, Safeguard's contract is with BANA—not Ms. Sullivan. Safeguard provides services for BANA when ordered by BANA. (Am. Compl. ¶ 62, 63, 67, 194, 197). BANA then determines what fees to assess and add to the loan balance. (Am. Compl. ¶¶ 63, 244, 246). Ms. Sullivan cannot rely on speculation, conjecture, and unpled allegations. Plaintiff's claim against Safeguard for a violation of FDUTPA fails.

### III. Plaintiff's failure to meaningfully amend her claims against Safeguard illustrates the futility of her claims

Ms. Sullivan's response to Safeguard's argument regarding her failure to amend her allegations against Safeguard (Opposition at 7-8) reflects a misunderstanding of why her failure to amend is relevant. The same legal grounds for dismissing Plaintiff's claims against Safeguard were raised in Safeguard's motion to dismiss the initial complaint. Ms. Sullivan's failure to amend the allegations against Safeguard—even when given permission to do so—to cure the very same flaws that Safeguard highlighted in its motion to dismiss the initial complaint reflect the futility of further amendments. Plaintiff's claims in her Amended Complaint should be dismissed with prejudice.

### CONCLUSION

For all of the reasons stated above and in Safeguard's Motion, the claims against Safeguard should be dismissed with prejudice.

Dated this 7th day of January, 2022.

Respectfully submitted,

*s/ Julie Singer Brady*
Julie Singer Brady

Florida Bar No. 389315
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168

Dustin M. Dow
Ohio Bar No. 0089599
(*pro hac vice application forthcoming*)
ddow@bakerlaw.com
**BAKER & HOSTETLER LLP**
Key Tower, Suite 2000
127 Public Square
Cleveland, Ohio 44114
Telephone (216) 621-0200
Facsimile (216) 696-0740

*Attorneys for Defendant,*
*Safeguard Properties Management, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that January 7 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send a Notice of Electronic Filing and copy to:

Scott David Hirsch
scott@scotthirschlawgroup.com
**SCOTT HIRSCH LAW GROUP**
6810 N. State Road 7
Coconut Creek, Florida 33073

Daniel E. Gustafson (*pro hac forthcoming*)
dgustafson@gustafsongluek.com
Daniel C. Hedlund (*pro hac forthcoming*)
dhedlund@gustafsongluek.com
David A. Goodwin (*pro hac forthcoming*)
dgoodwin@gustafsongluek.com
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza, Suite 2600
120 South 6th Street
Minneapolis, Minnesota 55402

Allen W. Burton (*pro hac vice*)
aburton@omm.com
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036

William K. Pao (*pro hac vice*)
wpao@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, CA 90071

J. Randolph Liebler
jrl@lgplaw.com
Dora F. Kaufman
dfk@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO**

11

*Attorneys for Plaintiff,*  
*Kimn S. Sullivan and Kimberly S. Sullivan*

44 West Flagler Street, Courthouse Tower,  
25th Floor  
Miami, FL 33130  
*(Local Counsel)*

*Attorneys for Defendant,*  
*Bank of America, N.A.*

    *s/ Julie Singer Brady*  
    Julie Singer Brady